FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 2 4 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RANDY STEVEN KRAFT,                  )    CASE NO. CV 01-4623 AG
                                     )
            Petitioner,              )    **DEATH PENALTY CASE**
                                     )
      v.                             )
                                     )    ORDER ON RESPONDENT'S
ROBERT K. WONG,*                     )    MOTION TO DISMISS AND
      Acting Warden of California    )    PETITIONER'S MOTION FOR
      State Prison at San Quentin,   )    STAY
                                     )    [Docket Nos. 100, 110]
            Respondent.              )
_____)

Respondent moves to dismiss numerous claims from the petition on the ground
that they are unexhausted. Petitioner moves to stay federal habeas proceedings while he
returns to state court to present the unexhausted claims. For the reasons discussed below,
the Court dismisses the unexhausted claims from the petition, and declines to stay these
proceedings.

**BACKGROUND**

A jury of the Orange County Superior Court found Kraft guilty of the murders of
sixteen young men between 1972 and 1983. Following a penalty trial at which evidence
was introduced that Kraft committed an uncharged sexual assault in Long Beach in 1970,

---

* Robert K. Wong is substituted for his predecessors, as Acting Warden of California State
Prison at San Quentin, pursuant to Fed. R. Civ. P. 25(d)(1).

1   six additional murders in Oregon between 1980 and 1982, and two additional murders in

2   Michigan in 1982, Kraft was sentenced to death.  On direct appeal, the California

3   Supreme Court affirmed the judgment in its entirety.  *People v. Kraft*, 23 Cal. 4th 978, 99

4   Cal. Rptr. 2d 1 (2000), *cert. denied*, 532 U.S. 908 (2001).  The state court also denied

5   Kraft's habeas corpus petitions.

6       Kraft filed his federal habeas corpus petition in 2004, and an amended petition in

7   2005.

8

9   **ANALYSIS**

10  **1.      RESPONDENT'S MOTION TO DISMISS**

11      Respondent moves to dismiss the petition in whole or in part on three grounds:  (1)

12  the entire petition is time-barred; (2) some claims are unexhausted; (3) some claims are

13  pled without sufficient factual support.

14

15      **1.1      Timeliness**

16      Repeating his objections to the Court's prior orders granting equitable tolling of

17  the one-year limitation period imposed by 28 U.S.C. § 2244(d), respondent moves to

18  dismiss the entire petition as untimely.  This motion effectively seeks reconsideration of

19  Judge Snyder's orders of April 17, 2003, and October 23, 2003, which found equitable

20  tolling warranted.  Respondent fails to demonstrate the existence of any factor warranting

21  reconsideration of these orders.  *See* Local Rule 7-18.

22

23      **1.2      Exhaustion**

24      The parties agree that the petition contains both exhausted and unexhausted claims,

25  and they largely agree over which claims fall in which category.  (*See* Superseding Joint

26  Statement of the Parties Regarding Exhaustion, filed Nov. 22, 2005.)  However, they

27  dispute the exhaustion status of portions of fourteen claims.

28

2

### 1.2.1   Legal Standard

A habeas petitioner must exhaust his claims in state court before obtaining relief on those claims in federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 515-20 (1982). The petitioner must describe the operative facts and federal legal theory on which the claim is based so that the state court has "a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation and internal quotation marks omitted). The claims need not be identically phrased in state and federal court, but the petitioner must at least "fairly present" his claims, by alerting the state court that his claims are based on the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam); *Fields v. Waddington*, 401 F.3d 1018, 1020-21 (9th Cir. 2005). "[R]aising a state claim that is merely *similar* to a federal claim does not exhaust state remedies." *Fields*, 401 F.3d at 1022. Instead, "the petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

For several claims, Kraft contends the substance of the claim was presented in pro se documents denominated supplements to his "Ex Parte *Marsden* Motion,"[1] which he filed during the course of his appeal complaining about the performance of appointed appellate counsel. These pro se complaints about counsel did not fairly present to the California Supreme Court the operative facts or the federal legal theories underlying the claims that Kraft listed as examples of counsel's inadequacy. (*See, e.g.,* 1st Am. Pet. Ex. 47 (Seventh Supplement - Ex Parte *Marsden* Motion) at 4 (criticizing appellate counsel's presentation of claim about juror for failing to include certain allegations).) Pointing to a

---

[1] In *People v. Marsden*, 2 Cal. 3d 118, 84 Cal. Rptr. 156 (1970), the California Supreme Court held that if a criminal defendant requests substitution of counsel, the defendant must be given an opportunity to explain why current counsel is inadequate. During his direct appeal, Kraft filed numerous complaints about appellate counsel. (*See* 1st Am. Pet. Ex. 74 (Ex Parte *Marsden* Motion, Sept. 9, 1999) at 2-3 (listing forty of Kraft's pro se filings between 1993 and 1999 related to those complaints).) These pro se filings included at least fourteen separately numbered "supplements" to an Ex Parte *Marsden* motion. (*See* 1st Am. Pet. Ex. 51 (Fourteenth Supplement – Ex Parte *Marsden* Motion).)

1   potential claim of constitutional error in the context of criticizing counsel for failing to
2   raise the claim does not fairly present the substance of the claim itself. *See Rose v.*
3   *Palmateer*, 395 F.3d 1108, 1110-12 (9th Cir. 2005); *accord Williams v. Stewart*, 441 F.3d
4   1030, 1041 (9th Cir. 2006). The California Supreme Court could have rejected Kraft's
5   complaints about counsel for any number of reasons without considering the merits of the
6   claims that Kraft pointed to. *See Rose*, 395 F.3d at 1112. For this reason, with the
7   exception of Claims 40 and 41, which challenge the adequacy of the appeal itself, in
8   determining whether claims are exhausted, the Court has not considered Kraft's pro se
9   briefs complaining about appellate counsel's performance.

11        **1.2.2   Claim 6**

12        Claim 6 alleges that Kraft was deprived of an impartial jury because some jurors
13   concealed information about their knowledge of the case, acquaintance with people
14   involved in the case, or experiences with violent crime. (1st Am. Pet. at 68-80.) The
15   parties agree that Kraft has exhausted the aspect of this claim that challenges trial
16   counsel's failure to seek the removal of juror Jim Lytle, after evidence of his connection
17   to a victim came to light. However, they disagree over whether two related aspects of this
18   claim are exhausted: (1) the allegation that Mr. Lytle was impliedly biased because he
19   lied when questioned about how much he knew about the case and whether he had
20   discussed the case with others; and (2) the allegation that the trial court's inquiry into the
21   matter was insufficient and that the trial court had a sua sponte duty to remove Mr. Lytle
22   despite counsel's desire to keep him on the jury. (*See* 1st Am. Pet. at 72-77 (Claim
23   6.B.1).)

24        The aspect of Claim 6.B.1 based on the trial court's allegedly inadequate response
25   was fairly presented in the Appellant's Opening Brief. (*See* 1st Am. Pet. Ex. 61 at 607,
26   612-14.) However, the juror bias claim based on the allegation that Mr. Lytle lied to the
27   trial court, which relies on the legal theory discussed in *Dyer v. Calderon*, 151 F.3d 970
28   (9th Cir. 1998) (en banc), is unexhausted.

4

### 1.2.3   Claim 11

Claim 11 alleges that Kraft was prejudiced by the admission of irrelevant and inflammatory items of evidence, including a handwritten list that the prosecution contended was Kraft's own list of his victims (Trial Exhibit 165), numerous gruesome crime scene and autopsy photographs, and the entire contents of the glove box of Kraft's car, which contained various irrelevant but potentially prejudicial items. (1st Am. Pet. at 105-34.) Respondent concedes this claim is exhausted insofar as it is based on Exhibit 165 and the photographic exhibits, but contends that Kraft has not exhausted his claim that the contents of the glove box should have been excluded.

Kraft cites eleven separate pro se documents that he contends presented this aspect of Claim 11. Five are supplements to his *Marsden* motion. (1st Am. Pet. Exs. 33, 35, 43, 45, 50.) The other six documents (Ex. 78; Lodged Docs 12, 17, 18, 19, 20) are pro se habeas petitions or related briefs, only one of which discusses the admission of the glove box contents. Kraft's petition of August 23, 1990, cites the trial court's decision to admit the contents of the glove box into evidence in support of his allegation that "the trial court was prejudiced against Petitioner and willfully denied him state and federal guarantees of equal protection [and] due process . . . ." (Lodged Doc. 20, at 33-34 (supporting Ground 14 for relief, *see id.* at 15-16).) Just as listing a claim as an example of ineffective assistance of counsel does not fairly present the substance of the claim itself, neither does listing a claim as an example of judicial bias exhaust the underlying claim. *See Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (describing standard for assessing judicial bias claims); *cf. Rose*, 395 F.3d at 1112 ("While admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts.") This aspect of Claim 11 is therefore unexhausted.

### 1.2.4   Claim 14

In Claim 14, Kraft alleges the trial court erroneously prevented him from

5

introducing evidence that Edward Moore might have been killed by someone else, specifically, Charles Vines ("The Major"), Rick Ford, or Damien Simpson. (1st Am. Pet. at 167-68, 172-73.) Respondent contends the allegations about Ford and Simpson are unexhausted. These individuals are not mentioned in any of the documents cited by petitioner. (1st Am. Pet. Exs. 20, 33, 54, 78.) This aspect of Claim 14 is therefore unexhausted.

### 1.2.5   Claim 17

Claim 17 alleges that Kraft's conviction for the murder of Keith Crotwell is invalid. (1st Am. Pet. at 196-217.) Respondent contends that four aspects of this claim are unexhausted. One is Kraft's challenge to the validity of the eyewitness identifications of Kraft by three men who claimed they saw Kraft with Crotwell prior to Crotwell's disappearance in 1975. Kraft alleges the in-court identifications were tainted by other sources and the prosecutor coached the witnesses so they would identify Kraft. (1st Am. Pet. at 199-200, 209-210, 213 (Claim 17.B.2).) The second is Kraft's claim that his *Miranda* rights were violated by the police during questioning about Crotwell's disappearance. (*Id.* at 210-11 (Claim 17.B.3).) The third is Kraft's claim that the trial court denied him his right to confront the evidence against him and present a defense. (*Id.* at 212 (Claim 17.B.4).) The fourth is Kraft's claim that the prosecutor failed to disclose exculpatory evidence material to the Crotwell count. (*Id.* at 213-14 (Claims 17.B.6 & 17.B.6A).)

Kraft contends these aspects of Claim 17 were presented in his pro se filings in the California Supreme Court. Exhibits 33, 35, 43, 45, 47, 49, and 50 are supplements to his *Marsden* motion, Exhibit 37 is a letter complaining about appellate counsel, and Exhibit 54 is a pro se habeas corpus petition alleging a denial of "the right to make a complete and substantive appeal," based on alleged deficiencies of appellate counsel. The other documents cited by Kraft are pro se habeas corpus petitions, but they do not present the allegations underlying these four aspects of Claim 17. (*See* Lodged Docs. 12, 17, 19, 20,

6

22; Ex. 78.)  Accordingly, subclaims B.2, B.3, B.4, B.6, and B.6A of Claim 17 are unexhausted.

### 1.2.6   Claim 18

Claim 18 alleges that Kraft's conviction for the murder of Mark Hall is invalid. (1st Am. Pet. at 217-41.)  The parties agree that Kraft did not exhaust his claim that the admission of expert testimony on the fingerprint evidence violated due process. (Claim 18.B.1.)  However, they disagree over whether all the factual allegations underlying this claim are exhausted.  (*See* 1st Am. Pet. at 219-24.)  Three of the four documents cited by Kraft as having presented these allegations to the California Supreme Court are pro se *Marsden* motions or similar material complaining about appellate counsel.  (Exs. 35, 53, 76.)  The other document, an exhibit to a pro se "addendum to petition for writ of habeas corpus" presents an argument that the fingerprint evidence did not implicate Kraft because it only showed that his fingerprints were on glass that was found in the vicinity of Hall's body, without any evidence of when the fingerprints were made or when the glass was left in the area.  (Lodged Doc. 21, Ex. B.)  This is different from the allegations of the federal petition that the fingerprint evidence fails to satisfy "the constitutional requirement for relevance and reliability for admission of [scientific] evidence."  (1st Am. Pet. at 231.)  The fingerprint allegations are unexhausted.

The parties also disagree whether Kraft exhausted his claim that the prosecutor violated his obligation to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) (Claim 18.B.8), a related claim of prosecutorial misconduct (Claim 18.B.9 ¶ 48), and an additional claim of prosecutorial misconduct (Claim 18.B.9 ¶ 49).  (1st Am. Pet. at 238-41).)  Kraft cites only *Marsden*-related pro se materials that did not fairly present either the factual or legal basis of these claims.  (Exs. 46, 50, 53, 76.)

The disputed portions of Claim 18 are unexhausted.

1

### 1.2.7   Claim 21

2   Claim 21 alleges that Kraft's conviction for the murder of Richard Keith is invalid.

3   (1st Am. Pet. at 259-67.)  The parties dispute whether Kraft exhausted his claim that his

4   rights were violated by the trial court's threat to hold defense counsel in contempt if he

5   did not rush the presentation of defense witnesses on this charge.  (*Id.* at 264.)  The letters

6   and filings written by Kraft complaining about appellate counsel did not exhaust this

7   portion of Claim 21.  (Exs. 37, 39, 54, 74.)

8

### 1.2.8   Claim 24

9

10   Claim 24 alleges that Kraft's conviction for the murder of Donald Crisel is invalid.

11   (1st Am. Pet. at 286-98.)  The parties dispute whether Kraft exhausted his claim that his

12   rights were violated by the trial court's failure to give the defense more time to present

13   Andrew Wilhelm's testimony, and his preclusion of the testimony of "prospective defense

14   witness Joan."  (*Id.* at 293-94.)  Kraft's complaints about appellate counsel did not

15   exhaust these aspects of this claim.  (Exs. 37, 39, 54, 74.)  Nor did Kraft's supplement to

16   his *Marsden* Motion (Ex. 50) exhaust his claim of prosecutorial misconduct based on

17   James White's testimony about Tylenol III.  (1st Am. Pet. at 297.)

18

### 1.2.9   Claim 25

19

20   Claim 25 alleges that Kraft's conviction for the murder of Robert Wyatt Loggins is

21   invalid.  (1st Am. Pet. at 298-324.)  The parties dispute the exhaustion status of five

22   aspects of this claim:  B.1, B.3, B.6, B.7, and B.8.  The portions predicated on the loss or

23   destruction of evidence (B.1 & B.3) are unexhausted; Kraft cites only *Marsden*-related

24   materials to show otherwise.  (Exs. 35, 49, 54.)

25   Paragraph 35.B of Claim 25.B.6, which alleges that changing the classification of

26   Loggins' death from an accidental drug overdose to an unsolved homicide months after

27   Kraft's arrest violated federal constitutional guarantees of due process and equal

28   protection, was presented in almost identical language to the California Supreme Court in

8

1   Kraft's pro se petition of May 16, 1990. (*Compare* 1st Am. Pet. at 317 *with* Lodged Doc.

2   17, at 9-10.)  However, that petition did not fairly present the allegations of prosecutorial

3   misconduct contained in ¶¶ 39, 40, and 44 of Claim 25.B.7.  (*Compare* 1st Am. Pet. at

4   321-22 *with* Lodged Doc. 17, at 9-10, 31.)  Nor did the supplements to Kraft's *Marsden*

5   motion (Exs. 35, 46) exhaust these allegations.

6          Kraft's claim of judicial bias founded on the admission of photographs of Loggins

7   (Claim 25.B.8) was not fairly presented in the pro se petitions filed on May 16, 1990, and

8   July 2, 1990, or in the addendum to petition filed October 26, 1990.  (Lodged Docs. 17,

9   19, 21.)  The other documents cited by Kraft as having exhausted this claim are all

10   supplements to his *Marsden* motion.  (Exs. 33, 35, 42, 49.)

11          In sum, except for Claim 25.B.6, which is fully exhausted, the other four disputed

12   portions of Claim 25 are unexhausted.

13

14              **1.2.10 Claim 30**

15          Claim 30 challenges the constitutionality of California's capital sentencing system

16   on numerous grounds.  (1st Am. Pet. at 364-405.)  The parties agree that most of these

17   grounds are exhausted, but they dispute the status of Kraft's allegations that prosecutorial

18   discretion creates a substantial risk of arbitrariness in charging decisions, and that the

19   decision to charge Kraft was based on constitutionally impermissible factors such as the

20   race of the victims.  (*Id.* at 377-39.)  Neither Kraft's "Eleventh Supplement – Ex Parte

21   *Marsden* Motion" (Ex. 33) nor his pro se brief of August 12, 1990 (Ex. 78) fairly

22   presented this argument to the California Supreme Court.  Claim 30.B.4 is unexhausted.

23

24              **1.2.11 Claim 32**

25          Claim 32 alleges twelve instances of prosecutorial misconduct during the guilt

26   phase of the trial.  (1st Am. Pet. at 414-26.)  The parties agree that Claims 32.B.4, B.5,

27   and B.11 are exhausted, but disagree over the other nine subclaims.  Kraft contends he

28   presented these claims to the California Supreme Court in eight different supplements to

his *Marsden* motion (Exs. 33, 35, 43, 45, 46, 47, 49, 40), several pro se habeas corpus petitions and related briefs (Ex. 78, Lodged Docs 17-20), and in a brief filed by his trial attorneys in 1988 seeking a pretrial writ of prohibition related to the admission of evidence seized from Kraft's car and home (Ex. 80). Because the *Marsden* briefs did not exhaust any claims, the subclaims that Kraft contends were raised solely in these briefs are not exhausted: Claims 32.B.1, B.2, B.9, B.10, and B.12.

Claim 32.B.3 alleges that evidence was introduced that was obtained from unconstitutional searches of Kraft's car and home, as a result of knowingly false statements made by law enforcement officers to obtain search warrants, and there was no full and fair hearing on this claim at trial or on appeal. (1st Am. Pet. at 419.) Kraft's trial attorneys filed a suppression motion in the trial court, which was denied. The attorneys then filed a petition for a writ of prohibition in the California Court of Appeal, which was denied without opinion. (*See* 1st Am. Pet. Ex. 80 at 3702.) They then filed in the California Supreme Court a petition for review of the Court of Appeal's order. (Ex. 80.) The California Supreme Court denied this petition without addressing its merits in an order issued September 1, 1988. (Public Docket in Cal. Sup. Ct. Case No. S006552.)

Kraft points to five documents as exhausting Claim 32.B.3. His pro se brief of May 29, 1990, and his pro se petition of July 2, 1990, merely incorporated by reference his trial attorneys' petition for a pretrial writ of prohibition. (Lodged Doc. 18 at 24; Lodged Doc. 19 at 23.) This did not "fairly present" the factual and legal basis of the claim to the state court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . in order to find material . . . that does so"); *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005) ("To exhaust his claim, [petitioner] must have presented his federal, constitutional issue before the [state court] within the four corners of his appellate briefing."). Nor was this claim exhausted by Kraft's citation in his petition of the trial judge's denial of his suppression motion as evidence that the judge was prejudiced against Kraft. (Lodged Doc. 19 at 26.) Similar references in Kraft's

1  petition of August 23, 1990, to facts allegedly supporting his claim that "[t]he trial court

2  actively worked to construct a case" against Kraft did not fairly present the claim in the

3  federal petition, which alleges that the prosecutor and law enforcement agencies

4  committed misconduct by obtaining search warrants based on knowingly false statements.

5  (Lodged Doc. 20 at 33, 35)  Nor did Kraft's criticism of appellate counsel for failing to

6  raise this claim, in a supplement to his *Marsden* motion, exhaust this claim.  (1st Am. Pet.

7  Ex. 45 at 1933-41.)  This leaves the petition for a pretrial writ of prohibition, written by

8  trial counsel, which argued the trial court should hold a hearing on the veracity of the

9  affidavits supporting the search warrant, because there was ample evidence of material

10 misstatements by at least one of the police officers.  Although this petition presented the

11 substance of Kraft's allegations to the California Supreme Court in a pretrial challenge to

12 the admission of the seized evidence, this did not exhaust the claim.  In California, "[t]he

13 denial of an application for writ of prohibition does not constitute . . . an adjudication on

14 the merits of the claim presented." *Pitchess v. Davis*, 421 U.S. 482, 488 (1975).  Thus,

15 the denial of Kraft's petition for a pretrial writ "did not serve to exhaust his available state

16 remedies." *Id.*  Claim 32.B.3 is unexhausted.

17       Claim 32.B.6 contends the prosecutor committed misconduct by introducing

18 Exhibit 165 (the alleged "death list") based on pure speculation.  The claim is similar to

19 Claim 11.B.6, which respondent concedes is exhausted.  (*Compare* 1st Am. Pet. at 128-30

20 *with id.* at 422.)  The claim differs from Claim 11.B.6 only in adding the allegation that

21 "the prosecutor committed further misconduct by . . . testifying, in his opening and

22 closing arguments regarding the meaning of various words and letters on the exhibit."

23 (*Id.* at 422.)  This aspect of the claim was not presented in Kraft's August 12, 1990, pro

24 se brief, or in his August 23, 1990, pro se petition.  (Ex. 78; Lodged Doc. 20.)  The other

25 documents cited by Kraft are supplements to his *Marsden* motion.  (Exs. 35, 49, 50.)

26 Accordingly, Claim 32.B.6 is unexhausted to the extent that it asserts the prosecutor

27 committed misconduct by testifying about the meaning of Exhibit 165.  This subclaim is

28 exhausted in all other respects.

1    Claim 32.B.7 contends the prosecutor committed misconduct by trying to convict

2  Kraft based solely on a *modus operandi* theory, without specifying any actual *modus*

3  *operandi*. (1st Am. Pet. at 423.) It is nearly identical to Claim 12.B.4 (*id.* at 146), which

4  respondent concedes is exhausted. This claim is also exhausted. (*See* Ex. 78 at 3430-40.)

5    Claim 32.B.8 contends the prosecutor committed misconduct by introducing

6  gruesome, inflammatory, irrelevant, and unduly prejudicial photographs, and appealing to

7  anti-gay bias in describing the photographs. (1st Am. Pet. at 423-24.) This claim was

8  presented to the California Supreme Court in several of Kraft's pro se filings, and is

9  exhausted. (*See* Lodged Doc. 17 at 19; Lodged Doc. 19 at 15; Lodged Doc. 20 at 23-25;

10  1st Am. Pet. Ex. 78 at 3425.)

11

12                          **1.2.12 Claim 38**

13    Claim 38 alleges five instances of prosecutorial misconduct during the penalty

14  phase of the trial. (1st Am. Pet. at 477-81.) The parties dispute whether subclaim B.3 is

15  exhausted. This claim accuses the prosecutor of failing to provide the defense with

16  exculpatory evidence relating to the charged crimes, including the additional crimes

17  allegedly committed in Oregon and Michigan, which were introduced in aggravation at

18  the penalty phase. (*Id.* at 479.) The complaint about the trial court's denial of a

19  comprehensive discovery motion directed to different law enforcement agencies

20  presented in Kraft's November 21, 1990, pro se petition did not fairly present either the

21  factual basis or the federal legal theory underlying this *Brady* claim. (Lodged Doc. 22 at

22  G23.) Two other documents allegedly raising this claim are a supplement to a *Marsden*

23  motion and a pro se petition filed March 5, 1988, which is in substance a complaint about

24  appellate counsel's performance. (Exs. 50 & 54.) Kraft also points to an argument in a

25  pre-trial petition for review that apparently was filed in the California Supreme Court in

26  1986. (Ex. 83 at 3757-59.) This pre-trial petition seeks review of the Court of Appeal's

27  August 22, 1986, summary denial of a petition for writ of mandate/prohibition. (*Id.* at

28  3762.) The parties do not say whether this petition for review was actually filed and do

                                    12

not provide the California Supreme Court's ruling on it.  Nevertheless, because this petition sought extraordinary pretrial relief, it did not exhaust the claim.  *Pitchess*, 421 U.S. at 488.  Claim 38.B.3 is therefore unexhausted.

### 1.2.13 Claim 39

Claim 39 alleges several instructional errors at the penalty phase.  (1st Am. Pet. at 481-97.)  The parties disagree over the status of subclaim B.7, which alleges that the instructions taken as a whole failed to meet the heightened standards of reliability constitutionally required in capital sentencing decisions.  (1st Am. Pet. at 495-96.)  Kraft concedes ¶ 32.B is unexhausted, but contends the allegations of ¶ 32.A  and ¶ 34 were presented in two pro se *Marsden* motions.  (Exs. 33, 39.)  Because Kraft's complaints about appellate counsel did not exhaust the underlying allegations, Claim 39.B.7 is unexhausted.

### 1.2.14 Claim 40

Claim 40 alleges that Kraft was deprived of due process on direct appeal because the California Supreme Court refused to substitute appellate counsel despite a conflict of interest.  (1st Am. Pet. at 497-515.)  Respondent concedes the entire claim is exhausted, except for an allegation that during 1991 and 1992, the Attorney General and the Chief Justice communicated ex parte about the choice of Kraft's appellate attorney.  (*Id.* at 498.) This allegation was presented to the California Supreme Court in Kraft's "Thirteenth Supplement – Ex Parte *Marsden* Motion," filed July 21, 1999.  (Ex. 28 at 1071, 1084-90.) Because this was a claim directly about appellate counsel and the manner in which he was appointed, it was appropriately raised in a *Marsden* motion.  Claim 40 is exhausted.

### 1.2.15 Claim 41

In Claim 41, Kraft contends he was deprived of the effective assistance of counsel on appeal.  (1st Am. Pet. at 515-53.)  Of the thirty-three instances of deficient

performance alleged in the petition, respondent concedes that all but three are exhausted. For the following reasons, these three disputed subclaims (GG, HH, and II) are not exhausted.

Claim 41.GG complains that appellate counsel failed to raise numerous evidentiary issues relating to the Moore murder. (1st Am. Pet. at 552.) Although Kraft's pro se briefs contain scattered references to the issues identified in the petition, nothing in those documents fairly presents in one coherent statement the substance of the claim itself. (*See* Lodged Doc. 20 & Exs. 35, 43, 78.)

Claim 41.HH complains that appellate counsel failed to challenge the exclusion of some of the testimony of Naval Investigative Service ("NIS") officer Thomas Clark, and the denial of a hearing concerning the testimony of another NIS officer, David DePriest. (1st Am. Pet. at 553; *see* 99 R.T. 20902; 105 R.T. 22658-61.) The portions of the pro se petitions cited by Kraft in opposition to the motion to dismiss do not mention NIS officers. (Exs. 35, 54, 74.)

Claim 41.II relates to a murder victim whose identity was unknown at the time of trial and who was referred to as "John Doe Huntington Beach." He was subsequently identified as Kevin Baily. (1st Am. Pet. at 176-77.) Kraft complains that when Baily's name became known in the early 1990's, he informed appellate counsel, who failed to investigate. He claims that if appellate counsel had investigated Baily's background, it is reasonably probable that Kraft would have prevailed on appeal. (*Id.* at 553.) Kraft's "Eighth Supplement – Ex Parte *Marsden* Motion," filed September 17, 1997, includes a copy of a letter he wrote to appellate counsel enclosing a newspaper article reporting on the discovery that the formerly unknown victim was Kevin Baily, and urging counsel to address this "issue." (Ex. 35 at 1379, 1389.) This did not fairly present either the operative facts or the federal legal theory underlying this claim.

### 3.    Pleading Sufficiency

Respondent also argues that many of Kraft's unexhausted claims should be

dismissed under Rule 2(c) of the Rules Governing Section 2254 Cases. Rule 2(c) requires federal habeas petitions to "specify all the grounds for relief available to the petitioner," and "state the facts supporting each ground." It would be inefficient to address respondent's Rule 2(c) argument as to every one of the thirty-four claims and subclaims that respondent contends are inadequately pled when, in assessing whether a stay of federal proceedings is warranted, the Court must examine those same claims to assess whether they are potentially meritorious, and whether there is good cause for Kraft's failure to exhaust them.

## 2. PETITIONER'S MOTION FOR STAY

Because the petition contains both exhausted and unexhausted claims, it is a mixed petition subject to dismissal. *Lundy*, 455 U.S. at 522. To avoid dismissal, either Kraft must withdraw his unexhausted claims from the petition so that the remaining exhausted claims can be adjudicated, or these proceedings must be stayed while Kraft returns to the California Supreme Court to present his unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005); *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008). Kraft requests a stay.

### 2.1 Legal Standard

In *Rhines*, the Supreme Court explained that "stay and abeyance should be available only in limited circumstances," because it has the potential to undermine both the total exhaustion rule of *Rose v. Lundy* and the time limits on obtaining federal habeas corpus relief imposed by the Antiterrorism and Effective Death Penalty Act of 1996. *Rhines*, 544 U.S. at 276-77. The Court held that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. Moreover, federal proceedings should not be stayed if the unexhausted claims are "plainly meritless." *Id.* "And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant

1    him a stay at all." *Id.* at 278.  In short, a stay is warranted "if the petitioner had good

2    cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and

3    there is no indication that the petitioner engaged in intentionally dilatory litigation

4    tactics." *Id.*

5

6        **2.2    Potential Merits of Unexhausted Claims**

7        The petition contains approximately seventy unexhausted claims and subclaims.

8    These claims may be summarily dismissed at this stage of these proceedings only if "it is

9    perfectly clear that the petitioner has no chance of obtaining relief." *Cassett v. Stewart*,

10   406 F.3d 614, 624 (9th Cir. 2005).  The vast majority of Kraft's unexhausted claims fail

11   to survive even this generous standard of review.

12       Claim 1 is plainly meritless because the Ninth Circuit "has consistently held that

13   absolute disparities below 7.7% are insubstantial and constitutionally permissible."

14   *United States v. Cannady*, 54 F.3d 544, 548 (9th Cir. 1995); (*see* 1st Am. Pet. at 27.)

15       Claim 4 is plainly meritless because the death qualification of a jury pursuant to

16   *Wainwright v. Witt*, 469 U.S. 412 (1985) does not violate a defendant's right to be tried

17   by an impartial jury. *Lockhart v. McCree*, 476 U.S. 162 (1986).  Nor does excluding

18   potential jurors who are unable to set their views of the death penalty aside and apply the

19   law impartially violate their right to the free exercise of religion. *See United States v.*

20   *Mitchell*, 502 F.3d 931, 954 (9th Cir. 2007).

21       The portions of Claim 6 alleging that juror Lytle is presumptively biased because

22   he lied during voir dire and that another juror introduced extrinsic evidence are potentially

23   meritorious. (1st Am. Pet. at 72-77.)  However, the portion of Claim 6 alleging that a

24   juror was biased because she failed to disclose that her husband's mother was murdered

25   when the husband was young is plainly meritless. (*Id.* at 72); *see Hard v. Burlington*

26   *Northern R.R.*, 870 F.2d 1454, 1460 (9th Cir. 1989) ("we cannot put upon the jury the

27   duty to respond to questions not posed") (citation and internal quotation marks omitted).

28       Claim 7 is plainly meritless because jurors may not impeach their own verdict by

16

1    testifying they disregarded evidence. Fed. R. Evid. 606(b). For the same reason, Claim

2    36.B.5 is equally meritless.

3        Claim 8.B.2 is plainly meritless because the factual allegations supporting Kraft's

4    underlying claim of judicial bias are insufficient to overcome the "strong presumption

5    that counsel's conduct falls within the wide range of reasonable professional assistance."

6    *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

7        The portion of Claim 11 alleging that the admission of the contents of the glove

8    box of Kraft's car violated due process is plainly meritless because the irrelevant portions

9    of the evidence played no role in the prosecution's case. *Cf. McKinney v. Rees*, 993 F.2d

10   1378, 1386 (9th Cir. 1993) (due process violation where case against defendant was weak

11   and erroneously admitted evidence pervaded trial).

12       Claim 13.B.3 is plainly meritless because Kraft had no constitutional right to

13   obtain a ruling from the trial court before he testified to restrict the scope of the

14   prosecutor's cross-examination to certain counts and subjects.

15       The allegations in Claim 14 about potential alternate suspects Ford and Simpson

16   are plainly meritless. The trial court found that the proffered evidence did not give rise to

17   a reasonable doubt about whether Kraft killed Moore. (103 R.T. 22137-22231.) This

18   ruling did not violate Kraft's federal constitutional right to present evidence in his

19   defense. *See Spivey v. Rocha*, 194 F.3d 971, 978 (9th Cir. 1999).

20       In fifteen different claims (Claims 14-18, 20-25, 27-29, 31), Kraft alleges the trial

21   court erred in failing to give a special "pinpoint instruction" that reminded the jury of the

22   evidence relating to a particular murder count. Although defense counsel proposed such

23   instructions, the petition also conditionally pleads that "in the event that it is determined

24   that the requested instruction was not given because it was inadequate or inappropriate

25   under California law," then Kraft alleges that "trial counsel rendered constitutionally

26   ineffective assistance of counsel in drafting and proposing this instruction." (*See, e.g.,* 1st

27   Am. Pet. at 174, 184, 361.) All of these claims are plainly meritless since there is no

28   federal constitutional right to have the jury specifically instructed on which items of

17

1     evidence relate to which counts.  For the same reason, the allegation in Claim 24.B.5 that

2     counsel was ineffective for failing to include certain additional facts about "alternative

3     suspect McMellen" in the proposed pinpoint instruction relating to the Crisel murder is

4     plainly meritless.

5        Claim 17.B.2 is plainly meritless because "[t]here is no constitutional entitlement

6     to an in-court line-up or other particular methods of lessening the suggestiveness of in-

7     court identification . . . ."  *United States v. Domina*, 784 F.2d 1361, 1366-69 (9th Cir.

8     1986).  The allegation that witnesses were "coached" is "conclusory and wholly devoid of

9     specifics."  *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970).

10       Claim 17.B.3 is plainly meritless because Kraft was not in custody during his

11     interview with the police in 1975.  (*See* 93 R.T. 19368-80, 19430-33.)  "The fact that

12     questioning takes place in a police station does not necessarily mean that such questioning

13     constitutes custodial interrogation."  *United States v. Coutchavlis*, 260 F.3d 1149, 1157

14     (9th Cir. 2001).

15       Claim 17.B.4 is plainly meritless.  A criminal defendant's right to present a

16     defense is not violated by the joinder of charges, the use of circumstantial evidence, or the

17     age of the crimes.  Evidence that green carpet fibers were recovered in the William Bonin

18     case would not have raised a reasonable doubt about Kraft's involvement in Crotwell's

19     disappearance in 1975.  *See People v. Bonin*, 47 Cal. 3d 808, 820-22 (1989); *People v.*

20     *Bonin*, 46 Cal. 3d 659, 668-69 (1988).  The defense was not prevented from presenting

21     evidence of the disagreement among the experts over the height of the decedent.  (*See* 93

22     R.T. 19520, 19583; 112 R.T. 24253.)  Nor did the trial court's rulings on this issue violate

23     Kraft's due process rights.  (*See* 94 R.T. 19572-75; 110 R.T. 23914.)  To the extent that

24     the trial court excluded portions of Jeff Graves' out-of-court statement to the police, its

25     decision was a reasonable application of state law rules of evidence, and did not deprive

26     Kraft of any right under the federal constitution.  (*See* 103 R.T. 22240-59, 22336-37; 104

27     R.T. 22339-52, 22437-46); *Larson*, 515 F.3d at 1065.

28       Claim 17.B.6 is plainly meritless because any misleading implication in the police

1  officers' testimony about Kraft's statements about possibly being the last person in

2  contact with Crotwell on the night he disappeared would have been immaterial in light of

3  the testimony of Michael Ditmar and Kent May, and Kraft's tape-recorded description of

4  meeting a man whose name he did not know in a parking lot in Long Beach and taking

5  him for a drive. (*See* 93 R.T. 19252-53, 19339-40, 19385-19407.)

6       Claim 17.B.6(A) is plainly meritless because the petition identifies no exculpatory

7  evidence that was suppressed. (*See* 1st Am. Pet. at 202-206.) Although Kraft points to

8  possible misconduct by a police officer in another case, he does not allege the officer

9  testified falsely at Kraft's trial or otherwise procured false evidence. *See People v.*

10 *Morris*, 46 Cal. 3d 1, 33-34 (1988); (1st Am. Pet. at 203-204.)

11      The portions of Claim 18 alleging the fingerprint evidence was scientifically

12 unreliable and counsel was ineffective in challenging it are potentially meritorious. (1st

13 Am. Pet. at 219-24, 230-33.)  In contrast, the conclusory assertions in Claim 18.B.8 about

14 Bonin and the dirt in the victim's trachea do not raise a colorable *Brady* claim. (*Id.* at

15 238-39.)  The allegations of prosecutorial misconduct in Claim 18.B.9 (¶¶ 48, 49) are

16 plainly meritless because a prosecutor may argue any reasonable inference from the

17 evidence. *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).

18      The portions of Claim 20 alleging the hair identification evidence was

19 scientifically unreliable and counsel was ineffective in challenging it are potentially

20 meritorious. (1st Am. Pet. at 249-54.)

21      The allegation in Claim 21.B.1 that Kraft's constitutional rights were violated

22 when the trial court threatened to hold defense counsel in contempt if he did not rush the

23 presentation of defense witnesses is plainly meritless. (*Id.* at 264 (citing 101 R.T. 21506-

24 507).)  The contempt threat was not made in front of the jury, and there is no evidence

25 that it affected defense counsel's performance. *Cf. United States v. Kelly*, 314 F.2d 461,

26 463 (6th Cir. 1963).

27      The portion of Claim 24.B.2 complaining about the trial court's refusal to grant the

28 defense more time to present Andrew Wilhelm's testimony, and its exclusion of the

1    testimony of "prospective defense witness Joan," is plainly meritless. (1st Am. Pet. at

2    294.) The trial court found that Wilhelm, an out-of-state witness unwilling to appear

3    voluntarily, was unavailable, and a police officer then related Wilhelm's statements. (100

4    R.T. 21428-29; 101 R.T. 21432-38, 21531-52). "Joan" was a psychic whose testimony

5    about possible third party suspects the trial court ruled inadmissible. (99 R.T. 20995.)

6    These state law evidentiary rulings did not violate the Constitution. *See, e.g., Rupe v.*

7    *Wood*, 93 F.3d 1434, 1440 (9th Cir. 1996) (court may exclude astrological evidence).

8        The portion of Claim 24.B.6 alleging the wrongful exclusion of Naval

9    Investigative Service agent Clark's testimony and the wrongful admission of De Priest's

10   testimony is plainly meritless. (1st Am. Pet. at 297.) The trial court's rulings on these

11   witnesses' testimony were based on state law rules of evidence, and did not violate the

12   federal Constitution. (*See* 99 R.T. 20893-902; 105 R.T. 22658-661.) Claim 41.HH is

13   therefore equally meritless. (1st Am. Pet. at 553.) The portion of Claim 24.B.6 accusing

14   the prosecutor of misconduct for presenting false testimony about Tylenol III is plainly

15   meritless because even if the testimony was false, it was not material. (*Id.* at 297.)

16       The portions of Claim 25 predicated on the loss or destruction of evidence are

17   plainly meritless. (*Id.* at 304, 312-14); *see Arizona v. Youngblood*, 488 U.S. 51, 57-58

18   (1988).

19       The unexhausted portions of Claim 25.B.7 are plainly meritless. (1st Am. Pet. at

20   321-22 ¶¶ 39, 40, 44.) The fact that the prosecutor called Mr. Lee and Dr. Reed to testify

21   about the toxicity of the drugs in Loggins' body shows the prosecutor did not fail to

22   disclose evidence in his possession that cast doubt on the accuracy of Dr. Yatar's

23   testimony. (*See* 87 R.T. 17969-18081.) It is not perjury for experts to disagree with each

24   other or revise their own opinions. *United States v. Casas*, 425 F.3d 23, 38 (1st Cir.

25   2005). And it was not misconduct for the prosecutor to introduce photographs that

26   accurately depicted the state of Loggins' body when it was found. (86 R.T. 17764-92.)

27       Claim 25.B.8 is plainly meritless because a claim of judicial bias cannot be

28   predicated on disagreement with the judge's legal rulings. *See Liteky v. United States,*

1    510 U.S. 540, 555 (1994); *Larson*, 515 F.3d at 1067.

2         The unexhausted portions of Claim 30 are plainly meritless. *See McCleskey v.*

3    *Kemp*, 481 U.S. 279, 292-93 (1987); *Strickland*, 466 U.S. at 694.

4         Claim 31 includes seven unexhausted allegations of ineffective assistance of

5    counsel at the guilt phase. Subclaims B.1 and B.5 are plainly meritless for the reasons

6    discussed above in connection with Claims 1 and 4. Subclaims B.2, B.6, and B.7 are

7    potentially meritorious for the reasons discussed above in connection with Claims 6, 18

8    and 20. Subclaim B.8 is plainly meritless, as previously discussed in connection with the

9    numerous claims challenging the absence of pinpoint instructions. Subclaim B.10 alleges

10   counsel was ineffective for failing to object to the twelve separate instances of

11   prosecutorial misconduct alleged in Claim 32. To the extent this claim is based on the

12   exhausted allegations in Claims 32.B.4, 32.B.5, 32.B.7, and 32.B.8, it is plainly meritless

13   since it fails to explain how counsel's performance was deficient. To the extent it is

14   based on Claim 32.B.11, it is plainly meritless because the prosecutor's arguments about

15   *modus operandi* and Exhibit 165 were within the range of permissible argument based on

16   the evidence. The remaining portions of Claim 31.B.10, which are based on the

17   unexhausted portions of Claim 32, are equally meritless.

18        Claim 32 includes six unexhausted allegations of prosecutorial misconduct at the

19   guilt phase, plus a cumulative error claim. Subclaims B.1, B.2, B.9, and B.10 are plainly

20   meritless for reasons previously discussed. Subclaim B.3 is plainly meritless because the

21   petition does not explain in what way the state courts failed to provide a full and fair

22   opportunity to litigate Kraft's Fourth Amendment claims. *See Moorman v. Schriro*, 426

23   F.3d 1044, 1053 (9th Cir. 2005); *People v. Kraft*, 23 Cal. 4th at 1036-51. The

24   unexhausted allegation in subclaim B.6 that the prosecutor committed misconduct by

25   "testifying" about the meaning of the entries on Exhibit 165 is plainly meritless. (*See* 111

26   R.T. 23990-99, 24015, 24019, 24035, 24041-42, 24058, 24073, 24076, 24099-24100,

27   24105-24107, 24111, 24123-25, 24133, 24138, 24140, 24143-44; 113 R.T. 24476,

28   24481-82, 24488, 24506-12.)

21

The unexhausted portions of Claim 35.B.4 are plainly meritless. Joseph Fancher testified and the jury was entitled to believe him. (116 R.T. 25169-25230.) For the seven additional victims other than "John Doe Oregon," evidence was introduced that Kraft possessed an item of their property at some point after they disappeared. *People v. Kraft*, 23 Cal. 4th at 1023-28. Claim 35.B.6 is plainly meritless because the jury was not instructed to consider whether Kraft felt or lacked remorse. (124 R.T. 27187-92.)

The unexhausted portions of Claim 37 are plainly meritless for reasons previously discussed.

The unexhausted portions of Claim 38 are plainly meritless because the petition does not identify any undisclosed exculpatory evidence relating to the uncharged crimes, and the prosecutor's argument about sympathy was a legitimate comment on one of the factors the jury was instructed to consider. (1st Am. Pet. at 478-80; 123 R.T. 27037-41; 124 R.T. 27191.)

Claim 39.B.6 is plainly meritless because there is no evidence that the jurors misunderstood the consequences of imposing a sentence of life without the possibility of parole. (1st Am. Pet. at 494-95); *cf. McDowell v. Calderon*, 107 F.3d 1351, 1367-68 (9th Cir.), *amended*, 116 F.3d 364 (9th Cir.), *vacated in part on other grounds*, 130 F.3d 833 (9th Cir. 1997) (en banc). Claim 39.B.7 is plainly meritless because the Supreme Court opinions cited in ¶ 32.A and ¶ 32.B do not require capital sentencing juries to be instructed as the petition alleges. (1st Am. Pet. at 495-96.)

Claim 41.GG is plainly meritless because "[f]ailure to raise a meritless argument does not constitute ineffective assistance." *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985). Claim 41.II is plainly meritless because the petition does not explain how an investigation of the victim's background would have made a difference. (1st Am. Pet. at 553.)

### 2.3    Good Cause for Failure to Exhaust

A stay of these proceedings is appropriate only if "there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277.

22

1    Although the Supreme Court has not provided a definition of "good cause" in this

2    context, it has given an example of one circumstance that constitutes good cause.  In *Pace*

3    *v. DiGuglielmo*, 544 U.S. 408 (2005), the Court addressed the question of whether a state

4    habeas petition that is ultimately rejected by a state court as untimely tolls the federal

5    statute of limitations on filing a federal habeas petition.  There is no tolling in these

6    circumstances, the Court held, because an untimely petition is not a "properly filed

7    application for State post-conviction review" under 28 U.S.C. § 2244(d)(2).  *Id.* at 410.

8    The Court recognized that its interpretation of the statute might pose difficulties for a

9    prisoner who diligently tries to exhaust his claims before coming to federal court, only to

10   be told at the conclusion of his state court proceedings that his petition was untimely.  *Id.*

11   at 416.  The Court explained that a prisoner "might avoid this predicament, however, by

12   filing a 'protective' petition in federal court and asking the federal court to stay and abey

13   the federal habeas proceedings until state remedies are exhausted." *Id.* (citing *Rhines*,

14   544 U.S. at 278).  The Court observed that "[a] petitioner's reasonable confusion about

15   whether a state filing would be timely will ordinarily constitute 'good cause' for him to

16   file in federal court."  *Id.*

17          The Court of the Appeals for the Ninth Circuit has not defined "good cause"

18   either, but it has provided some guidance on what it is not.  In *Wooten v. Kirkland*, 540

19   F.3d 1019 (9th Cir. 2008), the court explained that an interpretation of the good cause

20   requirement that "would render stay-and-abey orders routine . . . would run afoul of

21   *Rhines* and its instruction that district courts should only stay mixed petitions in 'limited

22   circumstances.'"  *Id.* at 1024 (quoting *Rhines*, 544 U.S. at 277).  The court rejected the

23   argument that a pro se petitioner's mistaken impression that his former attorney had

24   previously included a claim in an appellate brief constituted good cause for the

25   petitioner's failure to exhaust the claim before bringing it to federal court.  *Id.*

26   Nevertheless, to excuse a failure to exhaust, a habeas petitioner is not required to

27   demonstrate the existence of "extraordinary circumstances." *Jackson v. Roe*, 425 F.3d

28   654, 661-62 (9th Cir. 2005).  Instead, the appropriate standard "appears to be less

                                        23

1   stringent than . . . 'extraordinary circumstances.'" *Id.* at 662 (citation and internal
2   quotation marks omitted).

3       Kraft argues he had good cause for not exhausting his claims before filing a
4   federal habeas petition because he "could not have filed a state petition within the federal
5   statute of limitations with any assurance that it would have been deemed timely by the
6   state supreme court and therefore 'properly filed' under the tolling provision of 28 U.S.C.
7   § 2244(d)." (Pet'r Mot. for Stay at 2 (citing *Pace*, 544 U.S. at 410).)  During the course
8   of his appeal to the California Supreme Court, however, Kraft filed several timely habeas
9   corpus petitions.  His appointed appellate counsel also submitted a petition on November
10  11, 2000, which was denied on the merits (except for a premature claim) on July 17,
11  2002.  No claims were barred as untimely.  Kraft has failed to explain why his
12  unexhausted claims were not included in any of his prior timely petitions.  In short, he has
13  not demonstrated that there was any reasonable excuse for waiting until 2004 to raise the
14  approximately seventy unexhausted allegations that are included in the federal petition.

15

16      **2.4    Abusive Litigation Tactics**

17      Because "it is perfectly clear that the petitioner has no chance of obtaining relief"
18  on almost all of his unexhausted claims, *Cassett*, 406 F.3d at 624, and there is no good
19  cause for the failure to raise any of the claims earlier, a stay of these proceedings to
20  permit Kraft to return to the California Supreme Court is not justified. *Rhines*, 544 U.S.
21  at 278.  For this reason, there is no need to determine at this time whether Kraft has
22  engaged in abusive litigation tactics, or intentionally caused delay in the resolution of this
23  case.

24

25  **DISPOSITION**

26      1. Respondent's Motion to Dismiss First Amended Petition for Writ of Habeas
27  Corpus is GRANTED in part.  All claims or portions of claims that both parties agree are
28  unexhausted, as set forth in the Superseding Joint Statement of the Parties Regarding

1    Exhaustion, filed November 22, 2005, are hereby DISMISSED.  In addition, the portions
2    of claims that the Court finds to be unexhausted, as described in Part 1.2 of this Order, are
3    DISMISSED.
4         2. Petitioner's Motion for Order Staying Federal Proceeding is DENIED.
5         3. Respondent shall file an answer to the petition no later than June 30, 2009.
6
7
8
9    IT IS SO ORDERED.
10   DATED: April 23 2009
11
12
13                                        Andrew J. Guilford
                                          United States District Judge
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28