EDMUND G. BROWN JR.
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
ANNE FEATHERMAN FRASER
Deputy Attorney General
ADRIANNE S. DENAULT
Deputy Attorney General
State Bar No. 136920
  110 West A Street, Suite 1100
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone:  (619) 645-2287
  Fax:  (619) 645-2191
  E-mail:  Adrianne.Denault@doj.ca.gov

*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RANDY STEVEN KRAFT,**<br><br>*Petitioner*,<br><br>*v.*<br><br>**ROBERT K. WONG, *Warden*,**<br>***California State Prison at San Quentin*,**<br><br>*Respondent*. | CV 01-4623 AG<br><br>**ANSWER TO FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

# TABLE OF CONTENTS

**Page**

Answer to First Amended Petition for Writ of Habeas Corpus ................................. 1

Introduction ......................................................................................................... 1

Procedural & Jurisdictional Statement ................................................................ 2

Preliminary Statement ...................................................................................... 10

Statement of Facts ............................................................................................ 12

    A.    The California Supreme Court's Summary ............................ 12

        1.    Facts .................................................................. 12

            a.    Guilt Phase Evidence ........................................... 12

                (1)    Overview ................................................ 12

        2.    Murder of Terry Lee Gambrel ....................................... 13

        3.    Murder and Mayhem of Geoffrey Alan Nelson ............. 15

        4.    Murder of Rodger James DeVaul, Jr. ............................. 17

        5.    Murder of Eric Herbert Church .................................... 19

        6.    Murder of Robert Wyatt Loggins, Jr. ............................ 20

        7.    Murder of Donald Harold Crisel ................................... 22

        8.    Murder and Sodomy of Michael Joseph Inderbieten ..... 23

        9.    Murder of Keith Arthur Klingbeil ................................ 25

        10.    Murder of Richard Allen Keith .................................... 26

        11.    Murder of Roland Gerald Young .................................. 26

        12.    Murder of Scott Michael Hughes .................................. 28

        13.    Murder of Mark Howard Hall ....................................... 30

        14.    Murder of Keith Daven Crotwell .................................. 32

        15.    Murder of Ronald Gene Wiebe ..................................... 34

        16.    Murder of "John Doe Huntington Beach" ..................... 35

        17.    Murder of Edward Daniel Moore .................................. 36

        18.    Defense Evidence Relating to the Charges Generally ..................................................... 37

    B.    Penalty Phase Evidence ................................................. 37

        1.    Overview of Prosecution Case ...................................... 37

        2.    Sexual Assault on Joseph F. .......................................... 38

        3.    Murder of Michael O'Fallon ........................................ 39

        4.    Murder of "John Doe Oregon" ...................................... 40

        5.    Murder of Michael Duane Cluck ................................... 40

        6.    Murder of Brian Whitcher ............................................ 41

i

**TABLE OF CONTENTS**
**(continued)**

Page

    7.    Murder of Anthony Silveira ............................................. 42

    8.    Murders of Dennis Alt and Christopher Schoenborn..... 44

    9.    Murder of Lance Taggs .................................................. 45

    10.    Defense Penalty Phase Evidence................................... 47

Affirmative defenses........................................................................ 47

    A.    Failure to allege violation of federal law.............................. 47

    B.    Lack of subject matter jurisdiction ........................... 48

    C.    Procedural default........................................................ 48

    D.    Non-retroactivity:  The *Teague* Doctrine ................. 50

    E.    Laches ......................................................................... 50

    F.    The statute of limitations:  28 U.S.C. § 2244(d) ...................... 50

    G.    Abuse of the writ ....................................................... 51

    H.    Harmless error ........................................................... 51

    I.    General denial ............................................................ 51

Standard of Review........................................................................ 51

Claims for Relief............................................................................ 54

    I.  Claim 1:  Kraft's claim regarding the jury venire was dismissed ............ 54

    II.  Claim 2:  Kraft received a fair trial before a representative jury and the trial court properly refusal to augment jury fees............................ 54

    III.  Claim 3:  Kraft was tried before a fair and impartial jury and the trial court properly declined to change venue.................................... 55

    IV.  Claim 4:  Kraft's claim regarding a fair, impartial and representative jury that was properly death-qualified was dismissed ............................................................................ 57

    V.  Claim 5:  Kraft received a trial before a fair and impartial jury that determined both guilt and penalty........................................ 57

    VI.  Claim 6:  Kraft received a trial before a fair and impartial jury and jurors did not fail to disclose critical information during voir dire.......................................................................... 59

    VII.  Claim 7:  Kraft's claim the jury at the penalty phase refused to consider all available mitigating evidence was dismissed................ 60

    VIII.  Claim 8:  Kraft was tried before a fair and impartial tribunal............ 61

    IX.  Claim 9:  Kraft was properly convicted of capital murder because he murdered 16 young men and is not "actually innocent"................ 62

    X.  Claim 10:  All 16 murder counts, and the sodomy and mayhem counts were properly joined in a single trial........................................ 63

    XI.  Claim 11:  The trial court properly admitted into evidence the cryptic list of murdered victims written by Kraft ............................... 65

(Test Case Number)

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

XII.  Claim 12:  *Modus operandi* evidence was properly introduced,
the jury was properly instruction on it and Kraft received
4       adequate process, equal protection, and a fundamentally fair trial .... 66

5

XIII.  Claim 13:  The trial court properly denied Kraft's request to
testifiy as to only some counts without being subject to
6       examination as to all other counts ........................................................ 68

XIV.  Claim 14:  Kraft was properly convicted of the first degree
7       murder of Edward Daniel Moore (Count 1), and sufficient
evidence supports the conviction ........................................................ 69

8

XV.  Claim 15:  Kraft was properly convicted of the first degree
murder of John Doe Huntington Beach (Count 2), and
9       substantial evidence supports that conviction ................................... 71

10

XVI.  Claim 16:  Kraft was properly convicted of the first degree
murder of Ronnie Gene Wiebe (Count 3), and substantial
11      evidence supports that conviction ....................................................... 72

12

XVII.  Claim 17:  Kraft was properly convicted of the first degree
murder of Keith Daven Crotwell (Count 4), and substantial
13      evidence supports that conviction ....................................................... 74

XVIII.  Claim 18:  Kraft was properly convicted of the first degree
14      murder of Mark Howard Hall (Count 5), and substantial
evidence supports that conviction ....................................................... 75

15

XIX.  Claim 19:  Kraft was properly convicted of the first degree
murder of Scott Michael Hughes (Count 6), and substantial
16      evidence supports that conviction ....................................................... 77

17

XX.  Claim 20:  Kraft was properly convicted of the first degree
murder of Roland Gerald Young (Count 7), and substantial
18      evidence supports that conviction ....................................................... 78

19

XXI.  Claim 21:  Kraft was properly convicted of the first degree
murder of Richard Allen Keith (Count 8), and substantial
20      evidence supports that conviction ....................................................... 80

21

XXII.  Claim 22:  Kraft was properly convicted of the first degree
murder of Keith Arthur Klingbeil (Count 9), and substantial
22      evidence supports that conviction ....................................................... 81

23

XXIII.  Claim 23:  Kraft was properly convicted of the first degree
murder and sodomy of Michael Joseph Inderbieten (Counts 10
& 11), and substantial evidence supports those convictions ............. 83

24

XXIV.  Claim 24:  Kraft was properly convicted of the first degree
murder of Donald Harold Crisel (Count 12), and substantial
25      evidence supports that conviction ....................................................... 84

26

XXV.  Claim 25:  Kraft was properly convicted of the first degree
murder of Robert Wyatt Loggins, Jr. (Count 13), and substantial
27      evidence supports that conviction ....................................................... 86

28

iii

(Test Case Number)

**TABLE OF CONTENTS**
(continued)

Page

XXVI.  Claim 26:  Kraft was properly convicted of the first degree murder of Eric Herbert Church (Count 14), and substantial evidence supports the conviction .......................................................... 88

XXVII.  Claim 27:  Kraft was properly convicted of the first degree murder of Geoffrey Alan Nelson (Count 16), and substantial evidence supports the conviction ........................................... 90

XXVIII.  Claim 28:  Kraft was properly convicted of the first degree murder of Rodger James Devaul, Jr. (Count 18), and substantial evidence supports the conviction ........................................... 91

XXIX.  Claim 29:  Kraft was properly convicted of the first degree murder of Terry Lee Gambrel (Count 19), and substantial evidence supports the conviction ........................................... 93

XXX.  Claim 30:  California's death penalty law is constitutional ............. 94

XXXI.  Claim 31:  Kraft received adequate assistance of counsel in the guilt phase .......................................................................... 96

XXXII.  Claim 32:  There was no misconduct by the prosecutor ................ 97

XXXIII.  Claim 33:  The jury instructions were properly given and constitutional ...................................................................... 99

XXXIV.  Claim 34:  Kraft received adequate process, equal protection, a fundamentally fair trial, and the trial court properly admitted exhibit 1058b into evidence ............................................. 101

XXXV.  Claim 35:  Kraft received a constitutionally sound trial and the death penalty was appropriately imposed for Kraft's crimes ..... 102

XXXVI.  Claim 36:  Kraft received adequate process, equal protection, and a fundamentally fair penalty phase trial .................................... 104

XXXVII.  Claim 37:  Kraft received constitutionally effective assistance of counsel during the penalty phase ................................. 105

XXXVIII.  Claim 38:  There was no prosecutorial misconduct ................ 107

XXXIX.  Claim 39:  The jury was properly instructed in the penalty phase ................................................................................. 108

XL.  Claim 40:  Kraft received adequate process on appeal concerning appellate counsel, and the California Supreme Court properly denied his motions to remove appellate counsel ................ 110

XLI.  Claim 41:  Kraft received effective assistance of appellate counsel ................................................................................ 111

Conclusion ............................................................................... 113

iv                                              (Test Case Number)

1

# TABLE OF AUTHORITIES

2

3

**Page**

4

**CASES**

5

*Bell v. Cone*
  535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d (2002) ............................................ 12 *et passim*

6

7

*Bragg v. Galaza*
  242 F.3d 1082 (9th Cir. 2001) ................................................................................. 53

8

*Brecht v. Abrahamson*
  507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 353 (1993) ........................................... 53

9

10

*Calderon v. United States District Court (Bean)*
  96 F.3d 1126 (9th Cir. 1996) .................................................................................... 49

11

*Chapman v. California*
  386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) .............................................. 53

12

13

*Davis v. Woodford*
  333 F.3d 982 (9th Cir. 2003) .................................................................................... 51

14

*Davis v. Woodford*
  384 F.3d 628 (9th Cir. 2004) .................................................................................... 53

15

16

*Dryer v. Calderon*
  151 F.3d 970 (9th Cir. 1998) (en banc) ................................................................... 59

17

18

*Early v. Packer*
  537 U.S. 3, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ............................................ 52

19

*Garlotte v. Fordice*
  515 U.S. 39, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995) .......................................... 50

20

21

*Gomez v. United States District Court for the Northern District of California*
  503 U.S. 653, 112 S. Ct. 1652, 118 L. Ed. 2d 293 (1992) ....................................... 50

22

23

*Hernandez v. Small*
  282 F.3d 1132 (9th Cir. 2002) .................................................................................. 52

24

*Holland v. Jackson*
  542 U.S. 649, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) ............................... passim

25

26

*In re Dixon*
  41 Cal.2d 756 ............................................................................................................ 49

27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*In re Lessard*
   62 Cal.2d 497 (1965) ......................................................................... 49

5

*In re Lindley*
   29 Cal.2d 709 (1947) ......................................................................... 49

6

7

*In re Waltreus*
   62 Cal.2d 218 (1965) ......................................................................... 49

8

9

*Inthavong v. Lamarque*
   420 F.3d 1055 (9th Cir. 2005) ........................................................... 53

10

*Johnson v. Zerbst*
   304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) ........................ 53

11

12

*Kraft v. California*
   532 U.S. 908, 121 S. Ct. 1234, 149 L. Ed. 2d 142 (2001) .................... 50

13

14

*LaCrosse v. Kernan*
   244 F.3d 702 (9th Cir. 2001) ............................................................. 49

15

*Lockyer v. Andrade*
   538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) .................... 52

16

17

*Lonchar v. Thomas*
   517 U.S. 314, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996) .................... 50

18

19

*Medina v. Hornung*
   386 F.3d 872 (9th Cir. 2004) ............................................................. 53

20

*Miller-el v. Cockrell*
   537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ................... 12 *et passim*

21

22

*Mitchell v. Esparza*
   540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) ............................. 53

23

24

*People v. Kraft*
   23 Cal.4th 978 (2000) ....................................................................... 12 *et passim*

25

*Price v. Vincent*
   538 U.S. 634, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003) .................... 51

26

27

*Teague v. Lane*
   489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) .................... 50

28

vi

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4

*Thompson v. Keohane*
    516 U.S. 99 (1995) ................................................................................................ *passim*

5

*Tinsley v. Borg*
    895 *F.2d* 520 (9th Cir. 1990) ................................................................................ 52

6
7

*Vasquez v. Hillery*
    474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) ........................................ 50

8
9

*Walker v. Johnson*
    312 U.S. 275, 61 S. Ct. 574, 85 L. Ed. 830 (1941) .............................................. 53

10

*Williams v. Taylor*
    529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) .................................... 52

11
12

*Woodford v. Garceau*
    538 U.S. 202, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003) .................................... 51

13
14

*Yarborough v. Alvarado*
    541 U.S. 652, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) .................................... 52

15
16

*Yarborough v. Gentry*
    540 U.S. 1, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) ............................................... 11 *et passim*

17
18

**STATUTES**

28 U.S.C. § 2241 .................................................................................................... 48

19
20

28 U.S.C. § 2244 .................................................................................... 11 *et passim*

28 U.S.C. § 2254 .................................................................................... 10 *et passim*

21
22

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") Pub. L. No. 104-132,
    110 Stat. 1214 (1996) ............................................................................... 10, 51

23

California Penal Code
    § 187 ................................................................................................................. 3, 4

24

    § 190.2 .......................................................................................................... 2, 3, 4

25

    § 190.4 ................................................................................................................... 7
    § 203 ................................................................................................................. 3, 4

26

    § 286 ................................................................................................................. 3, 4

27

    § 12022.7 ............................................................................................................ 3, 4

28

(Test Case Number)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

## CONSTITUTIONAL PROVISIONS

United States Constitution
    IV Amendment ................................................................................ 49
    V Amendment ................................................................................. 2
    VI Amendment ................................................................................ 2
    VIII Amendment ............................................................................. 2
    XIV Amendment ............................................................................. 2

## COURT RULES

CALJIC No. 8.85 ................................................................................. 108

Federal Rules of Civil Procedure, Rule 8(c) ...................................... 50

(Test Case Number)

**ANSWER TO FIRST AMENDED PETITION**
**FOR WRIT OF HABEAS CORPUS**

Pursuant to this Court's April 24, 2009 Order (Doc. 144), Robert K. Wong, Warden of San Quentin State Prison in San Quentin, California, by and through his attorneys of record, files this Answer to the First Amended Petition for Writ of Habeas Corpus filed on January 12, 2005, as modified by the Superseding Joint Statement of the Parties Regarding Exhaustion (Doc. 123), and this Court's Order on Respondent's Motion to Dismiss and Petitioner's Motion for Stay (Doc. 144), and hereby generally and specifically denies each and every allegation in the First Amended Petition, including but not limited to the allegations contained in subject headings, subheadings, and footnotes, except as expressly set forth herein. Respondent answers the First Amended Petition by admitting, denying, and affirmatively alleging as follows:

**INTRODUCTION**

Between December 1972 and May 1983, Randy Steven Kraft (hereinafter "Kraft") murdered 16 young male adults, many of whom were United States Marines. Many of Kraft's victims had ligature marks on their wrists. Kraft sexually mutilated several of his victims and engaged in sexual conduct with some of his victims. Most of Kraft's victims had prescription drugs (frequently diazepam, which is sold as Valium) and alcohol in their systems at the time of their death. Kraft left the bodies of most of his victims close to various Southern California freeways.

Kraft received a fundamentally fair trial in Orange County Superior Court before a fair and impartial judge and jury that returned fair and reliable guilt and penalty verdicts; Kraft was afforded constitutionally adequate process and protection; Kraft was afforded his constitutional rights to confront witnesses and the evidence presented against him, to remain silent and not incriminate himself,

1   to the effective assistance of conflict-free counsel, and to a trial free from

2   prosecutorial misconduct; Kraft received the benefits of the rights guaranteed by the

3   Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution,

4   and his analogous rights under the California Constitution; and Kraft's guilt on each

5   of the murder counts, special circumstances, and other crimes and allegations was

6   proven beyond a reasonable doubt.

7

8                **PROCEDURAL & JURISDICTIONAL STATEMENT**

9        As to Section II, paragraph 1, Respondent affirmatively alleges Kraft is in the

10  lawful custody of the California Department of Corrections and Rehabilitation.  He

11  was convicted by a jury in Orange County Superior Court on May 12, 1989, in case

12  number C52775, of the first degree murders of Edward Daniel Moore (Count 1);

13  John Doe Huntington Beach (Count 2); Ronnie Gene Wiebe (Count 3); Keith

14  Daven Crotwell (Count 4); Mark Howard Hall (Count 5); Scott Michael Hughes

15  (Count 6); Roland Gerald Young (Count 7); Richard Allen Keith (Count 8); Keith

16  Arthur Klingbeil (Count 9); Michael Joseph Inderbieten (Count 11); Donald Harold

17  Crisel (Count 12); Robert Wyatt Loggins, Jr. (Count 13); Eric Herbert Church

18  (Count 14); Geoffrey Alan Nelson (Count 16); Rodger James DeVaul, Jr.

19  (Count 18); and Terry Lee Gambrel (Count 19).  The special circumstance of

20  multiple murder was alleged as to counts 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, and 19

21  (Cal. Pen. Code, § 190.2(a)(3)).  (16 CT 5398-5450.)  The special circumstance of

22  murder in the commission of sodomy was alleged as to counts 11 and 18 (Cal. Pen.

23  Code, § 190.2(a)(17)(iv)), and it was found true as to Count 11 and found untrue as

24  to Count 18.  (13 CT 4167-4171.)  On August 11, 1989, the jury returned a sentence

25  of death for the murders of Scott Michael Hughes (Count 6); Roland Gerald Young

26  (Count 7); Richard Allen Keith (Count 8); Keith Arthur Klingbeil (Count 9);

27  Michael Joseph Inderbieten (Count 11); Donald Harold Crisel (Count 12); Robert

28  Wyatt Loggins, Jr. (Count 13); Eric Herbert Church (Count 14); Geoffrey Alan

Nelson (Count 16); Rodger James DeVaul, Jr. (Count 18); and Terry Lee Gambrel (Count 19).  The trial court pronounced the judgment of death on November 22, 1989.  The court also imposed consecutive sentences of 25 years to life for the murders of Edward Daniel Moore (Count 1); John Doe Huntington Beach (Count 2); Ronnie Gene Wiebe (Count 3); Keith Daven Crotwell (Count 4); and Mark Howard Hall (Count 5), but stayed that sentence pending the execution of the death sentence.

As to Section II, paragraph 2, Respondent admits that on May 12, 1989, in Orange County Superior Court, case number C52775, in the case of *People of the State of California v. Randy Steven Kraft*, a jury convicted Kraft of 16 counts of first degree murder under California Penal Code section 187 (counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, 19), and found true 11 allegations of the special circumstance of multiple murder under California Penal Code section 190.2, subdivision (a)(3) (as to counts 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, and 19).  (16 CT 5398-5450.)  Respondent affirmatively alleges the same jury convicted Kraft of the sodomy of Michael Inderbieten (Cal. Pen. Code, § 286; Count 10), and found that Kraft inflicted great bodily injury in the commission of that offense (Cal. Pen. Code, § 12022.7), and the jury found true the special circumstance allegation of murder in the commission of sodomy (Cal. Pen. Code, § 190.2(a)(17)(iv); Count 11).  The jury also found Kraft guilty of having inflicted mayhem on Geoffrey Nelson (Cal. Pen. Code, § 203; Count 15).  The jury acquitted Kraft of the sodomy of Rodger DeVaul (Count 17), and found untrue the special circumstance that the murder of Rodger DeVaul was committed during sodomy.  (16 CT 5398-5450.)

As to Section II, paragraph 3.A, Respondent admits the crimes for which Kraft was convicted in Orange County Superior Court, case number C52775, were committed between 1972 and 1983.  (13 CT 4167-4171.)

///

1       As to Section II, paragraphs 3.B, 3.C, and 3.D, Respondent admits Kraft was

2   arrested on May 14, 1983, and arraigned in Orange County Superior Court on

3   December 14, 1983.  Respondent affirmatively alleges Kraft was arraigned in

4   Orange County Municipal Court shortly after his arrest, and Kraft was bound over

5   to superior court pursuant to a preliminary hearing held in August 1983.

6       Respondent admits the allegations in Section II, paragraphs 3.E and 3.F.

7       As to Section II, paragraph 3.G, Respondent affirmatively alleges that Kraft

8   was tried on the first amended information filed in Orange County Superior Court

9   on July 19, 1988, which alleged 16 counts of murder (Cal. Pen. Code, § 187).  The

10  victims were: Edward Daniel Moore (Count 1); John Doe Huntington Beach

11  (Count 2); Ronnie Gene Wiebe (Count 3); Keith Daven Crotwell (Count 4); Mark

12  Howard Hall (Count 5); Scott Michael Hughes (Count 6); Roland Gerald Young

13  (Count 7); Richard Allen Keith (Count 8); Keith Arthur Klingbeil (Count 9);

14  Michael Joseph Inderbieten (Count 11); Donald Harold Crisel (Count 12); Robert

15  Wyatt Loggins, Jr. (Count 13); Eric Herbert Church (Count 14); Geoffrey Alan

16  Nelson (Count 16); Rodger James DeVaul, Jr. (Count 18); and Terry Lee Gambrel

17  (Count 19).  Other counts in the first amended information charged Kraft with other

18  crimes against the same victims.  Count 10 charged the sodomy of Michael

19  Inderbieten (Cal. Pen. Code, § 286), and contained an allegation that Kraft

20  personally inflicted great bodily injury in the commission of that offense (Cal. Pen.

21  Code, § 12022.7).  Count 17 contained the same charge and allegation but named

22  Rodger DeVaul as the victim.  Count 15 charged mayhem as to Geoffrey Nelson

23  (Cal. Pen. Code, § 203).  Special circumstance of multiple murder was alleged as to

24  counts 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, and 19 (Cal. Pen. Code, § 190.2(a)(3)).

25  Special circumstance of murder in the commission of sodomy was alleged as to

26  counts 11 and 18 (Cal. Pen. Code, § 190.2(a)(17)(iv)).  (13 CT 4167-4171.)

27      As to Section II, paragraphs 4.A, 4.B, 4.C, and 4.D, Respondent affirmatively

28  alleges jury selection commenced on July 19, 1988.  (13 CT 4204.)  On

1    September 13, 1988, a jury was sworn to try the case.  (13 CT 4274-4276.)

2    Alternate jurors were selected on September 21, 1988.  (13 CT 4372-4374.)  The

3    presentation of evidence in the guilt phase of the trial began on September 26,

4    1988.  (13 CT 4410.)

5         As to Section II, paragraph 4.E, Respondent admits the parties rested on

6    April 24, 1989.  (111 RT 24170.)

7         As to Section II, paragraph 4.F, Respondent admits defense counsel's closing

8    argument was presented on April 26 and 27, 1989 (111 RT 24155-113 RT 24418),

9    and affirmatively alleges the prosecutor's closing argument was presented on

10   April 24, 25, and 27, 1989 (111 RT 23978-24152; 113 RT 24428-24514).

11        As to Section II, paragraph 4.G, Respondent admits the jury was instructed on

12   April 27, 1989, and affirmatively alleges the jury began deliberations on April 28,

13   1989.  (113 RT 24455-24571.)

14        As to Section II, paragraphs 4.H and 4.I, Respondent admits that on May 12,

15   1989, the jury convicted Kraft of all the charged counts of murder and found all of

16   the counts to be murder of the first degree.  The jury found all the alleged special

17   circumstances of multiple murder to be true.  The jury convicted Kraft of the

18   sodomy of Michael Inderbieten (Count 10), and found the allegation he personally

19   inflicted great bodily injury to be true.  The jury found true the special circumstance

20   allegation that the murder of Michael Inderbieten had been committed in the

21   commission of sodomy (Count 11).  The jury also convicted Kraft of inflicting

22   mayhem on Geoffrey Nelson (Count 15).  Respondent affirmatively alleges the jury

23   acquitted Kraft of the sodomy of Rodger DeVaul (Count 17), and found untrue the

24   special circumstance allegation the murder of Rodger DeVaul was committed in the

25   commission of sodomy (Count 18).  (16 CT 5398-5450.)  Respondent affirmatively

26   alleges that on June 2, 1989, the trial court granted Kraft's motion to vacate as

27   duplicative 10 of the 11 findings of multiple murders.  (17 CT 5698.)

28   ///

5

As to Section II, paragraphs 4.J, 4.K, and 4.L, Respondent affirmatively alleges the penalty phase of Kraft's trial began on June 5, 1989.  (116 RT 25164; 17 CT 5705.)  Respondent admits the prosecution alleged as aggravating factors Kraft's sexual assault against Joseph F., that included two acts of sodomy and one act of oral copulation, and Kraft murdering Michael O'Fallon, John Doe Oregon, Michael Cluck, Brian Whitcher, Anthony Silveira, Dennis Alt, Chris Schoenborn, and Lance Taggs.  These men who Kraft murdered and were introduced as aggravating factors were identified on Kraft's "death list" (trial exhibit no. 165)  as follows: O'Fallon "PORTLAND DENVER"; John Doe Oregon "PORTLAND ELK"; Cluck "PORTLAND BLOOD"; Whitcher "PORTLAND HEAD"; Silveira "PORTLAND RESERVE"; Alt and Schoenborn "GR 2"; and Taggs "PORTLAND HAWAII."  (123 RT 26996, 26999, 27000, 27005, 27007, 27009, 27014, 27015; 124 RT 27107.)

As to Section II, paragraphs 4.M, 4.O, Respondent affirmatively alleges forty-four friends, relatives, former coworkers, and former teachers of Kraft's testified that Kraft was an intelligent, peaceful, caring person who should not be executed, and four clergymen who interviewed Kraft and his family who believed the death penalty should not be imposed upon Kraft.  (124 RT 25857-25858, 25868-25869, 25882, 25890, 25898, 25904-25905, 25917, 25936-25940, 25947, 25954, 2560, 25965, 25974, 25981, 25987-25988, 25991, 25997, 26024, 26032, 26092-26093, 26101, 26110-26111, 26117, 26140, 26148-26149, 26154, 26175-26177, 26183, 26187-26188, 26313-26314, 26334, 26340-26342, 26354, 26365-26366, 26369, 26382, 26388, 26393, 26437, 26445, 26452, 26585-26587, 26783, 26833-26837, 2604-26049, 26296-26301, 26397-26401, 26590-26594.)  Respondent affirmatively alleges thirteen correctional officers from the Orange County Jail testified that Kraft had caused no problems at the jail.  (124 RT 26539, 26550, 26554, 26556, 26558, 26561, 26563-26564, 26567, 26568, 26570-26571, 2676, 26580, 26581-26583.)  Respondent affirmatively alleges psychiatry professor, Dr. Monte Buchsbaum,

testified as to the results of a positron emission tomography (PET) scan performed on Kraft.  (124 RT 26193, 26196.)  Dr. Craig Haney, who has a Ph.D. in psychology, testified he had knowledge regarding the California prison system and in his opinion Kraft would had made an excellent adjustment to prison.  (124 RT 26646-26650.)

As to Section II, paragraph 4.P, Respondent affirmatively alleges that on August 12, 1989, the jury fixed Kraft's penalty at death.  (17 CT 5705.)

As to Section II, paragraph 5, Respondent affirmatively alleges that on November 22, 1989, the trial court denied Kraft's motion made pursuant to California Penal Code section 190.4, subdivision (e), to modify the death verdict to life imprisonment without the possibility of parole.  (18 CT 6173-6174.)

Respondent admits the allegations in Section II, paragraphs 6.A and 6.B, including subsections x-xxxvii, 6.C, 6.D, 6.E, and 6.F.  Respondent affirmatively alleges the United States Supreme Court denied Kraft's petition for certiorari regarding the California Supreme Court opinion in *People of the State of California v. Randy Steven Kraft*, case number S013187 on March 5, 2001.

As to Section II, paragraph 7, Respondent admits attorney Elizabeth Barranco was appointed associate counsel by the California Supreme Court to represent Kraft in his direct appeal and any related habeas proceeding; Kraft moved to file a state habeas petition under seal on December 12, 2000, which was denied on January 10, 2001.  On January 25, 2001, Kraft filed a petition for writ of habeas corpus with the California Supreme Court, case number S094682.  Respondent filed a informal response to Kraft's state habeas petition on March 7, 2001.  On July 17, 2002, the California Supreme Court denied all claims and subclaims on the merits in Kraft's state habeas petition.  Attorney Elizabeth Barranco's request to be relieved as Kraft's counsel was filed on March 8, 2001, and on March 28, 2001, the California Supreme Court granted permission for Elizabeth Barranco to withdraw as counsel ///

7

for Kraft.  Respondent lacks sufficient information and therefore denies the remainder of the allegations in Section II paragraph 7, subsections A-F.

Respondent admits the allegations in Section II, paragraph 8.A.i, and affirmatively alleges the California Supreme Court denied the petition for review, case number S006552, on September 1, 1988.

Respondent admits the allegations in Section II, paragraph 8.A.ii, and affirmatively alleges the California Supreme Court denied the petition for review, case number S006673, on August 11, 1988.

Respondent admits the allegations in Section II, paragraph 8.A.iii (Resp. Lodg. No. 12), and affirmatively alleges that on August 14, 2000, the California Supreme Court denied all claims in the petition for writ of habeas corpus on the merits and found claims procedurally barred because the claims are not cognizable on habeas, and/or because they were raised and rejected on direct appeal, and/or because they could have but were not raised on appeal (Resp. Lodg. No. 127).

Respondent admits the allegations in Section II, paragraph 8.A.iv, and affirmatively alleges the California Supreme Court denied the petition for writ of habeas corpus on August 14, 2000 (Resp. Lodg. No. 127).

Respondent admits the allegations in Section II, paragraph 8.A.v (Resp. Lodg. No. 17), and affirmatively alleges that on August 14, 2000, the California Supreme Court denied all claims in the petition for writ of habeas corpus on the merits and found claims procedurally barred because the claims are not cognizable on habeas, and/or because they were raised and rejected on direct appeal, and/or because they could have but were not raised on appeal (Resp. Lodg. No. 127).

Respondent admits the allegations in Section II, paragraph 8.A.vi (Resp. Lodg. No. 19), and affirmatively alleges that on August 14, 2000, the California Supreme Court denied all claims in the petition for writ of habeas corpus on the merits and found claims procedurally barred because the claim was not cognizable on habeas, ///

1  and/or because it was raised and rejected on direct appeal, and/or because it could

2  have but were not raised on appeal (Resp. Lodg. No. 127).

3  Respondent admits the allegations in Section II, paragraph 8.A.vii (Resp.

4  Lodg. No. 20), and affirmatively alleges that on August 14, 2000, the California

5  Supreme Court denied all claims in the petition for writ of habeas corpus on the

6  merits and found claims procedurally barred because the claims were not

7  cognizable on habeas, and/or because they were raised and rejected on direct

8  appeal, and/or because they could have but were not raised on appeal (Resp. Lodg.

9  No. 127).

10  Respondent admits the allegations in Section II, paragraph 8.A.viii (Resp.

11  Lodg. No. 22), and affirmatively alleges that on August 14, 2000, the California

12  Supreme Court denied all claims in the petition for writ of habeas corpus on the

13  merits and found claims procedurally barred because the claims were raised and

14  rejected on direct appeal, and/or because they could have but were not raised on

15  appeal (Resp. Lodg. No. 127).

16  Respondent denies the allegations in Section II, paragraph 8.A.ix, and

17  affirmatively alleges that on August 1, 1994, in case number S041286, Kraft filed a

18  petition for review with the California Supreme Court, which was denied on

19  October 13, 1994.

20  Respondent admits the allegations in Section II, paragraph 8.A.x, and

21  affirmatively alleges the California Supreme Court denied the petition for writ of

22  habeas corpus on April 12, 2000.

23  Respondent lacks sufficient knowledge to admit or deny the contents of

24  Section II, paragraph 9, including subsections, and therefore denies it.  Respondent

25  affirmatively alleges that Kraft filed numerous motions in the California Supreme

26  Court; however, no meritorious issues or claims were raised in any of them.

27  ///

28  ///

1    Respondent admits that on December 22, 2000, Kraft's counsel filed a Petition

2    for Writ of Certiorari (Resp. Lodg. No. 132), that on March 5, 2001, the United

3    States Supreme Court denied it (Resp. Lodg. No 143).

4    Respondent lacks sufficient knowledge to admit or deny the contents of

5    Section II, paragraph 11, including subsections, and therefore denies it.  Respondent

6    affirmatively alleges that Kraft has filed numerous pleadings in the Orange County

7    Superior Court, California Supreme Court, U.S. District Court, and the U.S. Court

8    of Appeals for the Ninth Circuit, none of which contained any meritorious issue or

9    claim.

10    Respondent admits the allegations in Section II, paragraph 12, subsections A

11    (Doc. 1), and B (Doc. 5).

12    Respondent denies Section II, paragraphs 13 and 14, and affirmatively alleges

13    that Kraft was properly convicted of 16 counts of first degree murder, sodomy,

14    mayhem, with findings Kraft personally inflicted great bodily injury, and the

15    special circumstances of multiple murder and murder in the commission of sodomy

16    were found true in a California court before an impartial judge and jury, and he

17    received a fundamentally fair trial.  The claims and subclaims in the First Amended

18    Petition for Writ of Habeas Corpus filed on January 12, 2005 (Docs. 78, 79) that

19    were not exhausted were dismissed pursuant to the Superseding Joint Statement of

20    the Parties Regarding Exhaustion filed on November 22, 2005 (Doc. 123) and

21    Order on Respondent's Motion to Dismiss and Petitioner's Motion for Stay filed on

22    April 24, 2009 (Doc. 144).

23    Respondent joins in Kraft's request for judicial notice of the state court

24    records that have been lodged with this Court by Respondent (Docs. 45, 99).

25

26    **PRELIMINARY STATEMENT**

27    The First Amended Petition is subject to 28 U.S.C. § 2254(d)-(e), as amended

28    by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The

California Supreme Court denied each of Kraft's claims and subclaims on the merits.  As a result, Kraft cannot obtain federal habeas relief because the California Supreme Court's denial of each claim and subclaim was not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  As to each claim and subclaim for which no clearly established Supreme Court authority existed at the time of the California Supreme Court's denial of the claim, federal habeas relief is precluded by § 2244(d).  As to each claim and subclaim that fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief, the claim must be denied.

As to the "Procedural and Jurisdictional Allegations" in the First Amended Petition, Respondent denies each and every allegation except for the paragraphs expressly admitted hereinabove.  As to the factual allegations made in support of Kraft's forty-one claims for relief (including all subclaims), Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Additionally, Respondent does not respond to argumentative or conclusory statements in the First Amended Petition, because these statements do not require an admission or denial.

Kraft is not entitled to an evidentiary hearing on any claim or subclaim alleged in the First Amended Petition because a proper application of § 2254(d) requires that each claim and subclaim be adjudicated on the basis of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam) ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, 124 S. Ct. 1, 157 L. Ed. 2d

1 (2003), *Miller-el v. Cockrell*, 537 U.S. 322, 348, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003), *Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of a claim would render any such claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no evidentiary hearing should be held because, to the extent that any of Kraft's claims are not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## STATEMENT OF FACTS

### A.   The California Supreme Court's Summary

The facts underlying Kraft's convictions and death sentence are set forth with record citations in Respondent's Brief on appeal at pages 1-92.  (Resp. Lodg. No. 107.)  Respondent alleges that the facts stated in its brief (Resp. Lodg. No. 107 at 5-71) are a full, fair, and accurate summary of the facts adduced at Kraft's state trial.  The opinion of the California Supreme Court affirming the judgment also contains a full, fair, and accurate statement of the facts.  *People v. Kraft*, 23 Cal.4th 978, 1001-1021 (2000); Resp. Lodg. No. 126.  The state court factual findings are presumptively correct under the AEDPA version of 28 U.S.C. § 2254.  We set forth in full the state supreme court's factual summary:

### 1.   Facts

#### a.   Guilt Phase Evidence

##### (1)   Overview

Kraft was convicted of murdering 16 young White males between December 1972 and May 1983.  Six of the victims were United States Marines.

Most were killed by ligature strangulation, and many had ligature marks on their wrists.  Kraft sexually mutilated some of the victims, engaged in sexual activity with some of them, and left the bodies of some victims unclothed.  Most of the victims had alcohol and prescription drugs (most frequently diazepam, which is sold as Valium) in their systems at the time of death.  Kraft left the bodies of most of the victims on or near freeways or other roads.  Physical evidence linked Kraft to eight of the murders, but with respect to the remainder, the prosecution relied on the similarity of the *modus operandi* and the existence of the so-called death list-cryptic notebook entries, penned by Kraft, that the prosecution asserted represented the various victims.

### 2.    Murder of Terry Lee Gambrel

Around 1:00 a.m. on May 14, 1983, Sergeant Michael Howard and Officer Michael Sterling of the California Highway Patrol, on patrol together near Interstate 5 in the San Juan Capistrano area of Orange County, were driving northbound on the freeway south of Oso Parkway when they saw a car driven by Kraft weaving in its lane.  The officers pulled Kraft over and, after conducting field sobriety tests, arrested him for driving under the influence.  Kraft told Sterling his passenger was a hitchhiker.  While Sterling was placing Kraft in the patrol car, Sergeant Howard knocked on the passenger window of Kraft's car in an attempt to rouse the passenger, who appeared to be asleep or passed out.  There was no response. Howard, entering the car through the driver's side, discovered the passenger, later identified as Gambrel, had no pulse and was not breathing.  Upon lifting a jacket from Gambrel's lap, Howard observed that Gambrel's pants were unbuttoned and pulled down between his waist and his knees so that his penis and testicles were supported by the crotch of the pants.  The crotch area was wet.  There were indentations on Gambrel's wrists similar to those a wide rubber band would
///

13

make.  A pill vial, labeled Ativan and prescribed for Kraft, lay on the floor between the driver's seat and door.

A paramedic summoned to the scene asked Kraft if Gambrel had taken any drugs; Kraft replied he had given Gambrel some of his Ativan.

The autopsy was performed by Dr. Walter Fischer, who was deceased at the time of trial.  Dr. Robert Richards, who reviewed the autopsy photographs and Dr. Fischer's reports and testimony at the preliminary hearing, testified at trial that Gambrel's death resulted from asphyxia due to ligature strangulation.  The ligature consisted of a strap that had been tightened around Gambrel's neck.  There were also ligature marks on both of Gambrel's wrists.  Petechial hemorrhages in the neck organs indicated the killer had repeatedly tightened and loosened the ligature. Autopsy photographs showed a bruise on Gambrel's lip.  Gambrel's body apparently was missing shoes and socks when removed from Kraft's car.

Toxicological analysis showed Gambrel's blood-alcohol level at the time of his death was 0.067 percent.  Also in Gambrel's blood was .07 micrograms per milliliter of lorazepam, an anti-anxiety drug sold under the trade name Ativan. Toxicologist Raymond Kelly testified those levels of alcohol and lorazepam would tend to make a person sleepy, confused and uncoordinated.

Gambrel was 25 years old at the time of his death and was a United States Marine stationed at El Toro.  He stood six feet one inch in height and weighed about 200 pounds.  (The presentence report indicates Kraft was five feet 10 inches tall and weighed 160 pounds.)  Gambrel was engaged to be married.  He was last seen alive on May 13, 1983, around 9:00 p.m., when he told his roommate he needed to find a ride and mentioned something about a party at a friend's house. Marine Sergeant Ronald Phillips had invited Gambrel to a housewarming party set for May 13, 1983, but Gambrel did not attend despite having said he intended to do so.  Handwritten directions to the party were found in Gambrel's wallet after his death.

### 3. Murder and Mayhem of Geoffrey Alan Nelson

On the night of Friday, February 11, 1983, between 11:00 and 11:30 p.m., Bryce Wilson saw Geoffrey Alan Nelson and Rodger James DeVaul, Jr., outside Wilson's home in Cypress, Orange County. When Wilson last saw the two, DeVaul was wearing Nelson's jacket. Neither Nelson nor DeVaul had consumed alcohol or drugs before leaving Wilson. About 1:30 a.m. on February 12, 1983, Nelson appeared at Wilson's front door and asked Wilson's mother, Sharon House, if he could speak with Wilson. She was unable to awaken Wilson, however, and Nelson left without speaking to him.

About 5:15 that morning, Officer Donald Batchelder of the Los Angeles Police Department, who was off duty and driving to work, discovered Nelson's nude body on the Euclid Street on-ramp to the Garden Grove Freeway in the City of Garden Grove. As Batchelder got out of his car, he saw Nelson's foot move slightly. Batchelder got back into his car, drove to a telephone and called the local police.

Officer Richard Morales of the Garden Grove Police Department responded to the scene and found the body warm to the touch, although he detected no pulse or respiration. Skid marks on the pavement indicated Nelson's body had been dumped from a moving vehicle. The front of Nelson's neck bore ligature marks, and he had been emasculated.

Dr. Fischer performed the autopsy. After reviewing autopsy photographs and Fischer's notes and preliminary hearing testimony, Dr. Richards concluded Nelson had died as a result of ligature strangulation. There was a ligature mark on the neck consistent with a belt buckle. Nelson's right wrist also bore a ligature mark. Dr. Richards found that Nelson's penis and scrotum had been cut off by some type of sharp-edged instrument. Because the bleeding was "not that great," Richards thought Nelson was "probably dead" when the injury was inflicted, although the emasculation could have occurred peri-mortem, or around the time of death. Skid

marks and road burns on the body reflected Nelson was dead at the time of those injuries.

Toxicological analysis revealed Nelson's blood-alcohol level to be 0.14 percent at the time of death.  Nelson's blood also contained the anti-anxiety drug diazepam, and his stomach contained propranolol, a cardiac drug available only by prescription.  Toxicologist Kelly opined the combination of diazepam and alcohol would have "very, very noticeably sedated" Nelson and could have caused him to fall asleep.

Criminalist James White of the Orange County Sheriff's Department compared a fiber found on Nelson's body with the maroon socks of victim Eric Herbert Church, whose body had been found on January 27, 1983.  White had only a single fiber and could compare only a longitudinal microscopic view; on that basis he concluded the fibers were consistent in color and diameter.

The defense presented evidence that on February 11, 1983, one of Nelson's friends saw him drinking beer and taking Valium tablets.  A friend of Kraft's testified Kraft had played bridge from about 7:00 p.m. to midnight on February 11, 1983.  The next day, Kraft worked from 9:00 a.m. to 5:30 p.m. as a computer programmer, on an assignment at St. Ives Laboratory in Palos Verdes.  According to a coworker who was also at St. Ives that day, Kraft appeared normal, not disheveled or injured, when he arrived for work.  The defense also presented testimony by a female impersonator who worked in a gay bar and who believed a photograph of Nelson depicted a man the witness had met in a bar and with whom he had had a sexual relationship.  Detective Shave, however, testified the witness's identification of Nelson as that man was mistaken.

At the time of his death, Nelson, a single White male, was 18 years old.  He stood five feet nine inches tall and weighed 129 pounds.

///

///

16

### 4.     Murder of Rodger James DeVaul, Jr.

As noted above, Bryce Wilson saw Rodger James DeVaul, Jr., together with Geoffrey Alan Nelson, outside Wilson's house in Cypress on the evening of February 11, 1983.

About 3:00 p.m. on Sunday, February 13, 1983, a motorist who was driving in the San Bernardino Mountains stopped at a turnout near Glendora Ridge and Mt. Baldy Road.  There he saw a dead body lying off the road down a hillside.  Deputy James Davis of the Los Angeles County Sheriff's Department, responding to the scene, observed a body (later identified as that of Rodger James DeVaul, Jr.) about 14 or 15 feet from the side of the road.  The victim's pants were unbuttoned and partially pulled down.  Sergeant Clinton Dillon, who also responded to the scene, noted that the fine sand on the soles of DeVaul's shoes and his legs and around his penis did not match the sand in the area.  DeVaul was wearing Geoffrey Alan Nelson's jacket.

The cause of DeVaul's death was determined to be asphyxia due to neck compression.  An abrasion on DeVaul's neck measured one and one-quarter inches in length and one-eighth inch in width.  The left wrist bore a mark measuring one inch by one-quarter inch.  Anal swabs taken from DeVaul at the autopsy revealed the presence of semen that could not be typed.  DeVaul's blood-alcohol level was 0.07 percent, and his blood also contained propranolol and diazepam at therapeutic levels.  The combination of alcohol and drugs would have impaired DeVaul's consciousness.

Some of the photographs found underneath the floor mat of Kraft's car at the time of his arrest, as well as some of the photographs developed from negatives taken from his house, depicted DeVaul.  The photographs variously showed DeVaul's anal area, a ligature on his wrist, and a pose in which DeVaul was holding his penis.  Three photographs developed from the negatives sequenced after
///

17

1   the DeVaul shots appeared to depict the area around the St. Ives Laboratory, where

2   Kraft was working the day after Nelson and DeVaul disappeared.

3        At the time of his death, DeVaul was 20 years old and single, and had a

4   girlfriend.  He stood five feet nine or 10 inches tall and weighed between 160 and

5   170 pounds.

6        The defense presented witnesses acquainted with DeVaul who testified he was

7   a drug user.  Various members of Kraft's family testified that, on the afternoon of

8   February 13, 1983, Kraft had attended a birthday party for his father at Kraft's

9   sister's house.  That morning, Kraft had met his niece at a bakery to pick up a

10  birthday cake before proceeding to the party.  After leaving the party between 4:00

11  and 6:00 p.m., Kraft drove his niece back to the bakery, where she had left her car.

12       A defense investigator testified that the distance between the places where

13  DeVaul was last seen alive and where his body was found was 47.7 miles.

14  Between the place where Nelson's body was found and the St. Ives Laboratory was

15  a distance of 25 miles.  The defense also presented evidence that soil samples taken

16  from DeVaul's clothing and the crime scene did not share a common origin with

17  those taken from Kraft's car following the arrest.  Head hairs taken from the groin

18  area and shirt of DeVaul were different from the hairs of Kraft, DeVaul or Nelson.

19       Prosecution rebuttal evidence included testimony by John McWilliams, who

20  had attended Claremont Men's College with Kraft, that Kraft was familiar with the

21  mountain area around Mt. Baldy Road and Mt. Baldy Village.  Defense surrebuttal

22  evidence included testimony by Mark Gaukler, a friend of DeVaul's, that Gaukler

23  had visited DeVaul sometime in the week before his death; while he waited for

24  DeVaul to come home, several men who looked like "rough characters" had entered

25  the house and gone to DeVaul's bedroom.  That night, DeVaul telephoned Gaukler,

26  saying he was in trouble and asking that Gaukler come over.  DeVaul's trouble

27  evidently was financial.

28  ///

1   The prosecution contended victims Nelson and DeVaul were represented on

2   Kraft's death list, found in the trunk of his car, by the entry "2 IN 1 BEACH."  The

3   whitish sand caked onto the blood around DeVaul's lips and nostrils was consistent,

4   the prosecution argued, with beach sand.  The prosecution theorized Kraft met

5   DeVaul and Nelson on the beach after leaving his bridge group.

6

7   **5.    Murder of Eric Herbert Church**

8   Around 11:00 a.m. on January 27, 1983, a California Department of

9   Transportation worker discovered the dead body of a young man, later identified as

10  Eric Herbert Church, off the shoulder of the on-ramp to the northbound 605

11  Freeway from Seventh Street in Long Beach.  The body was clothed and wore

12  burgundy colored socks but no shoes.  It appeared to have skidded to the spot where

13  it was found.  Death was estimated to have occurred at least 12 hours before the

14  body was found.  The cause of death was asphyxia due to ligature strangulation.

15  Ligature marks were found on the victim's wrists as well as his neck.  Church's

16  blood-alcohol level at the time of death was 0.08 percent and his blood also

17  contained 2.5 milligrams per liter of diazepam, a potentially fatal amount that

18  would have put him into a mild to moderate coma.

19  Using a microscope, infrared spectrophotometry, and thin-layer

20  chromatography, criminalist White determined the fiber in Church's socks to be

21  consistent in color, diameter, shape and dye with three balls of maroon fiber

22  recovered from the front floor of Kraft's car following his arrest.  White also

23  compared the fiber in the socks with a single fiber found on the body of victim

24  Geoffrey Nelson and concluded the fibers were consistent in color and diameter.

25  White further compared a photograph of Church's corduroy pants with a

26  photograph, found in Kraft's car at the time of his arrest, depicting a person

27  wearing corduroy pants.  White concluded that a series of three spots on the left leg

28  of the pants and a loose thread at the corner of the watch pocket, each appearing in

19

1  both photographs, established a match.  White also compared photographs of a belt

2  and a jacket, taken pursuant to search warrant from Kraft's garage, with those

3  depicted in the photographs taken from Kraft's car, again concluding the items were

4  the same.

5       Church possessed an electric shaver that his father had repaired by knotting

6  and soldering a wire. Church's father identified a shaver found in the search of

7  Kraft's garage as the one he had repaired.

8       Church, 21 years old at the time of his death, stood five feet eight or nine

9  inches tall and weighed 130 to 140 pounds.

10       In defense, criminalist John Thornton testified a comparison of soil samples

11  from Church's clothing and the location where his body was found with soil

12  samples taken from Kraft's car at the time of his arrest showed that the samples did

13  not share a common origin.  A photographic expert opined the person depicted in

14  the photographs taken from Kraft's car was not Church.  Neither Kraft's nor

15  Church's fingerprints were found on the shaver identified by Church's father.

16  Kraft's father also repaired electrical appliances.

17

18          **6.**    **Murder of Robert Wyatt Loggins, Jr.**

19       In August 1980, Robert Wyatt Loggins, Jr., 19 years old, was a United States

20  Marine stationed in Tustin.  He stood five feet nine inches tall and weighed between

21  145 and 150 pounds.  On the evening of Friday, August 22, 1980, Loggins left the

22  base with three other Marines to go drinking.  The four went to a location off

23  Laguna Canyon Road and drank from a bottle of Southern Comfort.  Later, after the

24  group stopped at a liquor store near the Huntington Beach pier, Loggins stated he

25  wanted to spend the night on the beach and walked off, rebuffing his companions'

26  attempts to get him to return to their car.  The three men subsequently searched for

27  Loggins at Huntington Beach but did not find him.  Loggins did not show up for

28  work the following Monday morning.

1      On the morning of September 3, 1980, some young boys living near Paseo

2  Sombra in El Toro found a body, later identified as that of Loggins, in a large green

3  plastic bag in the foothills.  A witness walking in the area around 8:00 p.m. on

4  September 1 had seen no bag there at that time.  The body was tied in a fetal

5  position with a rope around the ankles and wrists, and with the feet tied near the

6  head.  A sheet of clear plastic was wrapped over the body and tied at the neck.  The

7  body was nude, and the only article of clothing with the body was a sock near the

8  rectum.  The advanced decomposition of the body precluded certainty as to the

9  cause of death; Dr. Peter Yatar, who performed the autopsy, concluded, however,

10  that asphyxia by strangulation or smothering was a possible cause.  Postmortem

11  ligature marks were visible on the wrists, neck and ankles, but the pathologist could

12  not determine if antemortem ligature marks were present on the neck.  The level of

13  alcohol in the victim's brain was 0.25 percent, while the blood-alcohol level was

14  0.24 percent, the similarity of those figures suggesting putrefaction did not account

15  for the alcohol levels in the body.  Antihistamines (chlorpheniramine and

16  diphenhydramine) were found in various concentrations in the blood and certain

17  organs.  The combination of drugs and alcohol could have caused Loggins's death.

18  Loggins had not taken any pills while he was with his fellow Marines on

19  August 22.

20      Photographs of Loggins were found in Kraft's car and in a briefcase found in

21  Kraft's house.

22      Loggins, who, as noted, was a Marine and was last seen alive in Huntington

23  Beach, had several tattoos.  The prosecutor argued to the jury that the entry "MC

24  HB Tattoo" on the list found in Kraft's car referred to Loggins.

25      In defense, Loggins's mother testified Loggins had a drinking problem; a

26  friend of Loggins's testified Loggins used all types of drugs.  The defense presented

27  evidence that Loggins's friends had moved his car after his disappearance.

28  A resident of the area testified he had, on September 1, 1980, seen a car occupied

21

by a man and a woman stopped at the dead end of the street near where Loggins's body was found, and had seen the man and woman lift something that appeared to be a plastic trash bag out of the back of the car; when the witness returned to the area the next day, he saw a number of trash bags and smelled the odor of something dead.  According to pathologist Robert Bucklin, Loggins was alive when the photographs found in Kraft's car and house were taken.  A professor of pharmacy testified the reported level of chlorpheniramine in Loggins's system must have been incorrect, as it would have required the victim to ingest 351 tablets and at least a gallon of water to reach such a level.

### 7.    Murder of Donald Harold Crisel

In June 1979, Donald Harold Crisel, then 20 years old, was a United States Marine stationed in Tustin.  He stood five feet 10 or 11 inches tall and weighed 160 or 165 pounds.

Around 1:30 a.m. on June 16, 1979, a fellow Marine saw Crisel walking alone near the Marine base.  Crisel said he was going to a restaurant near the base.  About 9:30 or 9:45 p.m. that day, a passing motorist saw a body later identified as Crisel's on the side of the Irvine Center on-ramp to the northbound San Diego Freeway in Irvine.  A responding police officer testified Crisel had no pulse, but was warm to the touch and bleeding slowly from the nostrils.  Crisel was wearing only undershorts, on which there appeared to be tire tracks.  The body evidently had been pushed from a moving vehicle, as it bore road burns.

Dr. Richards, who performed the autopsy, determined the cause of death to be multiple drug overdose.  Crisel's blood-alcohol level at the time of death was 0.06 percent.  Potentially fatal levels of acetaminophen, as well as the antihistamines phenylpropanolamine and phenyltoloxamine, were also in Crisel's blood.  The analgesic phenacetin and chlorpheniramine were also present.  Postembalming photographs revealed ligature marks, between one-half inch and one inch in width,

1   on the neck.  The wrists also bore faint ligature marks.  Had the toxicology results
2   been negative, Richards would have found the cause of death to have been ligature
3   strangulation.  Crisel's left nipple had been lightly burned with a car cigarette
4   lighter after his death.

5       The prosecutor argued to the jury that the entry "Marine Drunk Overnight
6   Shorts" on Kraft's list referred to Crisel, theorizing that Kraft encountered Crisel
7   around 1:30 or 2:00 a.m. and kept him overnight until the following evening.

8       The defense presented evidence that Crisel had a history of alcohol abuse and
9   sinus problems, and that military police had information about other possible
10  suspects in Crisel's murder.  A criminalist testified that the type of tire on the car
11  Kraft owned at the time Crisel was murdered would not have left the pattern found
12  on the victim's under-shorts.  Another criminalist testified she examined trace
13  evidence, consisting of a hair, a clothing-type fiber and an animal-type fiber, on the
14  undershorts, but could not link any of them to Kraft.

15

16          **8.   Murder and Sodomy of Michael Joseph Inderbieten**

17      In November 1978, Michael Joseph Inderbieten, then 21 years old, lived in
18  Long Beach.  He stood six feet five inches tall and weighed 160 pounds.

19      On the evening of Friday, November 17, 1978, Inderbieten went with friends
20  to a nightclub on the Pacific Coast Highway some three to five miles from his
21  home.  The driver of Inderbieten's group met a girl at the club and took her home,
22  leaving the group stranded.  Another girl agreed to drive Inderbieten and one of his
23  friends home, and they got into her car, which was very full.  A girl known as
24  "Cave Woman" sat on Inderbieten's lap.  He began to pinch her in "not a very good
25  area," and she slapped him.  Inderbieten angrily got out of the car and declared he
26  would walk home.  His friends last saw him walking toward the Pacific Coast
27  Highway in the direction of his home.

28  ///

1    About 6:15 the following morning, a passing motorist saw a body later
2  identified as Inderbieten's on a transition ramp from Seventh Street leading to the
3  405 and 605 Freeway on-ramps in Long Beach.  The body was dressed only in a
4  pair of pants, which were pulled down, partially exposing his buttocks.  The time of
5  death was estimated at 6:00 a.m.  The cause of death was determined to be anoxia
6  due to suffocation.  Inderbieten's eyes and nipples had been burned with a cigarette
7  lighter.  His scrotum and testicles had been removed as well as some skin from the
8  penis.  The removal of the testicles probably occurred while Inderbieten was still
9  alive.  There was no evidence of injury to the rectum, but the anus appeared to be
10  slightly dilated, according to Dr. Richards, who reviewed Dr. Fischer's autopsy
11  report, photographs and other material.  There were ligature marks around both
12  wrists but not the neck.  The body bore road burns consistent with having been
13  thrown from a vehicle traveling slowly.  Inderbieten's blood-alcohol level at the
14  time of death was 0.16 percent, and a low dosage of diazepam was found in his
15  stomach. Secobarbital was found at a low level in Inderbieten's liver and blood.
16  The combined effect of the alcohol and the secobarbital would have been deep
17  sedation or sleep.  Inderbieten consumed only a couple of beers at the nightclub
18  while with his friends.

19    Anal swabs were collected at the autopsy and, upon analysis, revealed the
20  presence of blood type B spermatozoa and semen, which could have come from
21  either a person with type B blood or a nonsecretor.  Inderbieten had type B blood
22  and was a secretor; Kraft is a nonsecretor.

23    Based on the location where the victim's body was found (i.e., near the 405
24  Freeway), the prosecutor argued to the jury that the entry "Dart 405" on Kraft's list
25  referred to Inderbieten, although he was unable to assign meaning to the word
26  "Dart."

27  ///
28  ///

24

### 9.    Murder of Keith Arthur Klingbeil

About 3:30 a.m. on July 6, 1978, a motorist traveling northbound on Interstate 5 between La Paz Road and Oso Parkway discovered a body, later identified as Keith Arthur Klingbeil, in the slow lane of the freeway.  The body was warm when police arrived, death having probably occurred within one-half hour of the finding of the body.  The body was clothed and wearing boots missing the left lace.  The cause of death was determined to be acetaminophen overdose, with ligature strangulation a contributing factor.  On the right side of Klingbeil's neck were ligature lines about three-fourths of an inch apart.  There were road burns all over the body consistent with ejection from a moving vehicle.  Around the time of death, he had been burned with a car cigarette lighter on the left nipple.

Klingbeil was a 23-year-old resident of Everett, Washington, who stood five feet 10 or 11 inches tall and weighed 150 to 160 pounds.  He had hitchhiked from his home to Southern California.  Four matchbooks were found in Klingbeil's pants, one of which came from a Chevron station on Lakewood Boulevard in Long Beach.

The prosecutor argued to the jury that the entry "Hike Out LB Boots" on Kraft's list referred to Klingbeil, who, as noted, evidently had recently been in Long Beach and was wearing hiking boots at the time of death.

The defense presented evidence that, near the location where Klingbeil's body was found, Orange County Deputy Sheriff Christopher Leseburg was directed to investigate a Chevrolet pickup truck occupied by a lone male.  On rebuttal, however, the prosecution demonstrated that the truck had been stopped around 2:30 or 3:00 a.m. due to an engine problem one-quarter mile short of the location of the body.  The defense also showed that sheriff's employees had inadvertently destroyed evidence concerning the Klingbeil investigation.

///

///

25

### 10.   Murder of Richard Allen Keith

Richard Allen Keith, a 20-year-old United States Marine stationed at Camp Pendleton, stood six feet two or three inches tall and weighed about 190 pounds. On Sunday, June 18, 1978, Keith was visiting at his girlfriend's mother's house near the intersection of Avalon Boulevard and the San Diego Freeway in Carson, Los Angeles County.  According to the girlfriend, Keith may have been under the influence of drugs at that time.  He left the house around 11:00 p.m.  Keith had no car and had hitchhiked to his girlfriend's house.

At 5:15 a.m. the following day, a Los Angeles fireman discovered a nude body, later identified as that of Keith, lying off the side of Moulton Parkway one-half mile north of La Paz Road in Orange County.  The body had been pushed out of a moving vehicle.  The cause of death was ligature strangulation.  Keith's blood-alcohol level at the time of death was 0.07 percent, and diazepam and flurazepam (a drug similar to, and somewhat more potent than, diazepam) were present in Keith's system in amounts sufficient to have rendered him very sleepy.

The prosecutor argued to the jury that the entry "Marine Carson" on Kraft's list referred to Keith, who, as noted, was a Marine and was last seen in Carson.


### 11.   Murder of Roland Gerald Young

About 8:19 p.m. on Saturday, June 10, 1978, the Orange County Sheriff's Department released Roland Gerald Young from its jail, where he had been confined since his arrest for public drunkenness earlier that day.  Young, 23 years of age, stood five feet seven or eight inches tall and weighed 155 to 160 pounds.

About 3:20 the following morning, a passing motorist saw what appeared to be a dead body on Irvine Center Drive in the City of Irvine but, as she was unsure what she had seen, she made no report until a later time.  At 4:00 a.m., a Santa Ana firefighter saw Young's body at that location and called police.  The responding officer observed the body was shirtless and saw a large amount of blood, still wet,

26

in the crotch area of the pants.  Blood on the pavement indicated the body had bounced as it hit the roadway after being ejected from a fast-moving vehicle.  The left shoe was missing a lace, and there was no belt on the pants.  A jail release form was in one of the pants pockets.  The socks and shoes were labeled "LACO," indicating they had been issued by the Los Angeles County jail.

The cause of death was determined to be blood loss following four stab wounds to the chest, all of which entered the heart.  At or near the time of death, a sharp knife had been used to cut the scrotal sac and remove one testicle and some skin from the penis.  There were also antemortem lacerations over the left eyebrow and left eyelid.  A faint mark was present on the back of the right hand and wrist.  Young's blood-alcohol level at the time of death was 0.09 percent.  There was diazepam in his blood and stomach in nontoxic concentrations.  The combined effect of the alcohol and diazepam would have been extreme drowsiness or mild coma.

The prosecutor argued to the jury that the entry "Jail Out" on Kraft's list referred to Young.

The defense presented evidence that Young was a user of any available type of drug and that, after his release from jail, he telephoned a friend, seeking a ride home from Santa Ana because he was in trouble with his supplier for using drugs for which he could not pay.  Young's belt was not found among the belts taken from Kraft's house.  Nor did shoelaces taken from Kraft's house match the lace in Young's right shoe.

The defense also presented the testimony of Carmen Custer, who, while in custody on a petty theft charge in September 1982, had spoken to police concerning a June 1978 murder.  He related that in June 1978 he had taken some prostitutes to a residence on South Birch Street in Santa Ana to buy heroin.  The seller told the prostitutes he had stabbed someone the previous night and dumped him off Culver
///

27

1  Road near the dump.  Custer gave police the information in the hope of obtaining

2  release from jail on his own recognizance.

3       The manager of the South Birch Street apartment buildings identified by

4  Custer testified that, in June 1978, a heroin dealer did live in the buildings, but not

5  in the specific apartment identified by Custer.  That apartment was occupied by an

6  87-year-old man who did not sell drugs.  Custer had been arrested four times

7  between June 1978 and September 1982, but did not give his information to police

8  on those occasions.  The dump off of Culver Road mentioned by Custer was "quite

9  a way" from the location where Young's body was found.

10      The defense also presented evidence that in April 1978 Kraft had bailed his

11  friend Wayne Wooden out of jail (implying this was the significance of the "Jail

12  Out" entry).  On rebuttal, however, Wooden testified Kraft never referred to him as

13  "Jail Out"; nicknames were not used for members of their poker and bridge group.

14      In rebuttal, a criminalist testified he had compared a hair found on Young's

15  pants to a hair sample from Kraft's head.  His examination showed that physical

16  characteristics (color, thickness, curliness, and root and tip characteristics) and

17  microscopic characteristics (pigmentation distribution) were consistent in the two

18  samples.  He could not, however, state definitively that the hair found on Young's

19  pants came from Kraft.  One of Kraft's sisters testified Kraft's hair was bleached in

20  the late 1970's.

21

22          **12.  Murder of Scott Michael Hughes**

23      In April 1978, Scott Michael Hughes, 18 years old, was a United States

24  Marine stationed at Camp Pendleton.  He stood five feet 101/2 inches tall and

25  weighed 170 to 180 pounds.  On Friday, April 14, 1978, Hughes told a fellow

26  Marine he was going to travel to the State of Washington to visit his brother, who

27  was suffering from cancer.

28  ///

28

1    The following Sunday, around 7:00 a.m., Hughes's dead body was found
2    about four feet from the eastbound on-ramp to the Riverside Freeway in Anaheim at
3    Euclid.  There were no laces in Hughes's shoes.  The cause of death was found to
4    be cerebral anoxia due to ligature strangulation.  Ligature marks, consistent with a
5    belt, appeared on the neck, most prominently on the left side.  There were
6    antemortem abrasions to the left temple, left eye, and left side of the chin.
7    Hughes's scrotum had been cut and the left testicle excised, probably after death.
8    There were road burns on the body.  No alcohol was present in Hughes's blood, but
9    diazepam was present at about three times the therapeutic level.  This would have
10   caused sleepiness and mental confusion.

11   Trace evidence consisting of fibers was collected from Hughes's clothing and
12   compared with fibers from the carpet in the apartment on Molino Avenue in Long
13   Beach where Kraft lived in April 1978.  (Kraft and his roommate/lover, Jeff Seelig,
14   had moved to a different house, but the carpet had not been changed between
15   April 1978 and June 1983, when the samples were collected.)  The fiber taken from
16   Hughes's shorts and fibers from the Molino Avenue apartment carpet did not differ
17   in terms of color, fiber type, diameter of the fibers, cross-sectional appearance,
18   longitudinal appearance, delustrance or melting points.  It could not be conclusively
19   established, however, that the fiber on Hughes's shorts came from Kraft's
20   apartment on Molino Avenue.  Fibers from a throw rug at Kraft's house on Roswell
21   Avenue were also compared with fibers taken from Hughes's clothing; they were
22   found to be consistent with each other in terms of material, shape, melting points,
23   and delustrance.

24   The prosecutor argued to the jury that the entry "Euclid" on Kraft's list,
25   alluding to the location of the body, referred to Hughes.  Terry Goodman testified
26   he and Kraft had a mutual friend who lived on Euclid Avenue in Long Beach, but
27   Goodman had never heard Kraft refer to the friend as "Euclid."
28   ///

29

### 13.   Murder of Mark Howard Hall

On December 31, 1975, Mark Howard Hall went drinking with his friend Philip Holmer.  Hall, 22 years old, stood five feet eight or nine inches tall and weighed 160 to 170 pounds.  After visiting a bar and attending one party, where Hall became drunk and smoked some marijuana, Holmer and Hall went to a second party, about two blocks from Interstate 5 in San Juan Capistrano.  Because Hall was so drunk, he lay down on a sofa at the second party.  Holmer last saw him alive around midnight and only later discovered Hall was no longer at the home where the party was taking place.

On January 3, 1976, an off-duty Santa Ana police officer was riding dune buggies with friends in the mountains near Silverado Canyon and Bedford Peak in the area of Saddleback Mountain.  About 3:00 p.m., the group discovered the dead body of Mark Hall about 25 feet from a road in that area and summoned police.

Hall's body was nude, and his genitals had been removed.  Near the body was an open package of Half-and-Half brand cigarettes.  (Kraft smoked Half-and-Half brand cigarettes in 1976 and 1977.)  The cause of death was a combination of suffocation and acute alcohol intoxication.  Hall's mouth and trachea had been densely packed with dirt.  Repeated filling of the mouth with dirt, followed by choking, swallowing or inhaling, could have accounted for the degree of compaction; it was unlikely that intentional forcing of dirt down the trachea would have resulted in the degree of compaction of the dirt, and there was no tissue damage to indicate a rod had been used.  Hall's blood-alcohol level at the time of death was 0.67 percent.  For most people, a blood-alcohol level of 0.45 or 0.50 percent would be fatal.  Diazepam, as well as the over-the-counter cold remedies phenacetin and methapyriline, were found in Hall's system.  A cigarette lighter had been used to burn Hall's eyes, nose, moustache, left nipple and other parts of his body.  The injuries to the eyes and nipple and the removal of the penis and scrotum had occurred postmortem.  A swizzle stick had been shoved up the urethra of the

30

penis into the bladder, and the genitals had been inserted into the rectum.  Only one testicle was found.  There were ligature marks on the right side of the neck.  A 12-inch cut had been inflicted on Hall's leg postmortem.

About 11 inches from Hall's head, police found a broken bottle neck with dried type B blood on it.  Hall had type B blood.  About 20 feet from the body, police found a number of pieces of broken glass that appeared consistent with the bottle neck.  A latent print made by Kraft's right thumb was on one of the pieces of glass.  That latent print lift was misplaced in the sheriff's department's filing system for a period of time; while it was missing, a forensic specialist used a new technique to lift the same latent print from the glass again, and the print was again matched to Kraft's right thumb.  A separate latent fingerprint, also identified as Kraft's right thumb, was lifted from another piece of glass found at the scene.  A criminalist fitted together the pieces of glass on which Kraft's right thumbprint was found, along with other pieces, concluding they had come from the bottom of the bottle.

The prosecutor argued to the jury that the entry "New Years Eve" on Kraft's list referred to Mark Howard Hall.

In defense, several members of Kraft's family testified he had attended a New Year's Eve party at the Westminster home of one of Kraft's sisters until about 12:30 a.m.  Those same family members testified they saw Kraft again at his parents' house around 7:00 or 8:00 a.m. on January 1, 1976.  He was wearing the same clothes as the night before, and nothing appeared amiss.  A defense investigator drove from the location of the party Kraft attended to San Juan Capistrano, from there to the location where Hall's body was found, and from there to Kraft's parents' house; he concluded at least two hours and 35 minutes of driving time was required to cover the route.

///

///

### 14.   Murder of Keith Daven Crotwell

In March 1975, Keith Daven Crotwell was 19 years old, stood six feet or six feet one inch tall, and weighed 195 to 200 pounds.  On the night of March 29, 1975, Crotwell and his friend Kent May, 15 years old, went to Big John's Fun Hall near Belmont Pier and the Olympic swimming pool in Long Beach.  In the course of the evening, Crotwell and May, who had both been drinking, walked to a seawall near Big John's and talked about an argument Kent had just had with a girl.  Kraft approached and began to converse with them.  The area was frequented by homosexuals, and May asked if Kraft were homosexual; Kraft denied it, stating he was merely out for a leisurely stroll.  Kraft offered drugs to Crotwell and May.  They went to Kraft's Mustang automobile, where he gave them pills with the number "10" imprinted on them.  May took six or seven of the pills, Crotwell three or four more than May, downing them with beer.  Kraft then drove off with Crotwell and May in his car.  May then lost consciousness, waking up with a hangover the next morning at his home.

Michael Ditmar and Randy Cooper, friends of Crotwell's, had also been at Big John's on the night of March 29, 1975, and sometime after 3:00 or 4:00 a.m. the next day they returned in Cooper's truck to the area of Big John's to look for Crotwell and May.  In the Big John's parking lot, Ditmar saw a white Mustang with its passenger door open and Kraft pushing May out of the backseat.  May took a few steps and fell down.  Kraft pushed May away from the car.  Ditmar and Cooper yelled at Kraft to stop and wait, but Kraft drove off at a relatively fast speed toward Seal Beach with Crotwell in the front passenger seat, slumped toward Kraft and possibly unconscious.  Ditmar never saw Crotwell alive again.

On May 8, 1975, two young boys discovered a human skull near a jetty in the Long Beach Marina about 1,000 feet from a parking lot.  Through dental X-rays, the skull was later identified as Crotwell's.

///

32

1    Following Crotwell's disappearance, Ditmar and Cooper looked for the

2    Mustang in which Kraft had driven off with their friend.  They found it in Long

3    Beach and forwarded information about the car to the Long Beach Police

4    Department.  Upon learning that the vehicle was registered to Kraft, Detective

5    Michael Woodward of the Long Beach Police Department contacted Kraft and

6    invited him to come to the police department for an interview.

7        On May 19, 1975, Detective Robert Bell of the Long Beach Police

8    Department interviewed Kraft concerning Crotwell's disappearance.  The tape

9    recording of the interview was played to the jury.

10       Kraft acknowledged he had, within the last couple of months, picked someone

11   up in the Granada Avenue parking lot (which was near Big John's).  Kraft

12   described encountering two males in that location, drinking beer with them, driving

13   around the Belmont Heights area for about 20 minutes, and returning to the parking

14   lot, where one of the two got out of his car.  The other wanted to remain in the car,

15   so Kraft drove away again, going southbound on the San Diego Freeway.  Kraft

16   said he allowed his passenger to drive, and the car became stuck on an

17   embankment.  Kraft walked to some gas stations, which were closed, and

18   telephoned his "other half," Jeff Graves, for assistance.  Kraft then had coffee at the

19   restaurant from which he had called Graves.  Because Graves had only a

20   Volkswagen, and may have been unable to assist him, Kraft asked for help from a

21   man and his wife at the restaurant, who had a pickup truck.  The man drove Kraft in

22   the pickup truck back to Kraft's car.  The man who had been with Kraft was no

23   longer there.  The man with the pickup truck used a rope Kraft found to free the car.

24   Kraft looked around unsuccessfully for the man who had been in his car.  He then

25   went back to the restaurant to wait for Graves, who arrived later.  Kraft had to go to

26   work the next day, and Detective Bell determined that Kraft indeed did work that

27   day.  Bell was aware of cars becoming stuck in the area Kraft described.  Kraft

28   denied killing Crotwell or disposing of his body.

1     On October 19, 1975, some children in the City of Laguna Hills discovered

2   skeletal remains, minus the skull and hands, wrapped in a rug in a large pipe.  The

3   remains were later identified as Crotwell's.

4     The prosecutor argued to the jury that "Parking Lot" on Kraft's list referred to

5   Crotwell.

6     The defense presented evidence that on May 31, 1983, Jeff Graves told

7   detectives that Kraft had telephoned him early one morning, probably in May 1975,

8   saying he had had car problems and needed help.  Graves said he had gone to

9   Kraft's location and assisted him.

10

11           **15.   Murder of Ronald Gene Wiebe**

12     About 8:30 or 9:00 p.m. on Friday, July 27, 1973, Ronald Gene Wiebe left his

13   mother's house in Los Alamitos to go to the Sportsman's Lodge for a few beers.

14   He was 20 years old, five feet five inches in height, and weighed 125 to 130

15   pounds.

16     About 6:30 a.m. on July 30, 1973, Seal Beach police officers were dispatched

17   to the Seventh Street on-ramp to the San Diego Freeway, where a body later

18   identified as Wiebe's was found.  There was no belt in the pants; the right foot was

19   bare, but there was a sock on the left foot.  The top of Wiebe's pants was undone,

20   exposing his penis.  There was a ligature mark on the victim's neck about one-

21   quarter-inch wide.  Death had occurred about two days earlier, caused by asphyxia

22   due to ligature strangulation.  Postmortem road burns were all over the body.

23   A sock had been stuffed into the victim's rectum, apparently postmortem.  The

24   victim's penis had been "pinched" after his death.  His blood-alcohol level was 0.02

25   percent at the time of death, and no drugs were detected in his system.

26     The prosecutor argued to the jury that "7th St." on Kraft's list referred to

27   Wiebe.

28   ///

34

1   The defense presented evidence that Officer Earl Potter of the Los Alamitos
2   Police Department knew Wiebe and was familiar with his car.  While on bicycle
3   patrol outside the Sportsman's Lodge during the early morning hours of July 28,
4   1973, Potter did not see Wiebe's car.  Later that day or the following day, however,
5   the car was found at a nearby Firestone Tire store.  Latent fingerprints taken from
6   Wiebe's car did not match Kraft's.

### 16.   Murder of "John Doe Huntington Beach"

About 1:00 a.m. on Saturday, April 14, 1973, a passing motorist saw a dead
body on Ellis Avenue between Goldenwest and Gothard Streets in Huntington
Beach and called the police.  There was no identification with the body, which
remained unidentified at the time of trial.  The victim appeared to be between 18
and 25 years old.  He wore socks but no shoes, and there was no belt in his pants.
The cause of death was suffocation, perhaps caused by a gag or something put over
the nose and mouth.  The victim's penis and scrotum had been removed
antemortem, and the loss of at least two pints of blood may have been a
contributing factor in the death.  There were gag marks on the mouth and ligature
marks on both wrists.  The victim's nose and lips had been bruised before death.
There were postmortem road burns on the body.  A sharp instrument had inflicted
cuts on various parts of the body after death.  The victim's blood-alcohol level was
0.07 percent.  Rectal swabs taken from the victim at the autopsy were found to
contain spermatozoa.

William Smith, a resident of the City of Huntington Beach since 1946, worked
for the city on traffic signals at the time of trial.  Smith testified that, when he was
in elementary school, the area where the body of "John Doe Huntington Beach"
was found was known as "Airplane Hill."  Children would try to ride their bicycles
down one side and up the other without stopping, and high school students would
///

try to drive their cars down the hill fast enough to get a feeling of becoming airborne.  The bottom of the hill was filled in in 1960.

The prosecutor argued to the jury that "Airplane Hill" on Kraft's list referred to "John Doe Huntington Beach."

The defense presented evidence that latent fingerprints on beer cans along the side of the road near where the victim's body was found did not match Kraft's. A witness, who had grown up in Long Beach, knew the area where the victim's body was found as "Shell Hill" rather than "Airplane Hill."  Another witness testified that a different location, between the Pacific Coast Highway and Colorado Boulevard on Manila Avenue, was known as "Airplane Hill."  Benjamin Paniagua, a friend of Kraft's, testified Kraft used to visit him in his apartment in Long Beach and that a nearby area on Manila Avenue was called "Airplane Hill."  Paniagua acknowledged, however, that Kraft never referred to him as "Airplane Hill." A defense investigator unsuccessfully looked for associates of Kraft who were aware that Kraft knew the area where the victim's body was found as "Airplane Hill."


### 17.  Murder of Edward Daniel Moore

Around 1:45 a.m. on December 26, 1972, a California Highway Patrol officer driving in the area of the Seventh Street off-ramp from the 405 and 605 Freeways saw a group of pedestrians near a dead body later identified as that of Edward Daniel Moore.  The body was on the shoulder of the off-ramp, about one-quarter mile from Seventh Street.

The victim's body was identified through his fingerprints.  Moore was a United States Marine stationed at Camp Pendleton.  When his body was found, Moore was wearing a jacket, T-shirt, sweater, pants with no belt, and one sock. The other sock was found in his rectum.  Moore's boxer shorts had his name, as well as another person's name, stenciled on the back.

1    Moore had died about three days before his body was found.  The cause of
2    death was asphyxiation through strangulation.  There were ligature marks on
3    Moore's neck and two scratch marks on the left side of his scrotum.  A fist or blunt
4    instrument had caused antemortem trauma to Moore's nose and lip.  Moore's blood
5    contained only a trace of alcohol and no drugs.

6    The prosecutor argued to the jury that the entry "EDM" on Kraft's list referred
7    to Moore.

8

9    **18.   Defense Evidence Relating to the Charges Generally**
10   Kraft's neighbors on Roswell Avenue, Pennie De Wees and Willy Sadler, did
11   not see anything out of the ordinary with respect to visitors at Kraft's house.
12   De Wees considered Kraft a "wonderful neighbor."

13   Thomas Schardt, a commercial photographer specializing in forensic
14   reconstruction, photographed a Mustang manufactured in the same year (1974) as
15   Kraft's and testified it would be extremely difficult to push open a passenger door
16   from the driver's side because one would have to pull up on the lever and push out
17   on the door at the same time.  The prosecution, however, contended the Mustang
18   Schardt examined was significantly different from Kraft's Mustang.

19

20   **B.   Penalty Phase Evidence**
21   **1.   Overview of Prosecution Case**

22   The prosecution presented evidence that Kraft had committed an uncharged
23   sexual assault and eight additional murders in Oregon and Michigan.

24   In 1970, Kraft befriended 13-year-old Joseph F., who had just run away from
25   home, took him to Kraft's house, drugged him and sodomized him.

26   From 1980 to 1982, while on business trips to Oregon, Kraft murdered six
27   young men in separate incidents.  One night in December 1982, while on a
28   business-related trip to Grand Rapids, Michigan, Kraft murdered two young men.

1   Items belonging to the Oregon and Michigan victims were found in the search of

2   Kraft's house.  A jacket taken from one of the Oregon victims was found just

3   outside Kraft's Grand Rapids hotel room.

4       References to all eight out-of-state victims, the prosecutor argued, were

5   included on the list found in Kraft's car after his arrest.

6

7         **2.  Sexual Assault on Joseph F.**

8       In March 1970, 13-year-old Joseph F. ran away from his Westminster home

9   on his bicycle.  He rode his bicycle up and down the boardwalk in Huntington

10   Beach, where he encountered Kraft.  He asked Kraft for a cigarette, which Kraft

11   gave him.  After learning Joseph was a runaway, Kraft offered to let him stay at his

12   apartment.  Joseph hid his bicycle and accompanied Kraft on his motorcycle to

13   Kraft's apartment in Long Beach.

14       There, Kraft gave Joseph some red capsules.  Joseph swallowed four capsules

15   initially and four more a short time later, washing them down with wine.  Joseph

16   felt drowsy and started to black out.  Kraft asked Joseph if he had ever had sex with

17   a man before and showed him photographs of men having sex with one another.

18   Kraft was depicted in some of the photographs.  Kraft began masturbating in front

19   of Joseph and asked him to take off his clothes.  Joseph was unable to resist

20   because of the pills and alcohol he had ingested.  Kraft forced Joseph to orally

21   copulate him, slapped him and sodomized him twice, causing him pain.

22       Afterward, Kraft said something about going to work and left the apartment.

23   Joseph then left the apartment and went to a bar across the street, narrowly missing

24   getting hit by a car.  Someone called an ambulance, and Joseph was taken to a

25   hospital, where his stomach was pumped.  His face was bruised and his rectum was

26   sore.  Joseph never revealed to anyone that Kraft had sexually assaulted him until

27   he was interviewed by detectives in August 1983.

28   ///

1    At the time of trial, Joseph was in custody on a parole violation.  Joseph

2    acknowledged that after telling detectives about the incident he asked for money, a

3    vehicle and a loan, but testified he did not receive anything from any law

4    enforcement agency.

5    In defense, Joseph's mother acknowledged she had told personnel at her son's

6    school and others that Joseph was a pathological liar.

7

8    ### 3.    Murder of Michael O'Fallon

9    In July 1980, Michael O'Fallon left his home in Golden, Colorado, a suburb of

10   Denver, and hitchhiked to Canada.  O'Fallon, then 17 years old, stood five feet

11   seven inches tall and weighed 135 pounds.  When he left on his trip, O'Fallon took

12   a camera with his mother's initials, "MJO," scratched on the front.

13   About 12:10 a.m. on July 17, 1980, a passing motorist encountered O'Fallon

14   hitchhiking on Interstate 5 in Oregon.  About 5:00 a.m. that day, O'Fallon's body

15   was found at the Talbot Road interchange with Interstate 5, some 10 miles south of

16   Salem, Oregon.  There were no clothes or identification with the body.  The cause

17   of death was ligature strangulation.  A ligature consisting of a red shoelace bound

18   O'Fallon's wrists together, while his ankles were bound by another lace.  A white

19   ligature connected the other two ligatures with O'Fallon's scrotum.  Blood and

20   fecal material were visible from a laceration to the anus.  O'Fallon's blood

21   contained alcohol (0.04 percent) and diazepam.

22   On a number of occasions Kraft's employer, Lear Siegler Corporation (Lear-

23   Siegler), sent him to its Peerless Division in Tualitin, Oregon, to help install a

24   computer system.  Kraft worked at that location between July 16 and July 18, 1980,

25   and rented a car for that period at the Portland airport.  Kraft returned the rental car

26   to the airport.  Although the Peerless building was only 25 miles from the airport,

27   Kraft drove his rental car a distance of 993 miles between July 16 and July 18.

28   ///

A camera bearing the initials "MJO" and identified by O'Fallon's mother and brother as the camera Michael O'Fallon took with him on his trip was found in the search of Kraft's garage.

The prosecutor argued to the jury that the entry "Portland Denver" on Kraft's list referred to O'Fallon.

### 4.     Murder of "John Doe Oregon"

About 4:20 a.m. on July 18, 1980 (the day after O'Fallon's body was found), the body of another deceased White male was discovered on the side of Interstate 5 about a mile south of Woodburn, Oregon.  The victim, whose age was estimated at 35 to 40 years, was never identified.  The victim's belt and bootlaces were missing.

The cause of death was ligature strangulation.  A ligature mark about one-half-inch wide was around the victim's neck.  The victim's blood contained alcohol (0.06 percent) and diazepam.

The prosecutor argued to the jury that the entry "Portland Elk" (it is unclear whether the entry read "Portland Elk" or "Portland Eck "; at trial, the prosecutor argued the former reading.) on Kraft's list referred to "John Doe Oregon"; he reached this conclusion by process of elimination as all the other "Portland" entries appeared to represent the other Oregon victims.

### 5.     Murder of Michael Duane Cluck

On April 9, 1981, Michael Duane Cluck, then 17 years old and living in Kent, Washington, told his mother he was going to hitchhike to Bakersfield or Southern California to get a job.  Cluck stood five feet eight inches tall and weighed 160 pounds.  Cluck took with him a shaving kit his grandmother had given him. Cluck's name was on the kit.

About 8:39 a.m.  the next day, Cluck's body was found in a ditch on the side of Pebbles Road about 500 feet from Interstate 5 in Oregon.  The body was nude

from the waist down.  There was considerable blood in the facial area and blood smears on other exposed portions of the body.  When found, the body was still warm to the touch.

Death had resulted from 16 wounds to the back of the head, which had caved in the victim's skull.  There was a laceration and blood loss in the area of the rectum.  The victim's blood contained alcohol (0.09 percent), bromodiphenylhydramine, chlorpheniramine and codeine.  His urine contained norephedrine, codeine metabolites, flurazepam metabolites and chlorpheniramine.

On the day Cluck's body was found, Kraft sought medical attention in Tualitin, Oregon.  He reported to the physician that he had badly bruised his toe about 3:00 a.m.  that morning while moving about barefoot in his motel room to turn on the television to watch the launching of the space shuttle.

Cluck's shaving kit was found underneath some clothes in a drawer in the hallway of Kraft's house.

The prosecutor argued to the jury that the entry "Portland Blood" on Kraft's list, alluding to the large quantity of blood at the murder scene, referred to Michael Cluck.


### 6.    Murder of Brian Whitcher

In the early morning hours of November 24, 1982, a dead body later identified as that of Brian Whitcher was found south of Wilsonville, Oregon, on the fog line of Cambry-Hubbard Road, which runs parallel to Interstate 5.  There was no belt in the victim's pants, and the victim's feet were bare.  The body had been thrown from a moving vehicle.  The cause of death was asphyxiation, and there was a ligature mark on the victim's neck about two and one-half inches long and one-half inch wide.  Whitcher's blood contained alcohol (0.31 percent) and diazepam.

Kraft was working at Peerless in Tualitin, Oregon, on November 23 and 24, 1982.  He drove a rental car 232 miles during that period.

1    A friend of Whitcher's, Earl Davis, last saw Whitcher around noon on

2    November 23, 1982, at which time Whitcher was wearing a distinctive brown

3    velour pullover Davis had purchased and later given to Whitcher.  That pullover

4    was later found in the garage of defendant's home.  According to Davis, Whitcher

5    occasionally smoked marijuana.

6    The prosecutor argued to the jury that the entry "Portland Head" on Kraft's list

7    referred to Brian Whitcher, in an apparent allusion to Whitcher's fondness for

8    marijuana.

9

10                   **7.    Murder of Anthony Silveira**

11    In December 1982, Anthony Silveira, then 29 years old and a member of the

12    National Guard Reserve, lived in Eagle Point, Oregon, with his wife.  He owned an

13    army jacket with his name tag sewn on it.  On December 4, 1982, Silveira was

14    supposed to travel from Cannon Beach, in the northwest part of Oregon, to

15    Medford for guard duty.  He did not own a car.  Silveira had telephoned his wife on

16    December 3, 1982; she never heard from him again.

17    Kraft was working for Lear-Siegler near Portland between December 1 and

18    December 4, 1982.

19    On December 18, 1982, Silveira's dead body was found off Boone's Ferry

20    Road near Interstate 5 west of Hubbard, Oregon.  There was no clothing on the

21    body, which appeared to have been there for a period of time as there were signs of

22    putrefaction and nibbling by animals.  Death was caused by ligature strangulation,

23    with a ligature mark, consistent with a belt, visible at the autopsy.  A toothbrush

24    was removed from the victim's anus at the autopsy; the rectum was dilated and

25    spermatozoa and blood were found in the anal canal.  The victim's blood contained

26    alcohol (0.23 percent) and diazepam.

27    On December 4, 1982, Kraft visited his friend Gary Newell at the latter's

28    home in Seattle, Washington.  Kraft arrived in a rental car and, soon thereafter,

                                                      42

1    returned to the car and retrieved an army jacket that was either Silveira's or very

2    similar to it.  Both Newell and his housemate, Leonard Brouette, recalled that the

3    name on the jacket began with "S" and was a "Hispanic-sounding" name.  The next

4    morning, Kraft said he was leaving for the airport and Grand Rapids, Michigan.

5         Kraft stayed in room 1169 on the 11th floor of the Amway Grand Plaza Hotel

6    in Grand Rapids from December 5 through December 8, 1982.  About 10:00 a.m.

7    on December 8, hotel security officer Ronald Ortega found Silveira's army jacket

8    draped over a couch located in the 11th floor elevator lobby area, about 12 to 15

9    feet from Kraft's room.  Ortega turned the jacket in to the hotel's lost-and-found

10   department.

11        The prosecutor argued to the jury that the entry "Portland Reserve" on Kraft's

12   list referred to Silveira.

13        In defense, pathologist Robert Bucklin reviewed photographs and autopsy

14   reports concerning the Silveira case and concluded Silveira had been dead no more

15   than three days when his body was found, although he acknowledged he had not

16   considered the fact Silveira had failed to report for reserve duty on December 5 as

17   scheduled.  Banking and business records showed Kraft was in Southern California

18   from December 10 through December 18, 1982.

19        Analysis of the semen found on the toothbrush in the victim's anus established

20   it was equally likely the semen donor was a type B secretor, a type O secretor, or a

21   type O non-secretor.  Kraft was a type O nonsecretor, and the victim was a type B

22   secretor.

23        In rebuttal, pathologist Robert Richards testified, based on the temperatures in

24   the low 30's and 40's at the scene where the body was discovered, Silveira's body

25   could have been there for two or three weeks before it was found, despite the

26   relative lack of deterioration of the body.

27   ///

28   ///

43

### 8.     Murders of Dennis Alt and Christopher Schoenborn

In December 1982, Dennis Alt, then 24 years old, lived on a farm in Kent County, Michigan, about seven miles from Grand Rapids.  He stood five feet 10 inches tall and weighed 160 pounds.  Christopher Schoenborn, then 20 years old, also lived on a farm near Grand Rapids, and knew and was related to Alt.  Schoenborn stood six feet two inches tall and weighed 190 pounds.  On December 7, 1982, Alt and Schoenborn attended an agricultural convention at the convention hall near the Amway Grand Plaza Hotel.  Schoenborn was wearing a " Mighty Mac" jacket with his name inscribed on a label.

Kraft was in Grand Rapids from December 5 through December 8 to attend a seminar for his employer.  The seminar concluded on the afternoon of December 7, after which Kraft had a business dinner with fellow employee Ronald Titgen and two others.  Following the dinner, Kraft and Titgen went to Tootsie Van Kelly's bar in the Amway Grand Plaza Hotel, where they spoke with Christopher Schoenborn, a local resident whom they happened to meet, for about an hour.  Titgen and Kraft spoke with Schoenborn until sometime between 11:00 p.m.  and midnight, when Schoenborn left and Kraft said he had to make a couple of telephone calls.  Titgen then went to his hotel room.

Dennis Alt was also in Tootsie Van Kelly's that evening.  Dennis's cousin, Thomas Alt, saw Dennis in the bar around 11:00 p.m.  Dennis had been drinking and asked Thomas to take him home.  Thomas agreed but, after going back into the bar to retrieve his jacket and then paying for a round of drinks for some people he knew, Thomas could not find Dennis.

On the morning of December 9, 1982, the bodies of two men, later identified as those of Christopher Schoenborn and Dennis Alt, were found five feet from a road in a vacant field about four miles from the Alt farm and nine miles from the Amway Grand Plaza Hotel.  Alt's pants were unbuttoned and his genitals were exposed.  He was wearing socks but no shoes.  His death was the result of

asphyxiation by choking; there were linear pressure marks on the right side of his neck. Alt's blood contained alcohol (0.15 percent) and diazepam. Like Alt, Schoenborn had been choked to death, and there were parallel pressure marks on the left side of his neck. A pen with the insignia of the Amway Grand Plaza Hotel had been inserted up Schoenborn's urethra into the soft tissue of the pelvis, causing extensive hemorrhaging. Schoenborn's blood contained alcohol (0.16 percent), and there was diazepam in his stomach.

After Kraft checked out of room 1169 of the Amway Grand Plaza Hotel, a housekeeping supervisor found a set of keys, which she turned in to the hotel's lost-and-found department. The keys were for Alt's Ford Bronco and Yamaha snowmobile. Schoenborn's Mighty Mac jacket, identified at trial by his mother, was found in a search of Kraft's garage. Schoenborn's key chain and bottle opener were found in the pocket of a sports coat in Kraft's home. Schoenborn's boots and belt were also recovered from Kraft's home.

The prosecutor argued to the jury that the entry "GR 2" on Kraft's list referred to Alt and Schoenborn.

### 9.   Murder of Lance Taggs

About 10:45 p.m. on December 8, 1982, Lance Taggs, 19 years old, five feet seven inches in height and 160 pounds in weight, left his home in Tigard, Oregon. Taggs had no car and sometimes hitchhiked. Taggs carried a blue nylon tote bag, printed with "Kaneohe, Hawaii," into which he had packed his surfing clothes and his distinctive set of nunchakus. Having previously lived in Hawaii, Taggs possessed some clothes with "Hawaii" printed on them and a Hawaii state identification card.

A body, later identified as Taggs, was found the next day several feet off a road a half-mile east of Interstate 5 between Wilsonville and Canby in Oregon, less than a quarter-mile from the location where Brian Whitcher's body had been found.

45

The words "Local Motion" and "Hawaii" were printed on the red shirt Taggs was wearing.  There were no shoes or socks on the body, which had been ejected from a moving vehicle.  The cause of death was asphyxiation from the obstruction of the airway by a foreign object (an orange sock had been stuffed down Taggs's throat).  The waistband of the swimming trunks Taggs was wearing was unsnapped, and it appeared he had been redressed, as the inside of the swimming trunks was dirty.  Taggs's blood contained alcohol (0.07 percent), diazepam and nordiazepam (a metabolite of diazepam).

Kraft claimed reimbursement from his employer, Lear-Siegler, for expenses incurred in Portland, Oregon, on December 8 and 9, 1982.

Taggs's tote bag and nunchakus were found in the search of Kraft's house.

The prosecutor argued to the jury that the entry "Portland Hawaii" on Kraft's list referred to Taggs.

The defense tried to show that another person was responsible for Taggs's murder.  Robert Hayes, the former proprietor of a security business in Wilsonville, Oregon, testified that in the early evening hours of December 8, 1982, he had encountered Taggs hitchhiking by the freeway near Wilsonville.  Hayes told Taggs to get out of the area, as a couple of murders had occurred there.  Some disreputable persons, including one Lloyd Hawes, frequented a rest stop south of Wilsonville.  That same evening, Hayes saw Hawes and three other men near where Taggs had been hitchhiking.  The next day, Hayes learned Taggs's body had been found between one and two miles from where Hayes had seen Hawes's truck.  Thereafter, Hayes quietly approached Hawes's pickup truck through some woods.  As he did so, he heard Hawes state:  "That one sure bounced a long way last night, didn't he?"  Later, Hayes, accompanied by a deputy sheriff, secretly searched under Hawes's camper shell, finding some clean Hawaiian shirts and a clean pair of blue jeans that would not have fit anyone in Hawes's group.  These were unlikely items
///

46

1 to find in Hawes's camper, as Hawes was a " cruddy, greasy, dirty-looking person"

2 one could "smell . . . a block away."

3

4    **10. Defense Penalty Phase Evidence**

5   Forty-four friends, family members, former coworkers and former teachers of

6 Kraft's testified he was an intelligent, peaceful, caring person who should not be

7 executed.

8   Four clergymen who interviewed Kraft and his family believed the death

9 penalty should not be imposed on Kraft.

10   Thirteen correctional officers from the Orange County jail testified Kraft had

11 caused no problems at the jail.

12   Dr.  Monte Buchsbaum, a professor of psychiatry, performed a positron

13 emission tomography (PET) scan on Kraft.  The scan revealed abnormalities that

14 could have been caused by a head injury or vascular problem.  Similar results have

15 been associated with obsessive-compulsive disorder.  According to members of

16 Kraft's family, when Kraft was a child he suffered a fall on his head that rendered

17 him unconscious.

18   Dr.  Craig Haney, psychologist, testified Kraft would make an excellent

19 adjustment to prison if sentenced to life imprisonment without the possibility of

20 parole.

21

22        **AFFIRMATIVE DEFENSES**

23   Respondent alleges the following affirmative defenses, as applicable, to each

24 claim, including subclaims, in the First Amended Petition.

25

26  **A. Failure to Allege Violation of Federal Law**

27   Federal habeas corpus relief, as a matter of law, is available to a prisoner in

28 state custody only if he demonstrates that he is being held in custody "in violation

1    of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)

2    & 2254(a).  As a matter of law, such relief is not available for errors in the

3    application of state law.

4         Since none of Kraft's claims and subclaims allege facts which, even if true,

5    would amount to a "violation of the Constitution or laws or treaties of the United

6    States," federal habeas corpus relief is not available on any of his claims or

7    subclaims.

8         To the extent that Kraft's claims and subclaims are based upon purported

9    errors in the application of state law, federal habeas corpus relief is unavailable.

10

11        **B.    Lack of Subject Matter Jurisdiction**

12        Because the "federal question" requirement — *i.e.*, that a prisoner demonstrate

13   he is being held in state custody in "violation of the Constitution or laws or treaties

14   of the United States" — is jurisdictional, Kraft's failure to allege facts in support of

15   any of his claims and subclaims which, if true, would amount to a "violation of the

16   Constitution or laws or treaties of the United States" deprives this court of subject

17   matter jurisdiction.

18        Any claims or subclaims that are based solely on purported violations of state

19   statutes or the state constitution are likewise not cognizable on federal habeas

20   corpus and are outside this Court's subject matter jurisdiction.

21

22        **C.    Procedural Default**

23        The California Supreme Court found Kraft had defaulted claims contained in

24   the pending First Amended Petition.  Specifically, on appeal, the California

25   Supreme Court found that Kraft had waived his claim that seizure of pharmacy

26   records pursuant to a subpoena duces tecum violated his privacy rights, and that the

27   prosecutor allegedly committed misconduct in argument during the penalty phase.

28   *People v. Kraft*, 23 Cal.4th at 1050, 1076.

1        The California Supreme Court found certain claims raised by Kraft on state

2  habeas were procedurally barred.  Specifically, the California Supreme Court found

3  the habeas claims of insufficient evidence as to the murders of Mark Howard Hall,

4  Wyatt Loggins, Roland Gerald Young, Edward Daniel Moore, John Doe

5  Huntington Beach, and Ronnie Gene Weibe were not cognizable on habeas, citing

6  *In re Lindley*, 29 Cal.2d 709, 723 (1947).  (Resp. Lodg. Nos. 12/127, 17/127,

7  19/127.)  As to these same six murder victims, the California Supreme Court found

8  Kraft's allegations of a violation of the Fourth Amendment was not cognizable on

9  habeas, citing *In re Lessard*, 62 Cal.2d 497 (1965).  (Resp. Lodg. Nos. 12/127,

10  17/127, 19/127.)  The California Supreme Court found as to these same six victims,

11  and murder victim Terry Lee Gambrel, that Kraft's claims of denial of his pretrial

12  severance motion and admission of the "death list" into evidence was barred under

13  I*n re Waltreus*, 62 Cal.2d 218, 225 (1965).[1]  (Resp. Lodg. Nos. 12/127, 17/127,

14  19/127, 22/127.)  As to these same seven murder victims, the California Supreme

15  Court found the following allegations in the petitions barred under *In re Dixon*,

16  41 Cal.2d 756, 759:  (1) alleged error in the trial court's ruling on the scope of

17  cross-examination; (2) bias on the part of the trial court; and (3) "error in the

18  admission of  assertedly inflammatory evidence" on the Hall and Loggins charges.

19  (Resp. Lodg. Nos. 12/127, 17/127, 19/127, 22/127.)

20        The procedural default doctrines invoked by the California Supreme Court are

21  independent of federal law and adequate to bar review on federal habeas corpus.

22  Accordingly, these claims, as having been procedurally defaulted, are barred from

23  review by this Court and should be dismissed.

24  ///

25  ///

26        [1]Respondent recognizes the Ninth Circuit has held that the rule announced in

27  *Waltreus* "is not sufficient to bar federal relief."  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1131 (9th Cir. 1996); *LaCrosse v. Kernan*, 244 F.3d

28  702, 705 n.11 (9th Cir. 2001).

### D.   Non-Retroactivity:  The *Teague* Doctrine

In order for Kraft to be entitled to relief on any claim in his First Amended Petition, it would require the creation of a new rule of criminal procedure, and relief predicated on a new rule of criminal procedure would be foreclosed because retroactive application would be foreclosed on collateral review.  *See Teague v. Lane*, 489 U.S. 288, 299-301, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

### E.   Laches

Kraft's conviction became final on March 5, 2001, when the United States Supreme Court denied his certiorari petition (Resp. Lodg. No. 143).  *See Kraft v. California*, 532 U.S. 908, 121 S. Ct. 1234, 149 L. Ed. 2d 142 (2001); 28 U.S.C. § 2244(d)(1)(A).  However, the original Petition in this case was not filed until January 16, 2004 (Docs. 27- 28), and the First Amended Petition was not filed until January 12, 2005 (Docs. 78-91).  Thus, Kraft has delayed in presenting the claims in the First Amended Petition.  Respondent alleges he has been prejudiced by this delay.  Accordingly, the equitable doctrines of laches and/or estoppel bar relief on Kraft's claims.  *See*, *e.g*., Fed. R. Civ. P. 8(c); *Garlotte v. Fordice*, 515 U.S. 39, 46-47, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995); *Lonchar v. Thomas*, 517 U.S. 314, 326-32, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996); *Gomez v. United States District Court for the Northern District of California*, 503 U.S. 653, 653-54, 112 S. Ct. 1652, 118 L. Ed. 2d 293 (1992); *Vasquez v. Hillery*, 474 U.S. 254, 265, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986).

### F.   The Statute of Limitations:  28 U.S.C. § 2244(d)

As noted, Kraft's conviction became final on March 5, 2001.  Consequently, under 28 U.S.C. § 2244(d), his federal petition was due by March 5, 2002.  The original federal Petition was filed on January 16, 2004.  The First Amended Petition, which was filed on January 12, 2005, added new claims for relief.

### G.   Abuse of the Writ

All of Kraft's claims could have been alleged in the original petition, but were not.  The claims therefore constitute an abuse of the writ and should be dismissed.

### H.   Harmless Error

Even if Kraft has alleged an error that is potentially cognizable on federal habeas corpus, any such error was harmless under the governing standards of harmless error review and therefore cannot be grounds for federal habeas relief.

### I.   General Denial

Respondent denies that the judgment underlying Kraft's conviction and sentence is invalid in any respect, that any of his federal constitutional rights have been violated in any way, and that any reversal, retrial, remand, release, or any other form of relief whatsoever, is appropriate under the circumstances presented herein.  Except to the extent expressly admitted herein, Respondent denies each and every material fact and legal characterization set forth in the First Amended Petition, including all exhibits and materials incorporated by reference therein.

### STANDARD OF REVIEW

The First Amended Petition, filed January 12, 2005, is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Woodford v. Garceau*, 538 U.S. 202, 207, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003); *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003). Under AEDPA, a federal habeas court may not grant relief to a state prisoner unless the state court's decision was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court authority, or was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  *See* 28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 639-40,

51

1   123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003); *see Lockyer v. Andrade*, 538 U.S. 63,

2   70-71, 75-76, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) (holding that it is not

3   enough that a federal habeas court is left with a "firm conviction" that a state court

4   violated the Constitution and that the state court determination must also be

5   objectively unreasonable).  In other words, a petitioner must demonstrate that the

6   state court's conclusion is "'diametrically different' from 'opposite in character or

7   nature' from, or 'mutually opposed' to" relevant precedent decided by the United

8   States Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 406, 120 S. Ct. 1495,

9   146 L. Ed. 2d 389 (2000).

10   Although "[t]he term 'unreasonable' is 'a common term in the legal world[,]"

11   "the range of reasonable judgment can depend in part on the nature of the relevant

12   rule."  *Yarborough v. Alvarado*, 541 U.S. 652, 663-64, 124 S. Ct. 2140,

13   158 L. Ed. 2d 938 (2004).  Accordingly, "[i]f a legal rule is specific, the range may

14   be narrow."  *Id*. at 664.  On the other hand, "[o]ther rules are more general, and

15   their meaning must emerge in application over the course of time. . . .  The more

16   general the rule, the more leeway courts have in reaching outcomes in case by case

17   determinations."  *Id*.

18   Only Supreme Court decisions can form the basis justifying habeas relief.

19   *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002).  Moreover, the only

20   controlling Supreme Court cases are those deciding constitutional issues.  *Early v.

21   Packer*, 537 U.S. 3, 10, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  In addition,

22   section 2254(d) does not require a state court to cite federal law in its opinion; in

23   fact, a state court need not even be aware of applicable Supreme Court precedent

24   "so long as neither the reasoning nor the result of the state-court decision

25   contradicts them."  *Id*. at 8.

26   The state court's factual findings are presumed correct.  *See Tinsley v. Borg*,

27   895 *F.2d* 520, 524-25 (9th Cir. 1990); 28 U.S.C. § 2254(e)(1).  This presumption is

28   ///

52

1 not altered when a state appellate court made the findings, rather than a trial court.

2 *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001).

3     Where the state court makes a finding that an error was harmless beyond a

4 reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824,

5 17 L. Ed. 2d 705 (1967), relief may not be granted unless the state court's finding

6 was in "conflict with the reasoning or the holdings of [Supreme Court] precedent"

7 or if it "applied harmless-error review in an 'objectively unreasonable' manner."

8 *Inthavong v. Lamarque*, 420 F.3d 1055, 1058-1061 (9th Cir. 2005) (quoting

9 *Mitchell v. Esparza*, 540 U.S. 12 (2003)); *see also Medina v. Hornung*, 386 F.3d

10 872, 878-879 (9th Cir. 2004).  If the state court's holding of harmless error is found

11 to be contrary to, or to involve an unreasonable application of, clearly established

12 Supreme Court precedent, then the reviewing court must revert to the independent

13 harmless error analysis that would be applicable if there had been no state court

14 holding, *i.e.*, whether the error had a "substantial and injurious effect or influence in

15 determining the jury's verdict[.]"  *Brecht v. Abrahamson*, 507 U.S. 619, 637,

16 113 S. Ct. 1710, 123 L. Ed. 353 (1993).

17     Further, Kraft bears the burden of proving his allegations by a preponderance

18 of the evidence.  *See Walker v. Johnson*, 312 U.S. 275, 286, 61 S. Ct. 574, 85 L. Ed.

19 830 (1941) (habeas petitioner has burden of sustaining allegations by a

20 preponderance of the evidence); *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S. Ct.

21 1019, 82 L. Ed. 1461 (1938) (habeas petitioner bears burden of proving facts

22 underlying alleged constitutional error by a preponderance of the evidence); *Davis*

23 *v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("[t]he petitioner carries the burden

24 of proving by a preponderance of the evidence that he is entitled to habeas relief").

25 ///

26 ///

27 ///

28

**CLAIMS FOR RELIEF**

## I. CLAIM 1: KRAFT'S CLAIM REGARDING THE JURY VENIRE WAS DISMISSED

In Claim 1, Kraft alleges his constitutional rights were violated and he was not tried before a representative jury because Hispanics were allegedly under-represented in the Orange County jury pool. (FAP at 18-33.) This entire claim was dismissed pursuant to this Court's April 24, 2009 Order on Respondent's Motion to Dismiss and Petitioner's Motion for Stay (Doc. 144) (hereinafter referred to as "April 24, 2009 Order"), and the Superseding Joint Statement of the Parties Regarding Exhaustion filed November 22, 2005 (Doc. 123) (hereinafter referred to as "Superseding Joint Statement").

## II. CLAIM 2: KRAFT RECEIVED A FAIR TRIAL BEFORE A REPRESENTATIVE JURY AND THE TRIAL COURT PROPERLY REFUSAL TO AUGMENT JURY FEES

In Claim 2, Kraft asserts that his constitutional rights were violated because he was not tried before a fair cross-section of the community and the trial court refused to grant his motion to augment juror fees. (FAP at 33-43.)

The California Supreme Court denied this claim on the merits. *People v. Kraft*, 23 Cal.4th at 1066-1067. As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d). Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

///

54

As to the factual allegations made in support of Claim 2, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits. *People v. Kraft*, 23 Cal.4th at 1066-1067. That court's implied and express factual findings are entitled to a presumption of correctness and to deference. § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995). Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief. Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court. *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible. Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

### III. CLAIM 3: KRAFT WAS TRIED BEFORE A FAIR AND IMPARTIAL JURY AND THE TRIAL COURT PROPERLY DECLINED TO CHANGE VENUE

In Claim 3, Kraft alleges that his constitutional rights were violated and he was not tried before a fair and impartial jury because the trial court denied his

1    motion for change of venue based on Kraft's claim of excessive pre-trial publicity.

2    (FAP at 43-51.)

3         Subsection B.2 of Claim 3 was withdrawn in the Superseding Joint Statement

4    at page 2.  As to the remainder of the claim, the California Supreme Court denied

5    this claim on the merits.  *People v. Kraft*, 23 Cal.4th 978.  As a result, Kraft is

6    precluded from obtaining federal habeas relief because the California Supreme

7    Court's denial of this claim is not contrary to any clearly established Supreme

8    Court authority, did not involve an unreasonable application of clearly established

9    Supreme Court authority, and did not involve an unreasonable determination of the

10   facts based on the evidence presented to it within the meaning of § 2254(d).  Even

11   assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege

12   a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

13   federal constitutional claim for relief.

14        As to the factual allegations made in support of Claim 3, including all

15   subclaims, Respondent affirmatively alleges the California Supreme Court

16   adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

17   23 Cal.4th 978.  That court's implied and express factual findings are entitled to a

18   presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v.*

19   *Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient

20   knowledge to admit or deny, every allegation; alternatively, Respondent denies that

21   the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

22   entitled to an evidentiary hearing on this claim, including all subclaims, because a

23   proper application of § 2254(d) requires that the claim be adjudicated on the basis

24   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

25   652 ("we have made clear that whether a state court's decision is unreasonable must

26   be assessed in light of the record the court had before it"), citing *Yarborough v.*

27   *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

28   697 n.4 (declining to consider evidence not presented to state court in determining

1  whether its decision was contrary to federal law).  Permitting an evidentiary hearing

2  to allow Kraft to more fully develop the factual basis of the claim would render his

3  claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

4  evidentiary hearing should be held because, to the extent that Kraft's claim is not

5  fully factually developed, he failed to exercise "due diligence" within the meaning

6  of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

7

8  **IV.  CLAIM 4:  KRAFT'S CLAIM REGARDING A FAIR, IMPARTIAL AND
      REPRESENTATIVE JURY THAT WAS PROPERLY DEATH-QUALIFIED WAS
9      DISMISSED**

10  In Claim 4, Kraft contends that his constitutional rights were violated and he

11  was not tried before a fair, impartial and representative jury because "death

12  qualification" of the jury resulted in a panel biased in favor of finding Kraft guilty

13  and sentencing him to death.  (FAP at 51-62.)  This entire claim was dismissed

14  pursuant to the Court's April 24, 2009 Order (Doc. 144), and the Superseding Joint

15  Statement (Doc. 123).

16

17  **V.  CLAIM 5:  KRAFT RECEIVED A TRIAL BEFORE A FAIR AND IMPARTIAL
      JURY THAT DETERMINED BOTH GUILT AND PENALTY**
18

19  In Claim 5, Kraft asserts his constitutional rights were violated because the

20  same jury determined both his guilt of the 16 murder counts and the appropriate

21  penalty.  (FAP at 62-68.)  The California Supreme Court denied this claim on the

22  merits.  *People v. Kraft*, 23 Cal.4th at 1069-1070.  As a result, Kraft is precluded

23  from obtaining federal habeas relief because the California Supreme Court's denial

24  of this claim is not contrary to any clearly established Supreme Court authority, did

25  not involve an unreasonable application of clearly established Supreme Court

26  authority, and did not involve an unreasonable determination of the facts based on

27  the evidence presented to it within the meaning of § 2254(d).  Even assuming

28  arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a

57

1   cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

2   federal constitutional claim for relief.

3       As to the factual allegations made in support of Claim 5, including all

4   subclaims, Respondent affirmatively alleges the California Supreme Court

5   adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

6   23 Cal.4th at 1069-1070.  That court's implied and express factual findings are

7   entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1);

8   *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks

9   sufficient knowledge to admit or deny, every allegation; alternatively, Respondent

10  denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further,

11  Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims,

12  because a proper application of § 2254(d) requires that the claim be adjudicated on

13  the basis of the record before the California Supreme Court.  *Holland v. Jackson*,

14  542 U.S. at 652 ("we have made clear that whether a state court's decision is

15  unreasonable must be assessed in light of the record the court had before it"), citing

16  *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v.*

17  *Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state

18  court in determining whether its decision was contrary to federal law).  Permitting

19  an evidentiary hearing to allow Kraft to more fully develop the factual basis of the

20  claim would render his claim unexhausted, and a sound application of § 2254(d)

21  impossible.  Moreover, no evidentiary hearing should be held because, to the extent

22  that Kraft's claim is not fully factually developed, he failed to exercise "due

23  diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent

24  requirements of § 2254(e)(2).

25  ///

26  ///

27  ///

28

58

1
2

**VI.  CLAIM 6:  KRAFT RECEIVED A TRIAL BEFORE A FAIR AND IMPARTIAL JURY AND JURORS DID NOT FAIL TO DISCLOSE CRITICAL INFORMATION DURING VOIR DIRE**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

In Claim 6, Kraft alleges his constitutional rights were violated because juror Jim L.  remained on the jury.  (FAP at 68-80.)  Except as it related to juror Jim L., subsection B.3 of Claim 6 was dismissed pursuant to the Superseding Joint Statement at page 3 and April 24, 2009 Order at pages 24-25.  Additionally, "the juror bias claim based on the allegation that juror Jim L. lied to the trial court, which relies on the legal theory discussed in *Dryer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (en banc)," alleged in the First Amended Petition, was dismissed in the April 24, 2009 Order at pages 4 and 25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1067-1069.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

21
22
23
24
25
26
27
28

As to the factual allegations made in support of Claim 6, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1067-1069.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further,

1  Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims,

2  because a proper application of § 2254(d) requires that the claim be adjudicated on

3  the basis of the record before the California Supreme Court.  *Holland v. Jackson*,

4  542 U.S. at 652 ("we have made clear that whether a state court's decision is

5  unreasonable must be assessed in light of the record the court had before it"), citing

6  *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v.

7  Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state

8  court in determining whether its decision was contrary to federal law).  Permitting

9  an evidentiary hearing to allow Kraft to more fully develop the factual basis of the

10  claim would render his claim unexhausted, and a sound application of § 2254(d)

11  impossible.  Moreover, no evidentiary hearing should be held because, to the extent

12  that Kraft's claim is not fully factually developed, he failed to exercise "due

13  diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent

14  requirements of § 2254(e)(2).

15

16  **VII. CLAIM 7:  KRAFT'S CLAIM THE JURY AT THE PENALTY PHASE REFUSED
    TO CONSIDER ALL AVAILABLE MITIGATING EVIDENCE WAS DISMISSED**

17

18      In Claim 7, Kraft contends that his constitutional rights were violated and he

19  was not tried before a fair and impartial jury because during the penalty phase the

20  jury refused to consider all available mitigation evidence when determining

21  whether Kraft should be sentenced to death or life without the possibility of parole.

22  (FAP at 80-84.)  This entire claim was dismissed pursuant to the Court's April 24,

23  2009 Order (Doc. 144), and the Superseding Joint Statement (Doc. 123).

24  ///

25  ///

26  ///

27

28

VIII.   CLAIM 8:  KRAFT WAS TRIED BEFORE A FAIR AND IMPARTIAL TRIBUNAL

In Claim 8, Kraft alleges his constitutional rights were violated because the trial judge was biased.  (FAP at 84-90.)  The California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th 978.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 8, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th 978.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining

1    whether its decision was contrary to federal law).  Permitting an evidentiary hearing

2    to allow Kraft to more fully develop the factual basis of the claim would render his

3    claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

4    evidentiary hearing should be held because, to the extent that Kraft's claim is not

5    fully factually developed, he failed to exercise "due diligence" within the meaning

6    of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

7

8    **IX.  CLAIM 9:  KRAFT WAS PROPERLY CONVICTED OF CAPITAL MURDER**
     **BECAUSE HE MURDERED 16 YOUNG MEN AND IS NOT "ACTUALLY**
9    **INNOCENT"**

10   In Claim 9, Kraft avers that his constitutional rights were violated because he

11   is actually innocent of the murders for which he was convicted.  (FAP at 90-92.)

12   The California Supreme Court denied this claim on the merits and found sufficient

13   evidence supported each of the counts.  *People v. Kraft*, 23 Cal.4th 1053-1060.  As

14   a result, Kraft is precluded from obtaining federal habeas relief because the

15   California Supreme Court's denial of this claim is not contrary to any clearly

16   established Supreme Court authority, did not involve an unreasonable application

17   of clearly established Supreme Court authority, and did not involve an unreasonable

18   determination of the facts based on the evidence presented to it within the meaning

19   of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the

20   claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to

21   allege a prima facie federal constitutional claim for relief.

22   As to the factual allegations made in support of Claim 9, including all

23   subclaims, Respondent affirmatively alleges the California Supreme Court

24   adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

25   23 Cal.4th at 1053-1060.  That court's implied and express factual findings are

26   entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1);

27   *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks

28   sufficient knowledge to admit or deny, every allegation; alternatively, Respondent

1   denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further,

2   Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims,

3   because a proper application of § 2254(d) requires that the claim be adjudicated on

4   the basis of the record before the California Supreme Court.  *Holland v. Jackson*,

5   542 U.S. at 652 ("we have made clear that whether a state court's decision is

6   unreasonable must be assessed in light of the record the court had before it"), citing

7   *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v.*

8   *Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state

9   court in determining whether its decision was contrary to federal law).  Permitting

10   an evidentiary hearing to allow Kraft to more fully develop the factual basis of the

11   claim would render his claim unexhausted, and a sound application of § 2254(d)

12   impossible.  Moreover, no evidentiary hearing should be held because, to the extent

13   that Kraft's claim is not fully factually developed, he failed to exercise "due

14   diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent

15   requirements of § 2254(e)(2).

16

17   **X.   CLAIM 10:  ALL 16 MURDER COUNTS, AND THE SODOMY AND MAYHEM**
     **COUNTS WERE PROPERLY JOINED IN A SINGLE TRIAL**

18

19   In Claim 10, Kraft contends his constitutional rights were violated because all

20   16 murder counts, and the sodomy and mayhem counts were tried together.  (FAP

21   at 92-105.)  The California Supreme Court denied this claim on the merits.  *People*

22   *v. Kraft*, 23 Cal.4th at 1029-1032.  As a result, Kraft is precluded from obtaining

23   federal habeas relief because the California Supreme Court's denial of this claim is

24   not contrary to any clearly established Supreme Court authority, did not involve an

25   unreasonable application of clearly established Supreme Court authority, and did

26   not involve an unreasonable determination of the facts based on the evidence

27   presented to it within the meaning of § 2254(d).  Even assuming arguendo that

28   Kraft is entitled to *de novo* review the claim fails to allege a cognizable claim in a

federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 10, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits. *People v. Kraft*, 23 Cal.4th at 1029-1032. That court's implied and express factual findings are entitled to a presumption of correctness and to deference. § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995). Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief. Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court. *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible. Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

///

///

///

**XI.   CLAIM 11:  THE TRIAL COURT PROPERLY ADMITTED INTO EVIDENCE THE CRYPTIC LIST OF MURDERED VICTIMS WRITTEN BY KRAFT**

In Claim 11, Kraft alleges his constitutional rights were violated because the trial court admitted into evidence his death list (trial exhibit no. 165).  (FAP at 105-134.)  The aspects of Claim 11 that the contents of the glove box in Kraft's car should have been excluded and "other irrelevant, yet unduly gruesome and excessively prejudicial exhibits," alleged in the First Amended Petition, were dismissed pursuant to the April 24, 2009 Order at pages 5, 24-25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1032-1036.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 11, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1032-1036.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on

1  the basis of the record before the California Supreme Court.  *Holland v. Jackson*,

2  542 U.S. at 652 ("we have made clear that whether a state court's decision is

3  unreasonable must be assessed in light of the record the court had before it"), citing

4  *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v.*

5  *Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state

6  court in determining whether its decision was contrary to federal law).  Permitting

7  an evidentiary hearing to allow Kraft to more fully develop the factual basis of the

8  claim would render his claim unexhausted, and a sound application of § 2254(d)

9  impossible.  Moreover, no evidentiary hearing should be held because, to the extent

10  that Kraft's claim is not fully factually developed, he failed to exercise "due

11  diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent

12  requirements of § 2254(e)(2).

13

14  **XII.  CLAIM 12: *MODUS OPERANDI* EVIDENCE WAS PROPERLY**
    **INTRODUCED, THE JURY WAS PROPERLY INSTRUCTION ON IT AND**
15  **KRAFT RECEIVED ADEQUATE PROCESS, EQUAL PROTECTION, AND**
    **A FUNDAMENTALLY FAIR TRIAL**
16

17      In Claim 12, Kraft asserts his constitutional rights were violated because his

18  motion to sever was denied, his cryptic list of murdered victims (trial exhibit no.

19  165) was admitted into evidence, and the prosecutor relied upon and the jury was

20  instructed on a theory of *modus operandi*.  (FAP at 134-153.)  The California

21  Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at

22  1029-1036, 1053-1058, 1061-1062.  As a result, Kraft is precluded from obtaining

23  federal habeas relief because the California Supreme Court's denial of this claim is

24  not contrary to any clearly established Supreme Court authority, did not involve an

25  unreasonable application of clearly established Supreme Court authority, and did

26  not involve an unreasonable determination of the facts based on the evidence

27  presented to it within the meaning of § 2254(d).  Even assuming arguendo that

28  Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a

1    federal habeas proceeding, or fails to allege a prima facie federal constitutional

2    claim for relief.

3         As to the factual allegations made in support of Claim 12, including all

4    subclaims, Respondent affirmatively alleges the California Supreme Court

5    adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

6    23 Cal.4th at 1029-1036, 1053-1058, 1061-1062.  That court's implied and express

7    factual findings are entitled to a presumption of correctness and to deference.

8    § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).

9    Respondent denies, or lacks sufficient knowledge to admit or deny, every

10   allegation; alternatively, Respondent denies that the alleged facts, if true, entitle

11   Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary

12   hearing on this claim, including all subclaims, because a proper application of

13   § 2254(d) requires that the claim be adjudicated on the basis of the record before

14   the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have

15   made clear that whether a state court's decision is unreasonable must be assessed

16   in light of the record the court had before it"), citing *Yarborough v. Gentry*,

17   540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4

18   (declining to consider evidence not presented to state court in determining whether

19   its decision was contrary to federal law).  Permitting an evidentiary hearing to allow

20   Kraft to more fully develop the factual basis of the claim would render his claim

21   unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

22   evidentiary hearing should be held because, to the extent that Kraft's claim is not

23   fully factually developed, he failed to exercise "due diligence" within the meaning

24   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

25   ///

26   ///

27   ///

28

**XIII.   CLAIM 13:  THE TRIAL COURT PROPERLY DENIED KRAFT'S REQUEST TO TESTIFY AS TO ONLY SOME COUNTS WITHOUT BEING SUBJECT TO EXAMINATION AS TO ALL OTHER COUNTS**

In Claim 13, Kraft contends his constitutional rights were violated because the trial court denied his request to testify as to Counts 4, 5, 8, 17, 18, and 19 only, but not be subject to examination as to the remaining counts for which he was being tried.  (FAP at 154-162.)  Section B.3 of Claim 13 was dismissed pursuant to the Joint Statement at page 5 and April 24, 2009 Order at pages 24-25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1032.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 13, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court.  *Holland v. Jackson*,

542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible. Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

### XIV.   CLAIM 14: KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF EDWARD DANIEL MOORE (COUNT 1), AND SUFFICIENT EVIDENCE SUPPORTS THE CONVICTION

In Claim 14, Kraft alleges his constitutional rights were violated because insufficient evidence supports his conviction of murdering Edward Daniel Moore (Count 1), the trial court improperly denied his pinpoint instruction to the jury, prevented him from introducing evidence someone else allegedly committed the murder, specifically Charles Vines ("The Major"), and the trial court incorrectly admitted the death list (trial exhibit no. 165). (FAP at 163-176.) A portion of paragraph A.13.A, section B.2, and paragraph 24 in B.3 were dismissed pursuant to the Joint Statement at pages 5-6, and April 24, 2009 Order at pages 5-6, 24-25. As to the remainder of the claim, the California Supreme Court denied this claim on the merits. *People v. Kraft*, 23 Cal.4th at 1056-1057; *In re Randy Steven Kraft on Habeas Corpus*, case number S017126, Order dated August 14, 2000. As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly

1    established Supreme Court authority, and did not involve an unreasonable

2    determination of the facts based on the evidence presented to it within the meaning

3    of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review the

4    claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to

5    allege a prima facie federal constitutional claim for relief.

6        As to the factual allegations made in support of Claim 14, including all

7    subclaims, Respondent affirmatively alleges the California Supreme Court

8    adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

9    23 Cal.4th at 1020-1021, 1032-1036; *In re Randy Steven Kraft on Habeas Corpus*,

10    case number S017126.  That court's implied and express factual findings are

11    entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1);

12    *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks

13    sufficient knowledge to admit or deny, every allegation; alternatively, Respondent

14    denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further,

15    Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims,

16    because a proper application of § 2254(d) requires that the claim be adjudicated on

17    the basis of the record before the California Supreme Court.  *Holland v. Jackson*,

18    542 U.S. at 652 ("we have made clear that whether a state court's decision is

19    unreasonable must be assessed in light of the record the court had before it"), citing

20    *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v.*

21    *Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state

22    court in determining whether its decision was contrary to federal law).  Permitting

23    an evidentiary hearing to allow Kraft to more fully develop the factual basis of the

24    claim would render his claim unexhausted, and a sound application of § 2254(d)

25    impossible.  Moreover, no evidentiary hearing should be held because, to the extent

26    that Kraft's claim is not fully factually developed, he failed to exercise "due

27    diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent

28    requirements of § 2254(e)(2).

## XV.   CLAIM 15:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF JOHN DOE HUNTINGTON BEACH (COUNT 2), AND SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION

In Claim 15, Kraft contends his constitutional rights were violated because the trial court refused to give Kraft's pinpoint instruction, *modus operandi* evidence was introduced and the jury was instructed as to *modus operandi*, and the evidence is insufficient as to Count 2.  (FAP at 176-187.)  The allegations of ineffective assistance of counsel in section B.2 were dismissed pursuant to the Joint Statement at pages 6-7 and April 24, 2009 Order at pages 24-25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1032-1036, 1056, 1061-1063, 1066; *In re Randy Steven Kraft on Habeas Corpus*, case number S017126, Order dated August 14, 2000.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 15, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1019-1020; *In re Randy Steven Kraft on Habeas Corpus*, case number S017126.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

71

1   entitled to an evidentiary hearing on this claim, including all subclaims, because a

2   proper application of § 2254(d) requires that the claim be adjudicated on the basis

3   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

4   652 ("we have made clear that whether a state court's decision is unreasonable must

5   be assessed in light of the record the court had before it"), citing *Yarborough v.*

6   *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

7   697 n.4 (declining to consider evidence not presented to state court in determining

8   whether its decision was contrary to federal law).  Permitting an evidentiary hearing

9   to allow Kraft to more fully develop the factual basis of the claim would render his

10   claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

11   evidentiary hearing should be held because, to the extent that Kraft's claim is not

12   fully factually developed, he failed to exercise "due diligence" within the meaning

13   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

14

15   **XVI.   CLAIM 16:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST**
**DEGREE MURDER OF RONNIE GENE WIEBE (COUNT 3), AND**
16   **SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION**

17        In Claim 16, Kraft alleges that his constitutional rights were violated because

18   the trial court refused to give Kraft's pinpoint instruction, *modus operandi* evidence

19   was introduced and the jury was instructed as to *modus operandi*, and the evidence

20   is insufficient as to Count 3.  (FAP at 187-196.)  The allegations of ineffective

21   assistance of counsel in section B.2 were dismissed pursuant to the Joint Statement

22   at pages 7-8 and April 24, 2009 Order at pages 24-25.  As to the remainder of the

23   claim, the California Supreme Court denied this claim on the merits.  *People v.*

24   *Kraft*, 23 Cal.4th at 1055-1056; *In re Randy Steven Kraft on Habeas Corpus*, case

25   number S017126, Order dated August 14, 2000.  As a result, Kraft is precluded

26   from obtaining federal habeas relief because the California Supreme Court's denial

27   of this claim is not contrary to any clearly established Supreme Court authority, did

28   not involve an unreasonable application of clearly established Supreme Court

1    authority, and did not involve an unreasonable determination of the facts based on

2    the evidence presented to it within the meaning of § 2254(d).  Even assuming

3    arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a

4    cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

5    federal constitutional claim for relief.

6         As to the factual allegations made in support of Claim 16, including all

7    subclaims, Respondent affirmatively alleges the California Supreme Court

8    adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

9    23 Cal.4th at 1019; *In re Randy Steven Kraft on Habeas Corpus*, case number

10   S017126.  That court's implied and express factual findings are entitled to a

11   presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v.*

12   *Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient

13   knowledge to admit or deny, every allegation; alternatively, Respondent denies that

14   the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

15   entitled to an evidentiary hearing on this claim, including all subclaims, because a

16   proper application of § 2254(d) requires that the claim be adjudicated on the basis

17   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

18   652 ("we have made clear that whether a state court's decision is unreasonable must

19   be assessed in light of the record the court had before it"), citing *Yarborough v.*

20   *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

21   697 n.4 (declining to consider evidence not presented to state court in determining

22   whether its decision was contrary to federal law).  Permitting an evidentiary hearing

23   to allow Kraft to more fully develop the factual basis of the claim would render his

24   claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

25   evidentiary hearing should be held because, to the extent that Kraft's claim is not

26   fully factually developed, he failed to exercise "due diligence" within the meaning

27   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

28   ///

## XVII.   CLAIM 17:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF KEITH DAVEN CROTWELL (COUNT 4), AND SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION

In Claim 17, Kraft alleges his constitutional rights were violated because he could not testify about Count 4 without being examined as to all other counts in the information, the trial couret refused to give his pinpoint instruction, and insuffcent evidence supports the conviction as to Count 4.  (FAP at 196-217.)  The allegations in section B.2, B.3, B.4, B.6 and B.6A were dismissed pursuant to the April 24, 2009 Order at pages 6-7, 24-25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1017-1019, 1030-1036, 1063, 1066.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 17, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1017-1019, 1030-1036, 1063, 1066.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference. § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995). Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of

1   § 2254(d) requires that the claim be adjudicated on the basis of the record before

2   the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have

3   made clear that whether a state court's decision is unreasonable must be assessed in

4   light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S.

5   1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4

6   (declining to consider evidence not presented to state court in determining whether

7   its decision was contrary to federal law).  Permitting an evidentiary hearing to allow

8   Kraft to more fully develop the factual basis of the claim would render his claim

9   unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

10   evidentiary hearing should be held because, to the extent that Kraft's claim is not

11   fully factually developed, he failed to exercise "due diligence" within the meaning

12   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

**XVIII.     CLAIM 18:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF MARK HOWARD HALL (COUNT 5), AND SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION**

16      In Claim 18, Kraft alleges that his constitutional rights were violated because

17   he could not testify as to Count 5 without being examined as to all other counts in

18   the information, the trial court refused to give Kraft's pinpoint instruction, *modus*

19   *operandi* evidence was introduced and the jury was instructed as to *modus*

20   *operandi*, the evidence is insufficient, and joinder resulted in the burden of proof

21   shifting to Kraft and as to Count 5.  (FAP at 217-241.)  The allegations in section A

22   and B.1 regarding fingerprint evidence, B.4 and B.5 regarding allegations of

23   ineffective assistance of counsel as to the proffer of pinpoint instructions, B.8, and

24   B.9, were dismissed pursuant to the Joint Statement at pages 9-11 and April 24,

25   2009 Order at pages 7, 24-25.  As to the remainder of the claim, the California

26   Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at

27   1029-1036, 1052-1053, 1061-1063, 1065-1066; *In re Randy Steven Kraft on*

28   *Habeas Corpus*, case number S014772, Order dated August 14, 2000.  As a result,

1    Kraft is precluded from obtaining federal habeas relief because the California

2    Supreme Court's denial of this claim is not contrary to any clearly established

3    Supreme Court authority, did not involve an unreasonable application of clearly

4    established Supreme Court authority, and did not involve an unreasonable

5    determination of the facts based on the evidence presented to it within the meaning

6    of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the

7    claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to

8    allege a prima facie federal constitutional claim for relief.

9         As to the factual allegations made in support of Claim 18, including all

10   subclaims, Respondent affirmatively alleges the California Supreme Court

11   adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

12   23 Cal.4th at 1015-1017, 1029-1036, 1052-1053, 1061-1063, 1065-1066; *In re*

13   *Randy Steven Kraft on Habeas Corpus*, case number S014772.  That court's

14   implied and express factual findings are entitled to a presumption of correctness

15   and to deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-

16   110 (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny,

17   every allegation; alternatively, Respondent denies that the alleged facts, if true,

18   entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary

19   hearing on this claim, including all subclaims, because a proper application of

20   § 2254(d) requires that the claim be adjudicated on the basis of the record before

21   the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have

22   made clear that whether a state court's decision is unreasonable must be assessed in

23   light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S.

24   1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4

25   (declining to consider evidence not presented to state court in determining whether

26   its decision was contrary to federal law).  Permitting an evidentiary hearing to allow

27   Kraft to more fully develop the factual basis of the claim would render his claim

28   unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

1   evidentiary hearing should be held because, to the extent that Kraft's claim is not

2   fully factually developed, he failed to exercise "due diligence" within the meaning

3   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

4

5   **XIX.   CLAIM 19:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST
        DEGREE MURDER OF SCOTT MICHAEL HUGHES (COUNT 6), AND
6        SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION**

7          In Claim 19, Kraft contends his constitutional rights were violated because the

8   trial court admitted the death list (trial exhibit no. 165), the trial court refused to

9   give Kraft's pinpoint instruction, *modus operandi* evidence was introduced and the

10  jury was instructed as to *modus operandi*, and the evidence is insufficient as to

11  Count 6.  (FAP at 241-246.)  The California Supreme Court denied this claim on

12  the merits.  *People v. Kraft*, 23 Cal.4th at 1032-1036, 1061-1066.  As a result, Kraft

13  is precluded from obtaining federal habeas relief because the California Supreme

14  Court's denial of this claim is not contrary to any clearly established Supreme

15  Court authority, did not involve an unreasonable application of clearly established

16  Supreme Court authority, and did not involve an unreasonable determination of the

17  facts based on the evidence presented to it within the meaning of § 2254(d).  Even

18  assuming arguendo that Kraft is entitled to *de novo* review the claim fails to allege a

19  cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

20  federal constitutional claim for relief.

21          As to the factual allegations made in support of Claim 19, including all

22  subclaims, Respondent affirmatively alleges the California Supreme Court

23  adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

24  23 Cal.4th at 1014-1015, 1029-1036, 1061-1063, 1063-1066.  That court's implied

25  and express factual findings are entitled to a presumption of correctness and to

26  deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110

27  (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny, every

28  allegation; alternatively, Respondent denies that the alleged facts, if true, entitle

77

Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary

hearing on this claim, including all subclaims, because a proper application of

§ 2254(d) requires that the claim be adjudicated on the basis of the record before

the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have

made clear that whether a state court's decision is unreasonable must be assessed in

light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S.

1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4

(declining to consider evidence not presented to state court in determining whether

its decision was contrary to federal law).  Permitting an evidentiary hearing to allow

Kraft to more fully develop the factual basis of the claim would render his claim

unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

evidentiary hearing should be held because, to the extent that Kraft's claim is not

fully factually developed, he failed to exercise "due diligence" within the meaning

of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## XX.   CLAIM 20:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF ROLAND GERALD YOUNG (COUNT 7), AND SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION

In Claim 20, Kraft alleges that his constitutional rights were violated because

the trial court denied Kraft's severance motion and refused to instruct the jury with

Kraft's pinpoint instruction, and the evidence is insufficient as to Count 7.  (FAP at

247-258.)  The allegations in section B.1 regarding hair evidence, and B.2, and B.3

regarding alleged ineffective assistance of counsel as to the pinpoint instructions

proffer were dismissed pursuant to the Joint Statement at page 11 and April 24,

2009 Order at pages 24-25.  As to the remainder of the claim, the California

Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at

1029-1036, 1055, 1061-1063, 1065-1066; *In re Randy Steven Kraft on Habeas*

*Corpus*, case number S016342, Order dated August 14, 2000.  As a result, Kraft is

precluded from obtaining federal habeas relief because the California Supreme

Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 20, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1013-1014, 1029-1036, 1061-1063, 1065-1066; *In re Randy Steven Kraft on Habeas Corpus*, case number S016342.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference. § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995). Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not

fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## XXI.   CLAIM 21:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF RICHARD ALLEN KEITH (COUNT 8), AND SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION

In Claim 21, Kraft alleges that his constitutional rights were violated because the trial court admitted his death list (trial exhibit no. 165), the trial court refused to give Kraft's pinpoint instruction, *modus operandi* evidence was introduced and the jury was instructed as to *modus operandi*, and the evidence is insufficient as to Count 8.  (FAP at 259-267.)

The allegations in section B.1 regarding the trial court allegedly threatening to hold Kraft's counsel in comtempt if he did not rush presentation of defense witnesses and B.2 regarding ineffective assistance of counsel as to the pinpoint instruction proffer, and B.3 regarding alleged ineffective assistance of counsel as to the proffer of pinpoint instructions were dismissed pursuant to the Joint Statement at page 12 and April 24, 2009 Order at pages 8, 24-25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036, 1053-1056, 1061-1063, 1065-1066.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 21, including all subclaims, Respondent affirmatively alleges the California Supreme Court

adjudicated the factual issue underlying the claim on the merits. *People v. Kraft*, 23 Cal.4th at 1012-1013, 1029-1036, 1061-1063, 1065-1066. That court's implied and express factual findings are entitled to a presumption of correctness and to deference. § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995). Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief. Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court. *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible. Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## XXII.   CLAIM 22: KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF KEITH ARTHUR KLINGBEIL (COUNT 9), AND SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION

In Claim 22, Kraft alleges that his constitutional rights were violated because the trial court admitted the death list (trial exhibit no. 165), the trial court refused to give Kraft's pinpoint instruction, *modus operandi* evidence was introduced and the jury was instructed as to *modus operandi*, and the evidence is insufficient as to Count 9. (FAP at 267-275.) The allegations in section B.2 regarding the

1  ineffective assistance of counsel as to the pinpoint instruction proffer were

2  dismissed pursuant to the Joint Statement at page 13 and April 24, 2009 Order at

3  pages 24-25.  As to the remainder of the claim, the California Supreme Court

4  denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036, 1055,

5  1061-1063, 1065-1066.  As a result, Kraft is precluded from obtaining federal

6  habeas relief because the California Supreme Court's denial of this claim is not

7  contrary to any clearly established Supreme Court authority, did not involve an

8  unreasonable application of clearly established Supreme Court authority, and did

9  not involve an unreasonable determination of the facts based on the evidence

10  presented to it within the meaning of § 2254(d).  Even assuming arguendo that

11  Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a

12  federal habeas proceeding, or fails to allege a prima facie federal constitutional

13  claim for relief.

14       As to the factual allegations made in support of Claim 22, including all

15  subclaims, Respondent affirmatively alleges the California Supreme Court

16  adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

17  23 Cal.4th at 1011-1012, 1029-1036, 1061-1063, 1065-1066.  That court's implied

18  and express factual findings are entitled to a presumption of correctness and to

19  deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110

20  (1995).  Respondent denies, or lacks sufficient knowledge to admit or deny, every

21  allegation; alternatively, Respondent denies that the alleged facts, if true, entitle

22  Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary

23  hearing on this claim, including all subclaims, because a proper application of

24  § 2254(d) requires that the claim be adjudicated on the basis of the record before

25  the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have

26  made clear that whether a state court's decision is unreasonable must be assessed in

27  light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S.

28  1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4

(declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

### XXIII.   CLAIM 23:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER AND SODOMY OF MICHAEL JOSEPH INDERBIETEN (COUNTS 10 & 11), AND SUBSTANTIAL EVIDENCE SUPPORTS THOSE CONVICTIONS

In Claim 23, Kraft alleges that his constitutional rights were violated because the trial court denied Kraft's severance motion and admitted the death list (trial exhibit no. 165), the trial court refused to give Kraft's pinpoint instruction, *modus operandi* evidence was introduced and the jury was instructed as to *modus operandi*, and the evidence is insufficient as to counts 10 and 11.  (FAP at 276-286.)  The allegations in section B.2 regarding the ineffective assistance of counsel as to the pinpoint instruction proffer were dismissed pursuant to the Joint Statement at page 13 and April 24, 2009 Order at pages 24-25.  The California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036, 1053-1055, 1058-1065.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 23, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issue underlying the claim on the merits. *People v. Kraft*, 23 Cal.4th at 1010-1011, 1029-1036, 1053-1055, 1058-1065. That court's implied and express factual findings are entitled to a presumption of correctness and to deference. § 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 109-110 (1995). Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief. Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court. *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible. Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## XXIV.   CLAIM 24: KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF DONALD HAROLD CRISEL (COUNT 12), AND SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION

In Claim 24, as to Count 12, Kraft alleges that his constitutional rights were violated because the trial court denied Kraft's motion to sever the homicide counts and admitted the death list (trial exhibit no. 165), the trial court refused to give

1   Kraft's pinpoint instruction, *modus operandi* evidence was introduced and the jury

2   was instructed as to *modus operandi*, the evidence is insufficient and allegedly the

3   prosecutor improperly argued in closing that the acetominophen in Crisel's body

4   could have come from the Tylenol III from Kraft's home and used the descriptive

5   phrase that Crisel was "'drunk on medication.'"  (FAP at 286-298.)

6        The allegations in section B.2 regarding the trial court allegedly failing to give

7   Kraft more time to present Andrew Wilhelm's testimony and not letting him

8   present "prospective defense witness Joan," B.3 regarding ineffective assistance of

9   counsel as to the pinpoint instruction proffer, B.5 regarding alleged ineffective

10  assistance of counsel and B.6 regarding alleged prosecutorial misconduct in

11  paragraphs 28 and 29 of the First Amended Petition were dismissed pursuant to the

12  Joint Statement at pages 14-15 and April 24, 2009 Order at pages 8, 24-25.  As to

13  the remainder of the claim, the California Supreme Court denied this claim on the

14  merits.  *People v. Kraft*, 23 Cal.4th at 1054; *In re Randy Steven Kraft on Habeas*

15  *Corpus*, case number S018447, Order filed August 14, 2000.  As a result, Kraft is

16  precluded from obtaining federal habeas relief because the California Supreme

17  Court's denial of this claim is not contrary to any clearly established Supreme

18  Court authority, did not involve an unreasonable application of clearly established

19  Supreme Court authority, and did not involve an unreasonable determination of the

20  facts based on the evidence presented to it within the meaning of § 2254(d).  Even

21  assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege

22  a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

23  federal constitutional claim for relief.

24       As to the factual allegations made in support of Claim 24, including all

25  subclaims, Respondent affirmatively alleges the California Supreme Court

26  adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

27  23 Cal.4th at 1010, 1029-1036, 1053-1054, 1061-1063, 1066; *In re Randy Steven*

28  *Kraft on Habeas Corpus*, case number S018447, Order filed August 14, 2000.  That

1    court's implied and express factual findings are entitled to a presumption of

2    correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v. Keohane*,

3    516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient knowledge to

4    admit or deny, every allegation; alternatively, Respondent denies that the alleged

5    facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to

6    an evidentiary hearing on this claim, including all subclaims, because a proper

7    application of § 2254(d) requires that the claim be adjudicated on the basis of the

8    record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652

9    ("we have made clear that whether a state court's decision is unreasonable must be

10   assessed in light of the record the court had before it"), citing *Yarborough v.*

11   *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

12   697 n.4 (declining to consider evidence not presented to state court in determining

13   whether its decision was contrary to federal law).  Permitting an evidentiary hearing

14   to allow Kraft to more fully develop the factual basis of the claim would render his

15   claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

16   evidentiary hearing should be held because, to the extent that Kraft's claim is not

17   fully factually developed, he failed to exercise "due diligence" within the meaning

18   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

19

20   **XXV.   CLAIM 25: KRAFT WAS PROPERLY CONVICTED OF THE FIRST
         DEGREE MURDER OF ROBERT WYATT LOGGINS, JR. (COUNT 13), AND**

21       **SUBSTANTIAL EVIDENCE SUPPORTS THAT CONVICTION**

22       In Claim 25, as to Count 13, Kraft alleges that his constitutional rights were

23   violated because the trial court denied Kraft's motion to sever the homicide counts

24   and admitted the death list (trial exhibit no. 165), the trial court refused to give

25   Kraft's pinpoint instructions, *modus operandi* evidence was introduced and the jury

26   was instructed as to *modus operandi*, the evidence is insufficient, and the

27   prosecutor allegedly committed misconduct when he argued the drugs discovered in

28   Loggins' body could have come from Kraft's home and argued that the

86

1   photographs of Loggins found in Kraft's possession may not have been taken on

2   the day of Loggins' death.  (FAP at 298-324.)

3        The allegations in B.1 predicated on the loss of evidence, B.3 and B.5

4   regarding alleged ineffective assistance of counsel as to the pinpoint instructions

5   proffer, B.6 except for paragraph 35, B.7 except paragraphs 41 and 42, and B.8

6   were dismissed pursuant to the Joint Statement at pages 15-16 and the April 24,

7   2009 Order at pages 8-9, 24-25.  As to the remainder of the claim, the California

8   Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at

9   1029-1037, 1040-1050, 1053-1054, 1057-1058, 1061-1066; *In re Randy Steven*

10  *Kraft on Habeas Corpus*, case number S015614, Order filed August 14, 2000.  As a

11  result, Kraft is precluded from obtaining federal habeas relief because the

12  California Supreme Court's denial of this claim is not contrary to any clearly

13  established Supreme Court authority, did not involve an unreasonable application

14  of clearly established Supreme Court authority, and did not involve an unreasonable

15  determination of the facts based on the evidence presented to it within the meaning

16  of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the

17  claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to

18  allege a prima facie federal constitutional claim for relief.

19       As to the factual allegations made in support of Claim 25, including all

20  subclaims, Respondent affirmatively alleges the California Supreme Court

21  adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

22  23 Cal.4th at 1008-1009, 1029-1037, 1040-1050, 1053-1054, 1057-1058, 1061-

23  1066; *In re Randy Steven Kraft on Habeas Corpus*, case number S015614, Order

24  filed August 14, 2000.  That court's implied and express factual findings are

25  entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1);

26  *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient

27  knowledge to admit or deny, every allegation; alternatively, Respondent denies that

28  the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

1  entitled to an evidentiary hearing on this claim, including all subclaims, because a

2  proper application of § 2254(d) requires that the claim be adjudicated on the basis

3  of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

4  652 ("we have made clear that whether a state court's decision is unreasonable must

5  be assessed in light of the record the court had before it"), citing *Yarborough v.*

6  *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

7  697 n.4 (declining to consider evidence not presented to state court in determining

8  whether its decision was contrary to federal law).  Permitting an evidentiary hearing

9  to allow Kraft to more fully develop the factual basis of the claim would render his

10  claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

11  evidentiary hearing should be held because, to the extent that Kraft's claim is not

12  fully factually developed, he failed to exercise "due diligence" within the meaning

13  of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

14

15  **XXVI.   CLAIM 26:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST**

16  **DEGREE MURDER OF ERIC HERBERT CHURCH (COUNT 14), AND SUBSTANTIAL EVIDENCE SUPPORTS THE CONVICTION**

17      In Claim 26, Kraft alleges that his constitutional rights were violated because

18  the trial court denied Kraft's motion to sever the homocide counts and admitted into

19  evidence the death list (trial exhibit no. 165), *modus operandi* evidence was

20  introduced, and the evidence is insufficient as to Count 14.  (FAP at 324-329.)

21      The California Supreme Court denied this claim on the merits.  *People v.*

22  *Kraft*, 23 Cal.4th at 1029-1036, 1061-1062.  As a result, Kraft is precluded from

23  obtaining federal habeas relief because the California Supreme Court's denial of

24  this claim is not contrary to any clearly established Supreme Court authority, did

25  not involve an unreasonable application of clearly established Supreme Court

26  authority, and did not involve an unreasonable determination of the facts based on

27  the evidence presented to it within the meaning of § 2254(d).  Even assuming

28  arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a

1  cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

2  federal constitutional claim for relief.

3        As to the factual allegations made in support of Claim 26, including all

4  subclaims, Respondent affirmatively alleges the California Supreme Court

5  adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

6  23 Cal.4th at 1007-1008, 1029-1036, 1061-1062.  That court's implied and express

7  factual findings are entitled to a presumption of correctness and to deference.

8  §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent

9  denies, or lacks sufficient knowledge to admit or deny, every allegation;

10 alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to

11 federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this

12 claim, including all subclaims, because a proper application of § 2254(d) requires

13 that the claim be adjudicated on the basis of the record before the California

14 Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that

15 whether a state court's decision is unreasonable must be assessed in light of the

16 record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el*

17 *v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to

18 consider evidence not presented to state court in determining whether its decision

19 was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to

20 more fully develop the factual basis of the claim would render his claim

21 unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

22 evidentiary hearing should be held because, to the extent that Kraft's claim is not

23 fully factually developed, he failed to exercise "due diligence" within the meaning

24 of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

25 ///

26 ///

27 ///

28

1

2

**XXVII.  CLAIM 27:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF GEOFFREY ALAN NELSON (COUNT 16), AND SUBSTANTIAL EVIDENCE SUPPORTS THE CONVICTION**

3

4

5

6

7

In Claim 27, Kraft alleges that his constitutional rights were violated because the trial court denied Kraft's motion to sever the homicide counts and admitted the death list (trial exhibit no. 165), refused to give Kraft's pinpoint instructions, *modus operandi* evidence was introduced and the jury was instructed as to *modus operandi*, and the evidence is insufficient as to Count 16.  (FAP at 329-341.)

8

9

10

11

12

13

14

15

16

17

18

19

20

The allegations in B.2 concerning alleged ineffective assistance of counsel as to the pinpoint instructions proffer were dismissed pursuant to the Joint Statement at pages 16-17 and April 24, 2009 Order at pages 24-25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036, 1058, 1061-1063, 1066.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

21

22

23

24

25

26

27

28

As to the factual allegations made in support of Claim 27, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1004-1005, 1029-1036, 1058, 1061-1063, 1066.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110. Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle

Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## XXVIII.    CLAIM 28:  KRAFT WAS PROPERLY CONVICTED OF THE FIRST DEGREE MURDER OF RODGER JAMES DEVAUL, JR. (COUNT 18), AND SUBSTANTIAL EVIDENCE SUPPORTS THE CONVICTION

In Claim 28, Kraft alleges that his constitutional rights were violated because the trial court denied Kraft's motion to sever the homicide counts and admitted the death list (trial exhibit no. 165), Kraft was unable to testify as to Counts 17 and 18 without testifying as to the other counts in the information, the trial court refused to give Kraft's pinpoint instructions, *modus operandi* evidence was introduced and the jury was instructed as to *modus operandi*, and the evidence is insufficient as to Count 18.  (FAP at 341-354.)

The allegations in B.4 concerning alleged ineffective assistance of counsel as to the pinpoint instructions proffer were dismissed pursuant to the Joint Statement at page 17 and April 24, 2009 Order at pages 24-25.  As to the remainder of the claim, the California Supreme Court denied this claim on the merits.  *People v.*

*Kraft*, 23 Cal.4th at 1029-1036, 1061-1063, 1066.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 28, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1005-1007, 1029-1036, 1061-1063, 1066.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

1  evidentiary hearing should be held because, to the extent that Kraft's claim is not

2  fully factually developed, he failed to exercise "due diligence" within the meaning

3  of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

4

5  **XXIX.    CLAIM 29: KRAFT WAS PROPERLY CONVICTED OF THE FIRST**

6  **DEGREE MURDER OF TERRY LEE GAMBREL (COUNT 19), AND SUBSTANTIAL EVIDENCE SUPPORTS THE CONVICTION**

7      In Claim 29, Kraft alleges that his constitutional rights were violated because

8  the trial court denied Kraft's motion to sever the homicide counts and admitted the

9  death list (trial exhibit no. 165), Kraft was unable to testify as to Count 19 without

10  testifying as to the other counts in the information, the trial court refused to give

11  Kraft's pinpoint instructions, *modus operandi* evidence was introduced and the jury

12  was instructed as to *modus operandi*, and the evidence is insufficient as to

13  Count 19. (FAP at 354-364.)

14      The allegations in section B.4 concerning alleged ineffective assistance of

15  counsel as to the pinpoint instructions proffer were dismissed pursuant to the Joint

16  Statement at page 18 and April 24, 2009 Order at pages 24-25. As to the remainder

17  of the claim, the California Supreme Court denied this claim on the merits. *People*

18  *v. Kraft*, 23 Cal.4th at 1029-1051, 1061-1063, 1066. As a result, Kraft is precluded

19  from obtaining federal habeas relief because the California Supreme Court's denial

20  of this claim is not contrary to any clearly established Supreme Court authority, did

21  not involve an unreasonable application of clearly established Supreme Court

22  authority, and did not involve an unreasonable determination of the facts based on

23  the evidence presented to it within the meaning of § 2254(d). Even assuming

24  arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a

25  cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

26  federal constitutional claim for relief.

27      As to the factual allegations made in support of Claim 28, including all

28  subclaims, Respondent affirmatively alleges the California Supreme Court

93

adjudicated the factual issues underlying the claim on the merits. *People v. Kraft*, 23 Cal.4th at 1003-1004, 1029-1051, 1061-1063, 1066. That court's implied and express factual findings are entitled to a presumption of correctness and to deference. §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110. Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief. Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis of the record before the California Supreme Court. *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible. Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## XXX. CLAIM 30: CALIFORNIA'S DEATH PENALTY LAW IS CONSTITUTIONAL

In Claim 30, Kraft alleges that his constitutional rights were violated because California's death penalty sentencing statute (1) does not fulfill the required narrowing function, (2) allows prosecutors "unbound discretion" in determining whom to charge with capital murder, (3) does not provide guidance to jurys in determining punishment, (4) fails to define which factors are mitigating and which are aggravating and allows prosecutors to argue the lack of mitigating factors is an

1    aggravating factor, (5) allows double-counting the circumstances of the crime as an

2    aggravating factor, (6) allows the jury to consider criminal conduct without a

3    unanimous jury finding of true beyond a reasonable doubt, (7) does not require the

4    aggravating factors to outweigh the mitigating factors by proof beyond a reasonable

5    doubt, (8) limits mitigating evidence, (9) does not require written findings, and (10)

6    precludes intercase or intracase proportionality review.  (FAP at 364-405.)

7        The California Supreme Court denied this claim on the merits.  *People v.*

8    *Kraft*, 23 Cal.4th 978.  As a result, Kraft is precluded from obtaining federal habeas

9    relief because the California Supreme Court's denial of this claim is not contrary to

10   any clearly established Supreme Court authority, did not involve an unreasonable

11   application of clearly established Supreme Court authority, and did not involve an

12   unreasonable determination of the facts based on the evidence presented to it within

13   the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo*

14   review, the claim fails to allege a cognizable claim in a federal habeas proceeding,

15   or fails to allege a prima facie federal constitutional claim for relief.

16       As to the factual allegations made in support of Claim 30, including all

17   subclaims, Respondent affirmatively alleges the California Supreme Court

18   adjudicated the factual issue underlying the claim on the merits.  *People v. Kraft*,

19   23 Cal.4th 978.  That court's implied and express factual findings are entitled to a

20   presumption of correctness and to deference.  § 2254(d)(2) & (e)(1); *Thompson v.*

21   *Keohane*, 516 U.S. 99, 109-110 (1995).  Respondent denies, or lacks sufficient

22   knowledge to admit or deny, every allegation; alternatively, Respondent denies that

23   the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

24   entitled to an evidentiary hearing on this claim, including all subclaims, because a

25   proper application of § 2254(d) requires that the claim be adjudicated on the basis

26   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

27   652 ("we have made clear that whether a state court's decision is unreasonable must

28   be assessed in light of the record the court had before it"), citing *Yarborough v.*

1   *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

2   697 n.4 (declining to consider evidence not presented to state court in determining

3   whether its decision was contrary to federal law).  Permitting an evidentiary hearing

4   to allow Kraft to more fully develop the factual basis of the claim would render his

5   claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

6   evidentiary hearing should be held because, to the extent that Kraft's claim is not

7   fully factually developed, he failed to exercise "due diligence" within the meaning

8   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

9

10   **XXXI.      CLAIM 31:  KRAFT RECEIVED ADEQUATE ASSISTANCE OF
              COUNSEL IN THE GUILT PHASE**

11

12       In Claim 31, Kraft asserts his constitutional rights were violated because

13   counsel rendered ineffective assistance in the guilt phase.  (FAP at 405-414.)  The

14   allegations in sections A.4 and A.5 were withdrawn by Kraft as unauthorized

15   (Doc. 111), and sections B.9 and B.11 were withdrawn in the Superseding Joint

16   Statement at page 22.  The allegations in sections B.1, B.2, B.5, B.6, B.7, and B.8

17   regarding pinpoint instructions, and B.10 were dismissed pursuant to the Joint

18   Statement at pages 21-22 and April 24, 2009 Order at pages 24-25.

19       The California Supreme Court denied this claim on the merits.  *People v.*

20   *Kraft*, 23 Cal.4th at 1061-1066; *In re Randy Steven Kraft*, case number S094682,

21   Order filed July 17, 2002.  As a result, Kraft is precluded from obtaining federal

22   habeas relief because the California Supreme Court's denial of this claim is not

23   contrary to any clearly established Supreme Court authority, did not involve an

24   unreasonable application of clearly established Supreme Court authority, and did

25   not involve an unreasonable determination of the facts based on the evidence

26   presented to it within the meaning of § 2254(d).  Even assuming arguendo that

27   Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a \

28   ///

1  federal habeas proceeding, or fails to allege a prima facie federal constitutional

2  claim for relief.

3       As to the factual allegations made in support of Claim 31, including all

4  subclaims, Respondent affirmatively alleges the California Supreme Court

5  adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

6  23 Cal.4th at 1061-1066, *In re Randy Steven Kraft*, case number S094682, Order

7  filed July 17, 2002.  That court's implied and express factual findings are entitled to

8  a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1); *Thompson*

9  *v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient knowledge

10  to admit or deny, every allegation; alternatively, Respondent denies that the alleged

11  facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to

12  an evidentiary hearing on this claim, including all subclaims, because a proper

13  application of § 2254(d) requires that the claim be adjudicated on the basis of the

14  record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652

15  ("we have made clear that whether a state court's decision is unreasonable must be

16  assessed in light of the record the court had before it"), citing *Yarborough v.*

17  *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

18  697 n.4 (declining to consider evidence not presented to state court in determining

19  whether its decision was contrary to federal law).  Permitting an evidentiary hearing

20  to allow Kraft to more fully develop the factual basis of the claim would render his

21  claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

22  evidentiary hearing should be held because, to the extent that Kraft's claim is not

23  fully factually developed, he failed to exercise "due diligence" within the meaning

24  of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

25

26  **XXXII.**     **CLAIM 32:  THERE WAS NO MISCONDUCT BY THE PROSECUTOR**

27       In Claim 32, Kraft alleges his constitutional rights were violated based on a

28  claim the prosecutor committed misconduct.  (FAP at 414-426.)  The allegations in

1    sections B.1, B.2, B.3, and B.6 regarding the claim of misconduct by the prosector

2    for allegedly "testifying" about the meaning of Exhibit 165, and B.9, B.10, and

3    B.12 were dismissed pursuant to the Joint Statement at pages 21-22 and April 24,

4    2009 Order at pages 9-12, 24-25.

5         The California Supreme Court denied this claim on the merits.  *People v.*

6    *Kraft*, 23 Cal.4th at 1029-1036, 1053-1066, 1076-1078; *In re Randy Steven Kraft*,

7    case nos. S015614, S016342, S017126, S014772, S018447.  As a result, Kraft is

8    precluded from obtaining federal habeas relief because the California Supreme

9    Court's denial of this claim is not contrary to any clearly established Supreme

10   Court authority, did not involve an unreasonable application of clearly established

11   Supreme Court authority, and did not involve an unreasonable determination of the

12   facts based on the evidence presented to it within the meaning of § 2254(d).  Even

13   assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege

14   a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

15   federal constitutional claim for relief.

16        As to the factual allegations made in support of Claim 32, including all

17   subclaims, Respondent affirmatively alleges the California Supreme Court

18   adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

19   23 Cal.4th at 1029-1036, 1053-1066, 1076-1078; *In re Randy Steven Kraft*, case

20   nos. S015614, S016342, S017126, S014772, S018447, Orders filed August 14,

21   2000, and July 17, 2002.  That court's implied and express factual findings are

22   entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1);

23   *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient

24   knowledge to admit or deny, every allegation; alternatively, Respondent denies that

25   the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

26   entitled to an evidentiary hearing on this claim, including all subclaims, because a

27   proper application of § 2254(d) requires that the claim be adjudicated on the basis

28   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

652 ("we have made clear that whether a state court's decision is unreasonable must be assessed in light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to more fully develop the factual basis of the claim would render his claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no evidentiary hearing should be held because, to the extent that Kraft's claim is not fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

## XXXIII.   CLAIM 33:  THE JURY INSTRUCTIONS WERE PROPERLY GIVEN AND CONSTITUTIONAL

In Claim 33, Kraft asserts his constitutional rights were violated because the jury instructions were erroneous and unconstistutional as to *modus operandi*, and the trial court improperly refused to give: (1) the pinpoint instructions proposed by Kraft (2) instructions on aiding and abetting, accessory after the fact, and related lesser offenses, (3) instructions on the requirements of the 1977 death penalty statute regarding Counts 6, 7, 8 and 9, (4) instructions that an aider and abetter must intend to kill or intend to aid another to kill before any special circumstance applies, and (6) instructions requiring the jury was required to find a *corpus delicti* for each crime before considering Exhibit 165 (the death list).  (FAP at 427-445.)

The California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036, 1061-1066, 1071-1072, 1074-1079.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable

1    determination of the facts based on the evidence presented to it within the meaning

2    of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the

3    claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to

4    allege a prima facie federal constitutional claim for relief.

5        As to the factual allegations made in support of Claim 33, including all

6    subclaims, Respondent affirmatively alleges the California Supreme Court

7    adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

8    23 Cal.4th at 1029-1036, 1061-1066, 1071-1072, 1074-1079.  That court's implied

9    and express factual findings are entitled to a presumption of correctness and to

10   deference.  §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110.

11   Respondent denies, or lacks sufficient knowledge to admit or deny, every

12   allegation; alternatively, Respondent denies that the alleged facts, if true, entitle

13   Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary

14   hearing on this claim, including all subclaims, because a proper application of

15   § 2254(d) requires that the claim be adjudicated on the basis of the record before

16   the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have

17   made clear that whether a state court's decision is unreasonable must be assessed in

18   light of the record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S.

19   1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4

20   (declining to consider evidence not presented to state court in determining whether

21   its decision was contrary to federal law).  Permitting an evidentiary hearing to allow

22   Kraft to more fully develop the factual basis of the claim would render his claim

23   unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

24   evidentiary hearing should be held because, to the extent that Kraft's claim is not

25   fully factually developed, he failed to exercise "due diligence" within the meaning

26   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

27   ///

28   ///

**XXXIV.    CLAIM 34:  KRAFT RECEIVED ADEQUATE PROCESS, EQUAL PROTECTION, A FUNDAMENTALLY FAIR TRIAL, AND THE TRIAL COURT PROPERLY ADMITTED EXHIBIT 1058B INTO EVIDENCE**

In Claim 34, Kraft contends his constitutional rights were violated because the trial court admitted into evidence in the penalty phase, Exhibit 1058B, an expanded version of Exhibit 165 (the death list).  (FAP at 445-453.)  The California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036, 1053-1066, 1076-1078; *In re Randy Steven Kraft*, case nos. S015614, S016342, S017126, S014772, S018447, Orders filed August 14, 2000, and July 17, 2002.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 34, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1029-1036, 1053-1066, 1076-1078; *In re Randy Steven Kraft*, case nos. S015614, S016342, S017126, S014772, S018447, Orders filed August 14, 2000, and July 17, 2002.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient knowledge to admit or deny, every allegation; alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this claim, including all subclaims, because a proper application of § 2254(d) requires that the claim be adjudicated on the basis

1   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

2   652 ("we have made clear that whether a state court's decision is unreasonable must

3   be assessed in light of the record the court had before it"), citing *Yarborough v.*

4   *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

5   697 n.4 (declining to consider evidence not presented to state court in determining

6   whether its decision was contrary to federal law).  Permitting an evidentiary hearing

7   to allow Kraft to more fully develop the factual basis of the claim would render his

8   claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

9   evidentiary hearing should be held because, to the extent that Kraft's claim is not

10  fully factually developed, he failed to exercise "due diligence" within the meaning

11  of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

12

13  **XXXV.    CLAIM 35:  KRAFT RECEIVED A CONSTITUTIONALLY SOUND**
     **TRIAL AND THE DEATH PENALTY WAS APPROPRIATELY IMPOSED FOR**
14   **KRAFT'S CRIMES**

15       In Claim 35, Kraft complains his constitutional rights were violated because in

16  the penalty phase the jury was allowed to receive evidence and consider

17  unadjudicated crimes committed by Kraft in deciding whether Kraft deserved the

18  death penalty, the evidence was insufficient to support any of the previously

19  unadjudicated crimes, the jury was allowed to consider the sodomy special

20  circumstance for which it aquitted Kraft, and the death penalty sentence is

21  constitutionally unreliable.  (FAP at 453-462.)  The allegations in section B.4,

22  except regarding John Doe Oregon, and in section B.6 were dismissed in the Joint

23  Statement at pages 24-25 and April 24, 2009 order at pages 24-25.

24       The California Supreme Court denied this claim on the merits.  *People v.*

25  *Kraft*, 23 Cal.4th at 1029-1036, 1053-1066, 1076-1078; *In re Randy Steven Kraft*,

26  case nos. S015614, S016342, S017126, S014772, S018447, Orders filed August 14,

27  2000, and July 17, 2002.  As a result, Kraft is precluded from obtaining federal

28  habeas relief because the California Supreme Court's denial of this claim is not

1   contrary to any clearly established Supreme Court authority, did not involve an

2   unreasonable application of clearly established Supreme Court authority, and did

3   not involve an unreasonable determination of the facts based on the evidence

4   presented to it within the meaning of § 2254(d).  Even assuming arguendo that

5   Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a

6   federal habeas proceeding, or fails to allege a prima facie federal constitutional

7   claim for relief.

8       As to the factual allegations made in support of Claim 35, including all

9   subclaims, Respondent affirmatively alleges the California Supreme Court

10  adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

11  23 Cal.4th at 1029-1036, 1053-1066, 1076-1078; *In re Randy Steven Kraft*, case

12  nos. S015614, S016342, S017126, S014772, S018447, Orders filed August 14,

13  2000, and July 17, 2002.  That court's implied and express factual findings are

14  entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1);

15  *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient

16  knowledge to admit or deny, every allegation; alternatively, Respondent denies that

17  the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

18  entitled to an evidentiary hearing on this claim, including all subclaims, because a

19  proper application of § 2254(d) requires that the claim be adjudicated on the basis

20  of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

21  652 ("we have made clear that whether a state court's decision is unreasonable must

22  be assessed in light of the record the court had before it"), citing *Yarborough v.*

23  *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

24  697 n.4 (declining to consider evidence not presented to state court in determining

25  whether its decision was contrary to federal law).  Permitting an evidentiary hearing

26  to allow Kraft to more fully develop the factual basis of the claim would render his

27  claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

28  evidentiary hearing should be held because, to the extent that Kraft's claim is not

fully factually developed, he failed to exercise "due diligence" within the meaning of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

### XXXVI.    CLAIM 36:  KRAFT RECEIVED ADEQUATE PROCESS, EQUAL PROTECTION, AND A FUNDAMENTALLY FAIR PENALTY PHASE TRIAL

In Claim 36, Kraft alleges his constitutional rights were violated because the trial court refused to allow Kraft to introduce the testimony of Rabbi Beerman as to the tenets of the Jewish religion and defense investigator Johanna Ramsay regarding Kraft's post-arrest writings and art work.  (FAP at 463-473.)  The allegations in section B.2, B.3, and B.4 were withdrawn (Doc. 111) and section B.5 was dismissed pursuant to the Joint Statement at page 25 and April 24, 2009 Order at pages 24-25.

The California Supreme Court denied this claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1072-1074.  As a result, Kraft is precluded from obtaining federal habeas relief because the California Supreme Court's denial of this claim is not contrary to any clearly established Supreme Court authority, did not involve an unreasonable application of clearly established Supreme Court authority, and did not involve an unreasonable determination of the facts based on the evidence presented to it within the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a federal habeas proceeding, or fails to allege a prima facie federal constitutional claim for relief.

As to the factual allegations made in support of Claim 36, including all subclaims, Respondent affirmatively alleges the California Supreme Court adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*, 23 Cal.4th at 1072-1074.  That court's implied and express factual findings are entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient

1   knowledge to admit or deny, every allegation; alternatively, Respondent denies that

2   the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

3   entitled to an evidentiary hearing on this claim, including all subclaims, because a

4   proper application of § 2254(d) requires that the claim be adjudicated on the basis

5   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

6   652 ("we have made clear that whether a state court's decision is unreasonable must

7   be assessed in light of the record the court had before it"), citing *Yarborough v.*

8   *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

9   697 n.4 (declining to consider evidence not presented to state court in determining

10   whether its decision was contrary to federal law).  Permitting an evidentiary hearing

11   to allow Kraft to more fully develop the factual basis of the claim would render his

12   claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

13   evidentiary hearing should be held because, to the extent that Kraft's claim is not

14   fully factually developed, he failed to exercise "due diligence" within the meaning

15   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

16

17   **XXXVII.   CLAIM 37: KRAFT RECEIVED CONSTITUTIONALLY EFFECTIVE**
18           **ASSISTANCE OF COUNSEL DURING THE PENALTY PHASE**

19      In Claim 37, Kraft contends his constitutional rights were violated in the

20   penalty phase because of the continuing effect of alleged ineffectiveness from the

21   guilt phase and counsel allegedly failed to ensure a fair and impartial jury.  (FAP at

22   473-477.)  The allegations in sections B.2, B.6 and B.7 were withdrawn (Doc. 111)

23   and sections B.3 except those regarding juror Jim L., B.4 and B.5 were dismissed

24   purusant to the Joint Statement at pages 25-26 and April 24, 2009 at pages 24-26.

25      The California Supreme Court denied this claim on the merits.  *People v.*

26   *Kraft*, 23 Cal.4th 978.  As a result, Kraft is precluded from obtaining federal habeas

27   relief because the California Supreme Court's denial of this claim is not contrary to

28   any clearly established Supreme Court authority, did not involve an unreasonable

1    application of clearly established Supreme Court authority, and did not involve an

2    unreasonable determination of the facts based on the evidence presented to it within

3    the meaning of § 2254(d).  Even assuming arguendo that Kraft is entitled to *de novo*

4    review, the claim fails to allege a cognizable claim in a federal habeas proceeding,

5    or fails to allege a prima facie federal constitutional claim for relief.

6          As to the factual allegations made in support of Claim 37, including all

7    subclaims, Respondent affirmatively alleges the California Supreme Court

8    adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

9    23 Cal.4th 978.  That court's implied and express factual findings are entitled to a

10    presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1); *Thompson v.*

11    *Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient knowledge

12    to admit or deny, every allegation; alternatively, Respondent denies that the alleged

13    facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not entitled to

14    an evidentiary hearing on this claim, including all subclaims, because a proper

15    application of § 2254(d) requires that the claim be adjudicated on the basis of the

16    record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652

17    ("we have made clear that whether a state court's decision is unreasonable must be

18    assessed in light of the record the court had before it"), citing *Yarborough v.*

19    *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

20    697 n.4 (declining to consider evidence not presented to state court in determining

21    whether its decision was contrary to federal law).  Permitting an evidentiary hearing

22    to allow Kraft to more fully develop the factual basis of the claim would render his

23    claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

24    evidentiary hearing should be held because, to the extent that Kraft's claim is not

25    fully factually developed, he failed to exercise "due diligence" within the meaning

26    of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

27    ///

28    ///

1    **XXXVIII.   CLAIM 38:  THERE WAS NO PROSECUTORIAL MISCONDUCT**

2         In Claim 38, Kraft avers his constitutional rights were violated in the penalty

3    phase because the prosecutor's argument turned a mitigating factor into an

4    aggravating factor.  (FAP at 477-481.)  The allegations in sections B.1 that the

5    prosecutor allegedly called Kraft a terrorist, B.2 and B.3 were dismissed in the Joint

6    Statement at pages 26-27 and April 24, 2009 Order at pages 12-13, 24-25.

7         The California Supreme Court denied this claim on the merits.  *People v.*

8    *Kraft*, 23 Cal.4th at 1076-1078.  As a result, Kraft is precluded from obtaining

9    federal habeas relief because the California Supreme Court's denial of this claim is

10   not contrary to any clearly established Supreme Court authority, did not involve an

11   unreasonable application of clearly established Supreme Court authority, and did

12   not involve an unreasonable determination of the facts based on the evidence

13   presented to it within the meaning of § 2254(d).  Even assuming arguendo that

14   Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a

15   federal habeas proceeding, or fails to allege a prima facie federal constitutional

16   claim for relief.

17        As to the factual allegations made in support of Claim 38, including all

18   subclaims, Respondent affirmatively alleges the California Supreme Court

19   adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

20   23 Cal.4th at 1076-1078.  That court's implied and express factual findings are

21   entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1);

22   *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient

23   knowledge to admit or deny, every allegation; alternatively, Respondent denies that

24   the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

25   entitled to an evidentiary hearing on this claim, including all subclaims, because a

26   proper application of § 2254(d) requires that the claim be adjudicated on the basis

27   of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

28   652 ("we have made clear that whether a state court's decision is unreasonable must

107

1    be assessed in light of the record the court had before it"), citing *Yarborough v.*

2    *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

3    697 n.4 (declining to consider evidence not presented to state court in determining

4    whether its decision was contrary to federal law).  Permitting an evidentiary hearing

5    to allow Kraft to more fully develop the factual basis of the claim would render his

6    claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

7    evidentiary hearing should be held because, to the extent that Kraft's claim is not

8    fully factually developed, he failed to exercise "due diligence" within the meaning

9    of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

10

11    **XXXIX.    CLAIM 39:  THE JURY WAS PROPERLY INSTRUCTED IN THE**

12    **PENALTY PHASE**

13        In Claim 39, Kraft contends his constitutional rights were violated in the

14    penalty phase because the jury received instructions regarding *modus operandi* and

15    CALJIC No. 8.85, and the jury was not instructed that it must unanimously find any

16    unadjudicated crimes true beyond a reasonable doubt before they could be

17    considered as aggravating factors, and that the aggravating factors must outweigh

18    mitigating factors by the standard of proof beyond a reasonable doubt.  (FAP at

19    481-497.)  The allegations in B.6 and B.7 were dismissed pursuant to the Joint

20    Statement at pages 27-28 and the April 24, 2009 Order at pages 13, 24-25.

21        The California Supreme Court denied this claim on the merits.  *People v.*

22    *Kraft*, 23 Cal.4th at 1077-1079.  As a result, Kraft is precluded from obtaining

23    federal habeas relief because the California Supreme Court's denial of this claim is

24    not contrary to any clearly established Supreme Court authority, did not involve an

25    unreasonable application of clearly established Supreme Court authority, and did

26    not involve an unreasonable determination of the facts based on the evidence

27    presented to it within the meaning of § 2254(d).  Even assuming arguendo that

28    Kraft is entitled to *de novo* review, the claim fails to allege a cognizable claim in a

1   federal habeas proceeding, or fails to allege a prima facie federal constitutional

2   claim for relief.

3        As to the factual allegations made in support of Claim 39, including all

4   subclaims, Respondent affirmatively alleges the California Supreme Court

5   adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

6   23 Cal.4th at 1029-1036, 1053-1066, 1076-1078; *In re Randy Steven Kraft*, case

7   nos. S015614, S016342, S017126, S014772, S018447, Orders filed August 14,

8   2000, and July 17, 2002.  That court's implied and express factual findings are

9   entitled to a presumption of correctness and to deference.  §§ 2254(d)(2) & (e)(1);

10  *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent denies, or lacks sufficient

11  knowledge to admit or deny, every allegation; alternatively, Respondent denies that

12  the alleged facts, if true, entitle Kraft to federal habeas relief.  Further, Kraft is not

13  entitled to an evidentiary hearing on this claim, including all subclaims, because a

14  proper application of § 2254(d) requires that the claim be adjudicated on the basis

15  of the record before the California Supreme Court.  *Holland v. Jackson*, 542 U.S. at

16  652 ("we have made clear that whether a state court's decision is unreasonable must

17  be assessed in light of the record the court had before it"), citing *Yarborough v.*

18  *Gentry*, 540 U.S. 1, *Miller-el v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at

19  697 n.4 (declining to consider evidence not presented to state court in determining

20  whether its decision was contrary to federal law).  Permitting an evidentiary hearing

21  to allow Kraft to more fully develop the factual basis of the claim would render his

22  claim unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

23  evidentiary hearing should be held because, to the extent that Kraft's claim is not

24  fully factually developed, he failed to exercise "due diligence" within the meaning

25  of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

26  ///

27  ///

28  ///

1

2

3

## XL.   CLAIM 40:  KRAFT RECEIVED ADEQUATE PROCESS ON APPEAL CONCERNING APPELLATE COUNSEL, AND THE CALIFORNIA SUPREME COURT PROPERLY DENIED HIS MOTIONS TO REMOVE APPELLATE COUNSEL

4       In Claim 40, Kraft asserts his constitutional rights were violated because

5   appellate counsel allegedly had a conflict because, among other things, Kraft

6   disagreed with appellate counsel's approach, and the California Supreme Court

7   denied his motion to remove appellate counsel.  (FAP at 497-515.)

8       The California Supreme Court denied this claim on the merits.  *People v.*

9   *Kraft*, 23 Cal.4th 978; FAP Ex. 72, California Supreme Court Order filed April 12,

10   2000 denying Kraft's Ex Parte Marsden Motion.  As a result, Kraft is precluded

11   from obtaining federal habeas relief because the California Supreme Court's denial

12   of this claim is not contrary to any clearly established Supreme Court authority, did

13   not involve an unreasonable application of clearly established Supreme Court

14   authority, and did not involve an unreasonable determination of the facts based on

15   the evidence presented to it within the meaning of § 2254(d).  Even assuming

16   arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a

17   cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

18   federal constitutional claim for relief.

19       As to the factual allegations made in support of Claim 40, including all

20   subclaims, Respondent affirmatively alleges the California Supreme Court

21   adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

22   23 Cal.4th 978; FAP Ex. 72, California Supreme Court Order filed April 12, 2000

23   denying Kraft's Ex Parte *Marsden* Motion.  That court's implied and express

24   factual findings are entitled to a presumption of correctness and to deference.

25   §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent

26   denies, or lacks sufficient knowledge to admit or deny, every allegation;

27   alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to

28   federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this

1    claim, including all subclaims, because a proper application of § 2254(d) requires

2    that the claim be adjudicated on the basis of the record before the California

3    Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that

4    whether a state court's decision is unreasonable must be assessed in light of the

5    record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el*

6    *v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to

7    consider evidence not presented to state court in determining whether its decision

8    was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to

9    more fully develop the factual basis of the claim would render his claim

10   unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

11   evidentiary hearing should be held because, to the extent that Kraft's claim is not

12   fully factually developed, he failed to exercise "due diligence" within the meaning

13   of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

14

15   **XLI.   CLAIM 41: KRAFT RECEIVED EFFECTIVE ASSISTANCE OF
        APPELLATE COUNSEL**

16

17       In Claim 41, Kraft contends his constitutional rights were violated because

18   appellate counsel rendered ineffective assistance for allegedly failing to raise

19   specific issues on appeal.  (FAP at 515-553.)  The allegations in claims GG, HH,

20   and II were dismissed pursuant to the April 24, 2009 Order at pages 13-14, 24-25.

21       The California Supreme Court denied this claim on the merits.  *People v.*

22   *Kraft*, 23 Cal.4th 978; FAP Ex. 72, California Supreme Court Order filed April 12,

23   2000 denying Kraft's Ex Parte Marsden Motion.  As a result, Kraft is precluded

24   from obtaining federal habeas relief because the California Supreme Court's denial

25   of this claim is not contrary to any clearly established Supreme Court authority, did

26   not involve an unreasonable application of clearly established Supreme Court

27   authority, and did not involve an unreasonable determination of the facts based on

28   the evidence presented to it within the meaning of § 2254(d).  Even assuming

1   arguendo that Kraft is entitled to *de novo* review, the claim fails to allege a

2   cognizable claim in a federal habeas proceeding, or fails to allege a prima facie

3   federal constitutional claim for relief.

4        As to the factual allegations made in support of Claim 41, including all

5   subclaims, Respondent affirmatively alleges the California Supreme Court

6   adjudicated the factual issues underlying the claim on the merits.  *People v. Kraft*,

7   23 Cal.4th 978; FAP Ex. 72, California Supreme Court Order filed April 12, 2000

8   denying Kraft's Ex Parte *Marsden* Motion.  That court's implied and express

9   factual findings are entitled to a presumption of correctness and to deference.

10  §§ 2254(d)(2) & (e)(1); *Thompson v. Keohane*, 516 U.S. at 109-110.  Respondent

11  denies, or lacks sufficient knowledge to admit or deny, every allegation;

12  alternatively, Respondent denies that the alleged facts, if true, entitle Kraft to

13  federal habeas relief.  Further, Kraft is not entitled to an evidentiary hearing on this

14  claim, including all subclaims, because a proper application of § 2254(d) requires

15  that the claim be adjudicated on the basis of the record before the California

16  Supreme Court.  *Holland v. Jackson*, 542 U.S. at 652 ("we have made clear that

17  whether a state court's decision is unreasonable must be assessed in light of the

18  record the court had before it"), citing *Yarborough v. Gentry*, 540 U.S. 1, *Miller-el*

19  *v. Cockrell*, 537 U.S. at 348, *Bell v. Cone*, 535 U.S. at 697 n.4 (declining to

20  consider evidence not presented to state court in determining whether its decision

21  was contrary to federal law).  Permitting an evidentiary hearing to allow Kraft to

22  more fully develop the factual basis of the claim would render his claim

23  unexhausted, and a sound application of § 2254(d) impossible.  Moreover, no

24  evidentiary hearing should be held because, to the extent that Kraft's claim is not

25  fully factually developed, he failed to exercise "due diligence" within the meaning

26  of § 2254(e), and cannot otherwise meet the stringent requirements of § 2254(e)(2).

27  ///

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons stated above, Respondent respectfully requests that the First Amended Petition for Writ of Habeas Corpus be denied in its entirety and a certificate of appealability be denied in its entirety and no certificate of appealability be issued.

Dated:  July 27, 2009                          Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
ANNE FEATHERMAN FRASER
Deputy Attorney General


  /s/*Adrianne S. Denault*

ADRIANNE S. DENAULT
Deputy Attorney General

*Attorneys for Respondent*

ASD:sm
SD2001XF0001
70194186.doc