SEAN KENNEDY (No. 145632)
Federal Public Defender
BRAD D. LEVENSON (No. 166073)
E-Mail: Brad_Levenson@fd.org
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-2026
Facsimile (213) 894-0081

Attorneys for Petitioner
RANDY STEVEN KRAFT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY STEVEN KRAFT,<br><br>               Petitioner,<br><br>        v.<br><br>R. K. WONG, Warden, California State Prison at San Quentin,<br><br>            Respondent. | NO. CV 01-4623-AG<br><br>**DEATH PENALTY CASE**<br><br>PETITIONER'S TRAVERSE;<br>EXHIBITS 85-86 |

**TABLE OF CONTENTS**

**PAGE**

I.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  GENERAL TRAVERSE TO RESPONDENT'S ANSWER. . . . . . . . . . . . . . 3

III. DENIAL OF AFFIRMATIVE DEFENSES. . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Petitioner Has Alleged Violations of Federal Law for
        Each of His Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   This Court Has Subject Matter Jurisdiction Over Each
        of Petitioner's Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   None of Petitioner's Claims Are Procedurally Defaulted. . . . . . . . . . . 5

        1.   Claims Previously Considered on the Merits by the
            California Supreme Court Are Not Subject to
            Procedural Bars.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.   California's Contemporaneous Objection Bar Does
            Not Bar Federal Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.   California's *Lindley* Bar. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        4.   California's *Lessard* Bar. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        5.   California's Repetitiveness Bars Do Not Preclude
            Federal Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        6.   The *Dixon* Rule Does Not Bar Federal Review. . . . . . . . . . . . . 11

        7.   There Is Cause and Prejudice To Excuse Any Default. . . . . . . 11

    D.   The *Teague* Doctrine Does Not Bar Relief on
        Any of Petitioner's Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    E.   Petitioner Has Not Delayed Presenting Any of His Claims,
        and Respondent Has Not Been Prejudiced by Any
        Alleged Delay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    F.   The Petition Is Not Barred by the One-Year Statute
        of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    G.   California's Successiveness Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    H.   None of the Errors Presented in the Petition Were Harmless. . . . . . . 14

IV.  PETITIONER HAS ESTABLISHED A PRIMA FACIE
    CASE FOR RELIEF ON ALL OF HIS CLAIMS. . . . . . . . . . . . . . . . . . . . 15

i

1

**TABLE OF CONTENTS**

2

**PAGE**

3   A.   Petitioner Can Satisfy the Standards for
         Federal Habeas Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4

5   B.   Petitioner Has Not Made New Allegations in the Petition,
         and Any Allegedly New Allegations May Be Considered
         by This Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6

7   C.   Petitioner Should Be Granted Relief on Claim Two . . . . . . . . . . . . . . 20

8   D.   The California Supreme Court Failed to Address
         Petitioner's Third Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

9   E.   Counsel Was Ineffective for Failing to Request That Juror
         Lytle Be Removed as a Juror (Claim Six). . . . . . . . . . . . . . . . . . . . . 21

10

11  F.   Petitioner's Trial Judge was Impartial (Claim Eight). . . . . . . . . . . . . 26

12  G.   Petitioner's Constitutional Rights Were Violated by the Joinder
         of Numerous Unrelated Homicide Charges in a Single Trial
         (Claim Ten). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

13

14  H.   California's Capital Sentencing Scheme Unconstitutionally
         Fails to Perform  The Constitutionally Mandated
         Narrowing Function (Claim 30). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

15  V.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGE(S)**

*Abdul-Kabir v. Quarterman,*
    550 U.S. 233, 127 S. Ct. 1654, 167 L. Ed. 2d 585 (2007). . . . . . . . . . . . . . .  16

*Adamson v. Ricketts,*
    865 F.2d 1011 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

*Anderson v. Calderon,*
    232 F.3d 1053 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Arnold v. Runnels,*
    421 F.3d 859 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Arredondo v. Ortiz,*
    365 F.3d 778 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Barajas v. Wise,*
    481 F.3d 734 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Barker v. Fleming,*
    423 F.3d 1085 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Bean v. Calderon,*
    163 F.3d 1073 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Bell v. Cone,*
    535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). . . . . . . . .  15, 19, 20

*Bennett v. Mueller,*
    322 F.3d 573 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 11, 14

*Blystone v. Pennsylvania,*
    494 U.S. 299, 110 S. Ct. 1078, 108 L. Ed. 2d 255 (1990). . . . . . . . . . . . . . .  29

*Bradley v. Henry,*
    510 F.3d 1093 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Brengettcy v. Horton,*
    423 F.3d 674 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Brown v. Palmateer,*
    379 F.3d 1089 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Burton v. Johnson,*
    948 F.2d 1150 (10th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Calderon v. U.S. District Ct. (Bean),*
    96 F.3d 1126 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Caldwell v. Mississippi,*
    472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985). . . . . . . . . . . . . . .  6

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES** PAGE(S)

3

4
*California v. Ramos*,
463 U.S. 992, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983). . . . . . . . . . . . . . . 29

5
*Carey v. Musladin*,
549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). . . . . . . . . . . . . . 16, 17

6

7
*Carter  v. Giurbino*,
385 F.3d 1194 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8
*Clark v. Murphy*,
331 F.3d 1062 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

9

10
*Coleman v. Thompson*,
501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). . . . . . . . . . . . . . 10

11
*Comer v. Schriro*,
480 F.3d 960 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

12

13
*Cone v. Bell*,
129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009). . . . . . . . . . . . . . . . . . . . . 6, 9, 10

14
*Correll v. Ryan*,
465 F.3d 1006 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

15

16
*Davis v. Woodford*,
384  F.3d 628 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

17
*Dretke v. Haley*,
541 U.S. 386, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). . . . . . . . . . . . 10, 11

18

19
*Duhaime v. Ducharme*,
200 F.3d 597 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20
*Earp v. Ornoski*,
431 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21

22
*Featherstone v. Estelle*,
948 F.2d 1497 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

23
*Fields v. Woodford*,
309 F.3d 1095 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

24

25
*Furman v. Georgia*,
408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972). . . . . . . . . . . 29, 30, 31

26
*Garlotte v. Fordice*,
515 U.S. 39, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995). . . . . . . . . . . . . . . 13

27

28
*Gonzalez v. Duncan*,
551 F.3d 875 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

iv

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                      **PAGE(S)**

*Gregg v. Georgia,*
  428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). . . . . . . . . . . . . . . . . . 29

*Harris v. Reed,*
  489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989). . . . . . . . . . . . . . . 6

*Himes v. Thompson,*
  336 F.3d 848 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Holland v. Jackson,*
  542 U.S. 649, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004). . . . . . . . . . . . . . 19

*Horton v. Mayle,*
  408 F.3d 570 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Irvin v. Dowd,*
  366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). . . . . . . . . . . . . . . . . 25

*Karis v. Vasquez,*
  828 F. Supp. 1449 (E.D. Cal. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Killian v. Poole,*
  282 F.3d 1204 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kim v. Villalobos,*
  799 F.2d 1317 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*La Crosse v. Kernan,*
  244 F.3d 702 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Labat v. Bennett,*
  365 F.2d 698 (5th Cir. 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lowenfeld v. Phelps,*
  484 U.S. 231, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988). . . . . . . . . . . . . . . . 29

*Miller-El v. Cockrell (Miller-El I),*
  537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). . . . . . . . . . . . 10, 16

*Miller-El v. Dretke,*
  545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005). . . . . . . . . . . . . . 16

*Moore v. Czerniak,*
  __ F.3d __, 2009 WL 2231650 (9th Cir. July 28, 2009). . . . . . . . . . . . . . . 17

*Nunes v. Mueller,*
  350 F.3d 1045 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Opper v. United States,*
  348 U.S. 84, 75 S. Ct. 158, 99 L. Ed. 101 (1954). . . . . . . . . . . . . . . . . . . . 27

1

# TABLE OF AUTHORITIES

2

**FEDERAL CASES** PAGE(S)

3

4

*Osband v. Woodford,*
   290 F.3d 1036 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5

*Panetti v. Quarterman,*
   551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007). . . . . . . . . . 16, 21, 22

6

7

*Pinholster v. Ayers,*
   525 F.3d 742 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

8

*Powell v. Lambert,*
   357 F.3d 871 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

10

*Reynoso v. Giurbino,*
   462 F.3d 1099 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11

*Richter v. Hickman,*
   __ F.3d __, 2009 WL 2425390 (9th Cir. Aug. 10, 2009). . . . . . . . . . . . 16, 25

12

13

*Rideau v. Louisiana,*
   373 U.S. 723, 83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963). . . . . . . . . . . . . . . 25

14

*Roe v. Flores- Ortega,*
   528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). . . . . . . . . . . . . 25

15

16

*Sandoval v. Calderon,*
   241 F.3d 765 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

17

*Sarausad v. Porter,*
   479 F.3d 671 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18

19

*Silva v. Woodford,*
   279 F.3d 825 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

20

*Stankewitz v. Woodford,*
   365 F.3d 706 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21

*Strickland v. Washington,*
   466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). . . . . . . . . . . . . 25, 26

22

23

*Taylor v. Maddox,*
   366 F.3d 992 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

24

*Teague v. Lane,*
   489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). . . . . . . . . . 3, 12, 32

25

*Trest v. Cain,*
   522 U.S. 87, 118 S. Ct. 478, 139 L. Ed. 2d 444 (1997). . . . . . . . . . . . . . . 10

26

27

28

# TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE(S)**

*United States v. Gonzalez,*
    214 F.3d 1109 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*United States v. Lane,*
    474 U.S. 438, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986). . . . . . . . . . . . . . . .  27

*United States v. Lewis,*
    787 F.2d 1318 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Vansickel v. White,*
    166 F.3d 953 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Wainwright v. Sykes,*
    433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). . . . . . . . . . . . . . . . .  11

*Williams v. Taylor,*
    529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). . . . . . . . . . . .  16, 18

*Ylst v. Nunnemaker,*
    501 U.S. 797, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). . . . . . . . . . . . .  6, 10

*Zant v. Stephens,*
    462 U.S. 862, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983). . . . . . . . . . . . .  28, 29

**STATE CASES**

*Cerrone v. People,*
    900 P.2d 45 (Colo. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*In re Dixon,*
    41 Cal. 2d 756, 264 P.2d 513 (1953). . . . . . . . . . . . . . . . . . . . . . . . . .  11, 32

*Hale v. Morgan,*
    22 Cal. 3d 388, 584 P.2d 512, 149 Cal. Rptr. 375 (1978). . . . . . . . . . . . . .  8

*In re Harris,*
    5 Cal. 4th 813, 855 P.2d 391, 21 Cal. Rptr. 2d 373 (1993). . . . . . . . . . . . .  9

*In re Lessard,*
    62 Cal. 2d 497, 399 P.2d 39, 42 Cal. Rptr. 583 (1965). . . . . . . . . . . . . .  9, 32

*In re Lindley,*
    29 Cal. 2d 709, 177 P.2d 918 (1947). . . . . . . . . . . . . . . . . . . . . . . . . .  9, 32

*People v. Bob,*
    29 Cal. 2d 321, 175 P.2d 12 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

*People v. Easley,*
    34 Cal. 3d 858, 671 P.2d 813, 196 Cal. Rptr. 309 (1983). . . . . . . . . . . . .  7, 8

# TABLE OF AUTHORITIES

**STATE CASES**                                                                          **PAGE(S)**

*People v. Frank*,
   38 Cal. 3d 711, 700 P.2d 415, 214 Cal. Rptr. 801 (1985). . . . . . . . . . . . . . 7, 8

*People v. Kraft*,
   23 Cal. 4th 978, 5 P.3d 68, 99 Cal. Rptr. 2d 1 (2000). . . . . . . . . . . . . . 7, 9, 21

*People v. Murtishaw*,
   48 Cal. 3d 1001, 773 P.2d 172, 258 Cal. Rptr. 821 (1989). . . . . . . . . . . . . . 7

*People v. Ramirez*,
   189 Cal. App. 3d 603, 236 Cal. Rptr. 404 (1987). . . . . . . . . . . . . . . . . . . . . 8

*People v. Sturm*,
   37 Cal. 4th 1218, 129 P.3d 10, 39 Cal. Rptr. 3d 799 (2006). . . . . . . . . . . . . 26

*People v. Superior Court (Engert)*,
   31 Cal. 3d 797, 647 P.2d 76, 183 Cal. Rptr. 800 (1982). . . . . . . . . . . . . . . 30

*People v. White*,
   43 Cal. 2d 740, 278 P.2d 9 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Robbins*,
   18 Cal. 4th 770, 959 P.2d 311, 77 Cal. Rptr. 153 (1998). . . . . . . . . . . . . . . 8, 11

*In re S.B.*,
   32 Cal. 4th 1287, 90 P.3d 746, 13 Cal. Rptr. 3d 786 (2004). . . . . . . . . . . . . 8

*In re Waltreus*,
   62 Cal. 2d 218, 397 P.2d 1001, 42 Cal. Rptr. 9 (1965). . . . . . . . . . . . . . . 9, 10

**DOCKETED CASES**

*In re Bittaker (Lawerence)*,
   No. S052371 (Nov. 29, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Cain (Tracy)*,
   No. S067172 (Jun. 28, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Clark (Richard)*, ,
   No. S060797 (Aug. 13, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Crittenden (Steven)*,
   No. S060706 (Aug. 18, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Espinoza (Antonio)*,
   No. S062244 (Feb. 17, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Hamilton (Michael)*,
   No. S040799 (May 6, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

# TABLE OF AUTHORITIES

2

**DOCKETED CASES**                                                                                          **PAGE(S)**

3

4
*In re Hawkins (Jeffrey),*
    No. S065450 (Mar. 9, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

5
*In re Jackson (Noel),*
    No. S070227 (June 3, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

6

7
*In re Johnson (Laverne),*
    No. S077521 (Apr. 14, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

8
*In re Jones (Earl),*
    No. S073227 (Feb. 23, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

9

10
*In re Nicolaus (Robert),*
    No. S060675 (Jan. 17, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

11
*In re Osband (Lance),*
    No. S063051 (Oct. 28, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

12

13
*In re Raley (David),*
    No. S053603 (Aug. 19, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

14
*In re Sanders (Ronald),*
    No. S082022 (Sep. 22, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

15

16
*In re Thomas (Edward),*
    No. S092074 (Nov. 15, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

17
*In re Turner (Melvin),*
    No. S069718 (Dec. 13, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

18

19
*In re Visciotti (John),*
    No. S074291 (Feb. 24, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

20

**FEDERAL STATUTES**

21
28 U.S.C. § 2241(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

22
28 U.S.C. § 2244(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

23
28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

24
Rules Governing § 2254, Rule 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

25

26

**STATE STATUTES**

27
Cal. Pen. Code § 190.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

28

1

# TABLE OF AUTHORITIES

2

**MISCELLANEOUS**                                                                                    **PAGE(S)**

3

Antiterrorism and Effective Death Penalty Act. . . . . . . . . . . . . . . . . . . . . . . . *passim*

4

Randy Hertz & James S. Liebman,
    *Federal Habeas Corpus Practice and Procedure* (5th ed. 2005),
    Vol. 2, § 32.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEAN KENNEDY (No. 145632)
Federal Public Defender
BRAD D. LEVENSON (No. 166073)
E-Mail: Brad_Levenson@fd.org
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-2026
Facsimile  (213) 894-0081

Attorneys for Petitioner
RANDY STEVEN KRAFT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY STEVEN KRAFT, | NO. CV 01-4623-AG |
| Petitioner, | **DEATH PENALTY CASE** |
| v. | PETITIONER'S TRAVERSE; |
| R. K. WONG, Warden, California State Prison at San Quentin, | EXHIBITS 85-86 |
| Respondent. | |

Petitioner Randy Steven Kraft (hereinafter "Petitioner") hereby traverses Respondent's Answer to First Amended Petition for Writ of Habeas Corpus (hereinafter "Answer").  Petitioner alleges as follows:

//

//

1

1

# I.

2

## PROCEDURAL HISTORY

3        On November 30, 1989, Petitioner was sentenced to death in Orange County

4   Superior Court.  Petitioner's conviction became final on March 5, 2001, when the

5   United States Supreme Court denied his petition for writ of certiorari from the

6   California Supreme Court's affirmance of his conviction on direct appeal (S013187).

7        Petitioner filed a petition for writ of habeas corpus in the California Supreme

8   Court on January 25, 2001 (S094682).  That petition was denied on June 17, 2002.

9        On May 23, 2001, Petitioner requested that this Court appoint counsel for

10  federal habeas corpus proceedings.  (Dkt. No. 1.)  On June 1, 2001, the Office of the

11  Federal Public Defender was appointed to represent Petitioner.  (Dkt. No. 5.)

12       On April 17, 2003 and October 23, 2003, this Court granted equitable tolling

13  of the Antiterrorism and Effective Death Penalty Act's ("AEDPA") statute of

14  limitations.  (Dkt. Nos. 21, 26.)

15       Petitioner filed a petition in this Court on January 16, 2004, and a First

16  Amended Petition on January 12, 2005 (hereinafter "the Petition").  (Dkt. Nos. 27-28,

17  78-91.)  At the same time, Petitioner filed a motion to stay the federal proceedings so

18  that he could return to the state court and exhaust certain claims.  Because the parties

19  disputed which of the claims presented in the federal petition were unexhausted, the

20  parties filed a Joint Statement Regarding Exhaustion on April 15, 2005, and

21  November 22, 2005.  (Dkt. Nos. 103, 123.)

22       On April 24, 2009, this Court ruled on which of Petitioner's claims were

23  unexhausted, and denied Petitioner's motion to stay the federal proceedings.  (Dkt.

24  No. 144.)  Respondent filed an Answer to the Petition on July 27, 2009.  (Dkt. No.

25  158.)  This Traverse follows.[1]

26

27       [1] On May 14, 2009, Petitioner filed an exhaustion petition in the California
    Supreme Court (S172964), raising four claims.  As of the date of the filing of this
28  Traverse, that petition is still pending before the court.

2

## II.

## GENERAL TRAVERSE TO RESPONDENT'S ANSWER

Petitioner incorporates by reference his Petition in this case and all other writings filed by Petitioner in this action.

Except as expressly admitted herein and in the Petition, Petitioner specifically refutes each and every denial set forth in Respondent's Answer and realleges each of the denied averments.  Respondent's denial of material factual allegations and the positions of the parties create factual disputes that warrant an evidentiary hearing.

Respondent's Answer does not admit or deny each factual allegation contained in the Petition. When Respondent has failed to make a specific denial of facts, he should be deemed to have admitted the facts alleged to support the claim.  To the extent that Respondent's silence as to specific allegations is construed by the Court as an implicit denial, then a dispute exists over material facts in addition to those disputes specifically addressed in this Traverse, and Petitioner seeks an evidentiary hearing to prove the facts deemed denied.

In his Answer, Respondent specifically admits or denies some, but not all, of Petitioner's allegations of fact.  In some instances, Respondent alleges new facts or makes affirmative assertions of law.  Petitioner reasserts all facts alleged in his Petition and denies each and every allegation of fact set forth in Respondent's Answer.

Each of the claims for relief that Respondent has answered involves questions of federal constitutional law.

None of the claims that Respondent has answered requests this Court to embrace a new rule of law within the meaning of *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

The Federal Rules of Evidence do not preclude proof of any claim that Respondent has answered.

3

1       Each of the claims that Respondent has answered have been exhausted and is

2   not barred in any way from federal court review.  None of the claims in the Petition

3   are procedurally barred because of any failure on the part of Petitioner to timely or

4   appropriately assert such claims before the courts of California.  None of the claims

5   contained in the Petition are barred as untimely under Rule 9 of the Rules Governing

6   § 2254 Cases in the United States District Courts, or any other principle or doctrine

7   established by statute, rule, or case law.

8       None of the errors raised in the Petition were harmless.

9       Petitioner denies each and every defense proffered by Respondent that is based

10   on the AEDPA.

11       Petitioner is entitled to an evidentiary hearing on some of his claims.[2]

12       The Answer does not show legal warrant or authority for the detention of

13   Petitioner.  Neither the facts set forth in Respondent's Answer nor other facts not

14   stated therein legally warrant Petitioner's restraint.

15

16   **III.**

17   **DENIAL OF AFFIRMATIVE DEFENSES**

18   **A.   Petitioner Has Alleged Violations of Federal Law for Each of His Claims**

19       Respondent's blanket statement that none of Petitioner's claims allege a

20   violation of federal law (Answer at 47-48) is insufficient to meet his burden of

21   pleading this affirmative defense with respect to any claim, and it is therefore waived.

22       To the extent that this Court might find that Respondent has not waived this

23   affirmative defense, each and every claim in the Petition alleges a violation "of the

24   Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3),

25   2254(a).  Because Petitioner adequately explained in the Petition the federal

26   constitutional grounds for relief for each claim raised, he does not reiterate those

27

28       [2] Subsequent to the filing of this Traverse, Petitioner will move for an evidentiary hearing on some of the claims raised in his Petition.

1   contentions with greater specificity here.  To the extent that this Court might find that

2   a claim alleges a violation of state law, the violation constituted an arbitrary

3   deprivation of an important right and violated Petitioner's federal rights to due

4   process and equal protection.  *See, e.g.*, *Vansickel v. White*, 166 F.3d 953, 956-57

5   (9th Cir. 1999).

6   **B.     This Court Has Subject Matter Jurisdiction Over Each of Petitioner's**

7   **Claims**

8           Respondent's blanket statement that this Court does not have subject matter

9   jurisdiction over any of Petitioner's claims because they fail to allege violations of

10  federal law (Answer at 48) is insufficient to meet his burden of pleading this

11  affirmative defense with respect to any claim, and it is therefore waived.

12          To the extent that this Court might find that Respondent has not waived this

13  affirmative defense, for the reasons explained *ante* in Subsection III.A, this Court has

14  subject matter jurisdiction over each of Petitioner's claims.

15  **C.     None of Petitioner's Claims Are Procedurally Defaulted**

16          Respondent argues that various procedural defaults bar this Court from

17  reviewing  Petitioner's claims.  (Answer 48-49.)  Petitioner denies that any of his

18  claims are procedurally defaulted and asserts that no procedural bar forecloses this

19  Court's review of his claims.  Petitioner did not violate any state procedural rules.  To

20  the extent that this Court might find otherwise, he effectively and substantially

21  complied with the state rules, or made a reasonable and good faith efforts to do so.

22           The California Supreme Court addressed each and every one of Petitioner's

23  claims on the merits.  To the extent that this Court finds that the California Supreme

24  Court denied any of  Petitioner's claims due to a state procedural bar, Petitioner

25  asserts that the state rule does not constitute an independent and adequate state

26  ground sufficient to foreclose federal review, as detailed below.

27          To the extent that Respondent failed to raise any potentially applicable

28  procedural bars, he has waived the issue.

5

1    To the extent that this Court finds any default, it is excused because Petitioner
2  can demonstrate the existence of cause and prejudice, or because failure to consider
3  the claims in his case would result in a fundamental miscarriage of justice.

4    The state procedural default doctrines on which Respondent rely are not
5  independent of federal law and thus cannot bar review on federal habeas corpus
6  because: the California Supreme Court did not clearly and unambiguously rely on the
7  procedural bars as a basis for rejecting claims, but rather addressed the merits of the
8  claims, and therefore cannot be heard to say that it has been deprived of an
9  opportunity for consideration; and the rule is not purely based on state law because
10  the court will consider exceptions and those exceptions rely on federal law.  Further,
11  Petitioner can demonstrate that he is excused from the default because of the
12  existence of cause and prejudice, or because failure to consider the claims in his case
13  would result in a fundamental miscarriage of justice.

**1.    Claims Previously Considered on the Merits by the California
Supreme Court Are Not Subject to Procedural Bars**

16    "[T]he mere fact that a federal claimant failed to abide by a state procedural
17  rule does not, in and of itself, prevent [federal courts] from reaching the federal
18  claim." *Harris v. Reed*, 489 U.S. 255, 261-62, 109 S. Ct. 1038, 103 L. Ed. 2d 308
19  (1989).  Rather, federal review is only prohibited when the state court "actually
20  relied" on the procedural bar as an independent basis for disposing of the claim.
21  *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985).
22  Thus, "[w]hen a state court declines to review the merits of a petitioner's claim on the
23  ground that it has done so already, it creates no bar to federal habeas review." *Cone
24  v. Bell*, 129 S. Ct. 1769, 1781, 173 L. Ed. 2d 701 (2009); *Ylst v. Nunnemaker*, 501
25  U.S. 797, 804, n.3, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) ("a later state decision
26  based upon ineligibility for further state review neither rests upon procedural default
27  nor lifts a pre-existing procedural default").

28

1    With respect to all of Petitioner's claims, the procedural default doctrine does

2   not bar federal review because the California Supreme Court addressed the merits of

3   all of these claims.  In denying Petitioner's state habeas petition filed by appointed

4   counsel (S094682), the state court also denied all the claims on the merits:  "All

5   claims, including all subclaims, are denied on the merits."  Similarly, in denying his

6   pro se habeas petitions (S014772, S015614, S016342, and S018447) the state court

7   wrote that "All claims asserted in the petition are also denied on the merits."

8   Regarding the two subclaims to which Respondent contends the California Supreme

9   Court applied a procedural bar on direct appeal (Answer at 48), the court also denied

10  each claim on the merits.  *People v. Kraft*, 23 Cal. 4th 978, 1050, 1076, 5 P.3d 68, 99

11  Cal. Rptr. 2d 1 (2000).

12          **2.      California's Contemporaneous Objection Bar Does Not Bar Federal**

13                **Review**

14   Respondent argues that two of Petitioner's appellate claims are barred from

15  federal review because Petitioner's counsel failed to object on these grounds at trial.

16  (Answer at 48.)  The contemporaneous objection rule does not bar the substantive

17  portion of these claims either.  At the time of Petitioner's trial in 1988 and 1989, the

18  contemporaneous objection rule was not an adequate state ground because California

19  recognized a "capital case exception" to the rule.  The California Supreme Court

20  discussed this exception in *People v. Bob*, 29 Cal. 2d 321, 175 P.2d 12 (1946).  In

21  that case, trial counsel objected to admission of evidence under the incorrect

22  evidentiary rule.  The state court nevertheless considered the application of the

23  correct rule, noting its duty in capital cases to independently examine the record to

24  ensure that no miscarriage of justice had occurred.  *Id.* at 328.  In 1983, the California

25  Supreme Court extended the exception by considering claims never raised at trial.

26  *People v. Easley*, 34 Cal. 3d 858, 863-64, 869-72, 671 P.2d 813, 196 Cal. Rptr. 309

27  (1983), *receded from on other grounds in People v. Murtishaw*, 48 Cal. 3d 1001, 773

28  P.2d 172, 258 Cal. Rptr. 821 (1989); *see also, People v. Frank*, 38 Cal. 3d 711, 729

1    n.3, 700 P.2d 415, 214 Cal. Rptr. 801 (1985) ("T]his court recently cited *Bob* in

2    support of its promise that in capital cases it will review trial errors even when

3    defense counsel has failed to complain of them on appeal.") (citing *Easley*, 34 Cal. 3d

4    at 864); *Anderson v. Calderon*, 232 F.3d 1053, 1077-78 (9th Cir. 2000) (holding that

5    defendant's failure to make a contemporaneous objection to the prosecution's

6    remarks does not bar him from raising the error on appeal), *overruled on other*

7    *grounds by Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002).

8         Furthermore, application of the contemporaneous objection rule is "not

9    uniform," *Hale v. Morgan*, 22 Cal. 3d 388, 394, 584 P.2d 512, 149 Cal. Rptr. 375

10   (1978), and courts continue to apply different standards when considering such

11   claims.  *Cf.*, *e.g.*, *People v. Ramirez*, 189 Cal. App. 3d 603, 618  n.29, 236 Cal. Rptr.

12   404 (1987) (rule allows for consideration of constitutional questions); *In re S.B.,* 32

13   Cal. 4th 1287, 1293, 90 P.3d 746, 13 Cal. Rptr. 3d 786 (2004) (rule allows for

14   consideration of "an important legal issue").  Therefore, because the

15   contemporaneous objection rule was not consistently applied to capital cases at the

16   time of Petitioner's trial, it is not adequate to foreclose federal review.

17        The contemporaneous objection rule is also not independent of federal law.

18   The California Supreme Court in *Frank* noted an exception to the contemporaneous

19   objection rule in capital cases, allowing courts to consider whether a "miscarriage of

20   justice" occurred.  *Frank*, 38 Cal. 3d at 729 n.3.  The California Supreme Court

21   subsequently explained that it considered all federal constitutional claims when it

22   considers this exception.  *In re Robbins*, 18 Cal. 4th 770, 959 P.2d 311, 77 Cal. Rptr.

23   153 (1998).  Accordingly, as recently as 1998, the contemporaneous objection rule

24   remained intertwined with federal law.  At the time of Petitioner's trial, therefore, the

25   application of the contemporaneous objection rule was not independent of federal

26   law.  It cannot bar federal review.  *See Bennett v. Mueller*, 322 F.3d 573, 586 (9th

27   Cir. 2003) (ultimate burden of proving procedural default belongs to the state).

28

### 3.    California's *Lindley* Bar

Respondent argues that six claims in the Petition are barred from federal review based upon the California Supreme Court's citation to *In re Lindley*, 29 Cal. 2d 709, 723, 177 P.2d 918 (1947) (sufficiency of the evidence not properly raised in a habeas petition).  (Answer at 49.)  As to five of those claims -- sufficiency of the evidence regarding the murder convictions of Loggins, Young, Weibe, Moore, and John Doe, Petitioner raised those claims in the automatic appeal (*see* Lodged Doc. 103), and the court denied those claims on the merits.  *Kraft*, 23 Cal. 4th at 1053-61. Thus, for the reasons discussed in C.1, *ante*, those claims are not barred from federal review.  *Cone*, 129 S. Ct. at 1781.

### 4.    California's *Lessard* Bar

Respondent alleges that various claims raised by Petitioner were barred by the California Supreme Court's citation to *In re Lessard*, 62 Cal. 2d 497, 503, 399 P.2d 39, 42 Cal. Rptr. 583 (1965) (petition for writ of habeas corpus may not be employed to attack the introduction of illegally seized evidence).  These same claims were raised in Petitioner's automatic appeal (*see* Lodged Doc. 103), and the court denied those claims on the merits.  *Kraft*, 23 Cal. 4th at 1036-51.  Thus, for the reasons discussed in C.1, *ante*, those claims are not barred from federal review.  *Cone*, 129 S. Ct. at 1781.

### 5.    California's Repetitiveness Bars Do Not Preclude Federal Review

Respondent asserts that several claims in the Petition are barred from federal review because the California Supreme Court denied the claims as repetitive  under *In re Waltreus*, 62 Cal. 2d 218, 397 P.2d 1001, 42 Cal. Rptr. 9 (1965).  (Answer at 49.)  *Waltreus* bars issues that were raised and rejected on appeal from being raised anew in a state petition for writ of habeas corpus.  *Waltreus*, 62 Cal. 2d at 224-25; *accord In re Harris*, 5 Cal. 4th 813, 825, 855 P.2d 391, 21 Cal. Rptr. 2d 373 (1993).

As Respondent concedes (Answer at 49 n.1), the Ninth Circuit has expressly held that California's repetitiveness rules do not prevent federal review.  *See Carter*

9

1    *v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004) (holding that state court's "citation

2    to *Waltreus* does not prevent federal habeas review"); *La Crosse v. Kernan*, 244 F.3d

3    702, 705 n.11 (9th Cir. 2001) (holding that state court's invocation of *Waltreus* is not

4    a ruling of procedural default); *Calderon v. U.S. Dist. Ct. (Bean)*, 96 F.3d 1126, 1131

5    (9th Cir. 1996) ("A *Waltreus* citation does not bar federal review."); *Kim v.*

6    *Villalobos*, 799 F.2d 1317, 1319 n.1 (9th Cir. 1986) (addressing *Miller*); *Karis v.*

7    *Vasquez*, 828 F. Supp. 1449, 1457 (E.D. Cal. 1993) (holding that a state court denial

8    under *Miller* is not a bar to federal habeas review); *see also Nunnemaker*, 501 U.S. at

9    804 n.3 ("Since a later state decision based upon ineligibility for further state review

10    neither rests upon procedural default nor lifts a pre-existing procedural default, its

11    effect upon the availability of federal habeas is nil.").

12       Not only does the state court's invocation of the *Waltreus* bar fail to serve as

13    an independent bar to federal review, "it provides strong evidence that the claim has

14    already been given full consideration by the state courts and thus is *ripe* for federal

15    adjudication." *Cone*, 129 S. Ct. at 1781 (emphasis in original).

16       Moreover, no legitimate interest is served by upholding procedural bars to

17    claims that the state court previously denied on the merits. The procedural default

18    doctrine "is grounded in concerns of comity and federalism." *Trest v. Cain*, 522 U.S.

19    87, 89, 118 S. Ct. 478, 139 L. Ed. 2d 444, 447 (1997); *Dretke v. Haley*, 541 U.S. 386,

20    388, 124 S. Ct. 1847, 1849, 158 L. Ed. 2d 659, 666 (2004) ("Out of respect for

21    finality, comity, and the orderly administration of justice, a federal court will not

22    entertain a procedurally defaulted claim."). Recognizing "the important interests

23    served by state procedural rules," federal courts will refrain from considering claims

24    defaulted in state court because it would "undermine the State's interest in the

25    enforcement of its law." *Coleman v. Thompson*, 501 U.S. 722, 730-31, 111 S. Ct.

26    2546, 115 L. Ed. 2d 640, 656 (1991). But any interest California may have in

27    ensuring adherence to its procedural rules had been satisfied the first time that

28    Petitioner asserted the claims at issue. Therefore, because Petitioner complied with

1  California's procedural rules and the state's highest court previously addressed the

2  subject claims on the merits, nothing prevents federal review of these claims.

3  **6.    The *Dixon* Rule Does Not Bar Federal Review**

4  Respondent asserts that several of Petitioner's claims are barred by the rule of

5  *In re Dixon*, 41 Cal. 2d 756, 759, 264 P.2d 513 (1953), which forecloses federal

6  review of claims that could have been raised on appeal. (*See* Answer at 49.) But

7  until 1998, when the California Supreme Court clarified its approach in *In re*

8  *Robbins*, 18 Cal. 4th 770, the *Dixon* rule was interwoven with federal law and

9  therefore not an independent state ground. *Bennett*, 322 F.3d at 582 ("a California

10  court's pre-Robbins denial of a state habeas petition for a *Dixon* violation does not

11  bar subsequent federal review").

12  In this case, Petitioner's alleged default occurred on September 17, 1997, when

13  he filed his opening appellate brief. Because this default pre-dates the *Robbins*

14  decision, *Dixon* does not bar habeas review.

15  **7.    There Is Cause and Prejudice To Excuse Any Default**

16  To the extent that this Court might find that a claim for relief in the Petition is

17  defaulted because the California Supreme Court denied relief based on an

18  independent and adequate state procedural bar, Petitioner is excused from that default

19  because he can demonstrate cause and prejudice. The Supreme Court has

20  "recognized an equitable exception to the bar when a habeas applicant can

21  demonstrate cause and prejudice for the procedural default." *Dretke*, 541 U.S. at 393;

22  *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

23  Petitioner has alleged ineffective assistance of both trial and appellate counsel for

24  failure to raise several of the issues addressed in the Petition. Petitioner further has

25  demonstrated the prejudice of counsel's ineffectiveness in the Petition. This

26  ineffectiveness establishes cause and prejudice to excuse any procedural default that

27  this Court might find.

28

11

**D.    The *Teague* Doctrine Does Not Bar Relief on Any of Petitioner's Claims**

Respondent's blanket statement that relief on each of Petitioner's claims is foreclosed by the nonretroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (Answer at 50) is insufficient to meet his burden of pleading this affirmative defense with respect to any claim, and it is therefore waived.  *See Arredondo v. Ortiz*, 365 F.3d 778, 781-82 (9th Cir. 2004).

To the extent that this Court might find that Respondent has not waived this affirmative defense, *Teague* is inapplicable to this case because none of Petitioner's claims rely on a new rule of law.  To the extent that this Court might find that any of Petitioner's claims rely on a new rule of law, that rule (1) places a class of private conduct beyond the power of the state to proscribe; (2) forbids a certain category of punishment for a class of offenders; (3) requires the observance of procedures that are implicit in the concept of ordered liberty, i.e., is a watershed rule of criminal procedure that implicates fundamental fairness and the accuracy of Petitioner's criminal proceedings; or (4) otherwise falls within a recognized exception to the *Teague* doctrine.  Moreover, to the extent that Petitioner was not given a full and fair opportunity to litigate a claim at trial or on direct appeal, or that a claim could not have been raised until after his direct appeal, his conviction was not "final" with respect to that claim upon termination of his direct appeal.

**E.    Petitioner Has Not Delayed Presenting Any of His Claims, and Respondent Has Not Been Prejudiced by Any Alleged Delay**

Respondent's blanket statement that relief on each of Petitioner's claims is foreclosed by the equitable doctrine of laches (Answer at 50), without any showing of prejudice, is insufficient to meet his burden of pleading this affirmative defense with respect to any claim, and it is therefore waived.  Moreover, laches is not a valid defense in light of the one-year statute of limitations that now applies to habeas cases.

However, to the extent that this Court might find that laches remains a viable defense and that Respondent has not waived this affirmative defense, Petitioner did

not unreasonably delay in bringing the Petition, and Respondent has not been prejudiced by any alleged delay. *See generally Garlotte v. Fordice*, 515 U.S. 39, 46, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995) ("[B]ecause the habeas petitioner generally bears the burden of proof, delay is apt to disadvantage the petitioner more than the State."). This Court already has found that Respondent was not prejudiced by the equitable tolling in this case. (Dkt. Nos. 21, 26.) Moreover, to the extent that this Court might find that there was a delay that prejudiced Respondent, the delayed claim is based on grounds that previously were unavailable to Petitioner.

**F.     The Petition Is Not Barred by the One-Year Statute of Limitations**

Respondent argues that the Petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). (Answer at 50.) This issue already has been decided by this Court, in its orders granting equitable tolling of the statute of limitations (Dkt. Nos. 21, 26). *See Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005) ("Generally speaking, a successor judge should not reconsider the decision of a transferor judge at the same hierarchical level of the judiciary when a case is transferred."). Those decisions are the law of the case, and may not be disturbed. Moreover, the decisions to grant Petitioner equitable tolling and deeming the petition timely filed were and remain correct, as this Court itself recently stated (*see* Dkt. No. 144), and Petitioner relied on the equitable tolling decisions in filing his federal Petition. Thus, his Petition is therefore not barred by the one-year statute of limitations.

**G.     California's Successiveness Rule**

Respondent asserts, in a generic one line argument, that all of Petitioner's claims are successive. (Answer at 51.) In a vast majority of capital cases, the state high court simply disregarded the successiveness default when faced with a second petition. *In re Hamilton (Michael)*, No. S040799 (May 6, 1999); *In re Nicolaus (Robert)*, No. S060675 (Jan. 17, 2001); *In re Osband (Lance)*, No. S063051 (Oct. 28, 1998); *In re Raley (David)*, No. S053603 (Aug. 19, 1998); *In re Clark (Richard)*,

13

No. S060797 (Aug. 13, 1998); *In re Espinoza* (*Antonio*), No. S062244 (Feb. 17, 1999); *In re Visciotti* (*John*), No. S074291 (Feb. 24, 1999); *In re Crittenden* (*Steven*), No. S060706 (Aug. 18, 1999); *In re Sanders* (*Ronald*), No. S082022 (Sep. 22, 1999); *In re Cain* (*Tracy*), No. S067172 (Jun. 28, 2000); *In re Thomas* (*Edward*), No. S092074 (Nov. 15, 2000); *In re Bittaker* (*Lawerence*), No. S052371 (Nov. 29, 2000); *In re Turner* (*Melvin*), No. S069718 (Dec. 13, 2000). The California Supreme Court has even overlooked successiveness bar for a third and even fourth habeas petitions. *In re Jones* (*Earl*), No. S073227 (Feb. 23, 2000) (third petition); *In re Johnson* (*Laverne*), No. S077521 (Apr. 14, 1999) (fourth petition). The state court treated claims differently within the same successive petition, denying some claims based upon successiveness while reaching the merits of others. *In re Turner* (*Melvin*), No. S069718 (Dec. 13, 2000); *In re Hawkins* (*Jeffrey*), No. S065450 (Mar. 9, 1999); *In re Jackson* (*Noel*), No. S070227 (June 3, 1999).

Because Petitioner has adequately disputed the consistent application of California's timeliness and successiveness bars, the burden shifts to Respondent to prove otherwise. *Bennett*, 322 F.3d at 585. Respondent fails to provide a single example in "actual practice" where the State has imposed the procedural bar. *Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004). Accordingly, Respondent has not made even a colorable showing that the bars are consistently applied by the State courts, much less his ultimate burden of persuasion.

## H.   None of the Errors Presented in the Petition Were Harmless

Respondent's blanket statement that any errors alleged by Petitioner were harmless is insufficient to meet his burden of pleading this affirmative defense with respect to any claim, and it is therefore waived.

To the extent that this Court might find that Respondent has not waived this affirmative defense, the errors alleged by Petitioner in the Petition, taken singly or cumulatively, constitute structural error or are otherwise not subject to harmless error review. To the extent that this Court might find that the harmless error doctrine

1  applies to any of Petitioner's claims, the errors, taken singly or cumulatively, had a
2  substantial or injurious effect or influence on Petitioner's conviction and sentence,
3  and were not harmless.

4
5                                          **IV.**
6               **PETITIONER HAS ESTABLISHED A PRIMA FACIE**
7                **CASE FOR RELIEF ON ALL OF HIS CLAIMS**
8          Petitioner has raised numerous claims for relief in the Petition that are
9  meritorious and warrant an evidentiary hearing.  Because he has set forth the
10 operative facts and legal theories supporting each claim in his Petition, Petitioner
11 addresses only a few of those claims again here.

12 **A.    Petitioner Can Satisfy the Standards for Federal Habeas Relief**
13         The Petition is governed by AEDPA. Under the AEDPA, a habeas corpus
14 application may not be granted with respect to any claim that was adjudicated on the
15 merits in State court proceedings unless the adjudication of the claim:  (1) resulted in
16 a decision that was "contrary to, or involved an unreasonable application of, clearly
17 established Federal law, as determined by the Supreme Court of the United States";
18 or (2) "resulted in a decision that was based on an unreasonable determination of the
19 facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §
20 2254(d). Section 2254(e)(1) states that "a determination of a factual issue made by a
21 State court shall be presumed to be correct" and that the habeas petitioner "shall have
22 the burden of rebutting the presumption of correctness by clear and convincing
23 evidence."
24         The terms "contrary to" and "unreasonable application" have independent
25 meanings.  *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914
26 (2002); *Sarausad v. Porter*, 479 F.3d 671 (9th Cir. 2007).  A state court decision is
27 "contrary to" clearly established federal law if it arrives at a conclusion opposite to
28 that of the Supreme Court on a question of law, or decides the case differently than

                                          15

the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *accord Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).  To be an "unreasonable application of" clearly established federal law, the state court decision must have identified the correct legal rule but unreasonably applied it to the facts at hand.  *Id.* at 406; *Gonzalez v. Duncan*, 551 F.3d 875, 889 (9th Cir. 2008).

  "Supreme Court holdings at the time of the state court's last reasoned decision are the source of clearly established Federal law for the purposes of AEDPA," *citing Williams*, 529 U.S. at 412;  *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 127 S. Ct. 1654, 167 L. Ed. 2d 585 (2007) (granting habeas relief under AEDPA because state court decision ignored "fundamental principles established by [the Supreme Court's] most relevant precedents"); *Barker v. Fleming*, 423 F.3d 1085, 1093 (9th Cir. 2005); *accord Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  Ninth Circuit precedent remains persuasive authority in determining what is clearly established federal law.  *See Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999); *accord Richter v. Hickman*, __ F.3d __, 2009 WL 2425390, *5 (9th Cir. Aug. 10, 2009); *Barajas v. Wise*, 481 F.3d 734, 740 (9th Cir. 2007); *Arnold v. Runnels*, 421 F.3d 859, 865 n.6 (9th Cir. 2005).

  As the Supreme Court has stated, "in the context of federal habeas" "[d]eference does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell* (*Miller-El I*), 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).  To that end, while the standard as articulated in section 2254 is demanding, it is "not insatiable; as we said the last time this case was here, "'[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 162  L. Ed. 2d 196 (2005) (*Miller-El II*) (granting habeas relief under AEDPA), *citing Miller-El I*, 537 U.S. at 340; *see Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007) ("AEDPA does not "'require state and federal courts to wait for some nearly identical factual pattern

16

1    before a legal rule must be applied.'"), *citing Carey*, 127 S. Ct. at 656 (Kennedy, J.,

2    concurring in judgment); *accord Moore v. Czerniak*, __ F.3d __, 2009 WL 2231650,

3    *6 (9th Cir. July 28, 2009); *Bradley v. Henry*, 510 F.3d 1093, 1096 (9th Cir. 2007).

4         When state courts fail to render a reasoned decision on the merits of a claim,

5    the AEDPA rules are fundamentally altered.  Ninth Circuit cases consistently hold

6    that less deference to state court decisions is warranted when the state court

7    summarily denies a claim without an opinion or an evidentiary hearing.  First,

8    because "there is no reasoned state court decision to assess," the federal habeas court

9    "must conduct an independent review of the record" to determine if the state court

10   decision was objectively unreasonable.  *Reynoso v. Giurbino*, 462 F.3d 1099, 1119

11   (9th Cir. 2006); *Brown v. Palmateer*, 379 F.3d 1089, 1092-93 (9th Cir. 2004)

12   ("Because the Oregon courts have provided no ratio decidendi to review, or to which

13   we can give deference, we employ the 'objectively reasonable' test.  In this situation,

14   federal habeas courts accord the state court decisions less deference than in standard

15   habeas cases."); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (similar).  A

16   leading treatise describes this Ninth Circuit rule as "an intermediate approach" in

17   which the court "review[s] the record 'independently' in a manner that is somewhat

18   more deferential to the state courts than the pre-AEDPA standard of de novo review."

19   Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure*

20   (5th ed. 2005), Vol. 2, § 32.2 at 1576 & n.10.

21        Second, because in this situation the state courts made no findings of fact (as to

22   most claims), or held a hearing (as to all claims), there are no factual determinations

23   for the federal habeas court to defer to, or for § 2254(e)(1)'s presumption of

24   correctness to apply to.  *Taylor v. Maddox*, 366 F.3d 992, 1014 (9th Cir. 2004) ("It is

25   well-established that when the state courts do not make findings at all, no

26   presumption of correctness attaches, and we must make our own findings") (*citing*

27   *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 2540, 156 L. Ed. 2d 471 (2003));

28   *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) ("with the state court having

17

refused Nunes an evidentiary hearing, we need not of course defer to the state court's factual findings -- if that is indeed how those stated findings should be characterized -- when they were made without such a hearing"); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) (similar).

"In a capital case, a habeas petitioner who asserts a colorable claim to relief, and who has never been given the opportunity to develop a factual record on that claim, is entitled to an evidentiary hearing in federal court."[3] *Stankewitz v. Woodford*, 365 F.3d 706, 725 (9th Cir. 2004) (internal quotation marks omitted); *see also Silva v. Woodford*, 279 F.3d 825, 853 (9th Cir. 2002) ("[A] habeas petitioner is entitled to an evidentiary hearing as a matter of right on a claim where the facts are disputed if two conditions are met: (1) the petitioner's allegations would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." (internal quotation marks omitted)).

Further, when, as in this case, the state court failed to hold an evidentiary hearing on a colorable claim that the petitioner sought to present, the state court determination of the facts is unreasonable under section 2254(d)(2). *See Earp v. Ornoski*, 431 F.3d 1158, 1173 (9th Cir. 2005) ("Although he presented his claim to the state court, Earp never received an evidentiary hearing. Because an evidentiary

---

[3] AEDPA does not impose any new limitation on Petitioner's right to an evidentiary hearing in federal court. In *Williams*, 529 U.S. at 430, the Supreme Court explained that "[b]y the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'" The Court held that a "failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. Thus, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements." *Id.*; *see also Horton v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005) (explaining that California appellate courts decide whether to grant an evidentiary hearing only after the parties file formal pleadings, the filing of which is subject to the discretion of the California Supreme Court, and that if the California Supreme Court summarily denies a habeas petition without ordering formal pleadings -- as it did in Petitioner's case -- the petitioner never reaches the stage at which a hearing should be requested and thus cannot be said to have shown any lack of diligence).

18

1   hearing is needed in order to resolve these factual allegations, we hold that the state

2   court's decision was based on an unreasonable determination of the facts.").

3        As to each and every claim for relief in the Petition, Petitioner realleges that

4   the claim meets the standards for relief under AEDPA.  For those claims on which he

5   is not entitled to relief based solely on the record presently before this Court,

6   Petitioner is entitled to discovery and an evidentiary hearing to fully and fairly

7   develop and present his claims to this Court.

8   **B.    Petitioner Has Not Made New Allegations in the Petition, and Any**

9        **Allegedly New Allegations May Be Considered by This Court**

10       Respondent makes several allegations throughout the Answer regarding

11  allegedly "new" facts presented in the Petition.  Citing to, among others, *Holland v.*

12  *Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) and *Bell*, 535

13  U.S. at 697 n.4, Respondent asserts that this Court cannot consider any evidence that

14  was not presented in state court.  (Answer at 55 and *et seq.*)  While the *Holland* Court

15  did state that "whether a state court's decision was unreasonable must be assessed in

16  light of the record the court had before it," in the very next sentence the Court noted

17  that additional evidence may be introduced "if [the prisoner] was not at fault in

18  failing to develop that evidence in state court, or (if he was at fault) if the conditions

19  prescribed by § 2254(e)(2) were met." *Holland*, 542 U.S. at 652-53.  The *Holland*

20  Court concluded that the Sixth Circuit had erred, not because it considered additional

21  evidence at all, but because it did so even though "[t]he District Court made no

22  finding that [the prisoner] had been diligent in pursuing [the additional evidence]

23  (and thus that § 2254(e)(2) was inapplicable) or that the limitations set forth in §

24  2254(e)(2) were met.  Nor did the Sixth Circuit independently inquire into these

25  matters . . . ." *Id.* at 653.

26       Moreover, "[p]resenting additional facts to the district court does not evade the

27  exhaustion requirement when the prisoner presents the substance of his claim to the

28  state courts." *Pinholster v. Ayers*, 525 F.3d 742, 765 (9th Cir. 2008) (finding

19

ineffective-assistance-of-counsel claim exhausted even though state prisoner relied on "different experts with differing mental impairment theories" than in state proceedings because "the evolving theories have not significantly changed the evidentiary basis for his arguments"), *rhr'g pet'n pending on other grounds*.  In *Cone*, by contrast, the Court was addressing a situation where the habeas petitioner "did not present *any* evidence regarding his counsel's mental health in the state-court proceedings." *Cone*, 535 U.S. at 697 n.4.

Petitioner denies that he failed to present his factual allegations in state court and affirmatively avers that he presented the substance of each of his claims in state court.  To the extent that this Court might find that some of his factual allegations were not presented in state court, this Court may consider that evidence because those facts are tied to a common core of operative facts that *were* presented, or because Petitioner was not at fault for failing to present that evidence in state court.  Petitioner requested discovery and a hearing in state court in order to develop the factual bases of his claims, but was granted neither.  Alternatively, to the extent that this Court might find that Petitioner is at fault for failing to develop facts in state court, he has met the standards set forth in 28 U.S.C. § 2254(e)(2).  Finally, to the extent that this Court might find that Petitioner presented certain facts in state court, but not in support of the particular claim in which they are cited in the Petition, for each of Petitioner's claims in state court, he realleged and reincorporated by reference all of the factual allegations in the Petition.

## C.    Petitioner Should Be Granted Relief on Claim Two

For all the reasons stated in the Petition (Pet. at 33-43), Petitioner was deprived of a trial before a representative jury because of the court's refusal to augment jury fees for a lengthy capital trial which resulted in the exclusion of a cognizable class of individuals -- those who were wage earners and could not afford to take nearly a year off work.  *See Labat v. Bennett*, 365 F.2d 698 (5th Cir. 1966) (exclusion of hourly wage earners); *Cerrone v. People*, 900 P.2d 45, 55 (Colo. 1995) (exclusion of hourly

20

1  wage earners from grand jury was exclusion of economic class based on generalized

2  assumption and thus inherently discriminatory); *People v. White*, 43 Cal. 2d 740, 751,

3  278 P.2d 9 (1955) (systematic exclusion of wage earners in system of jury selection is

4  improper).

5  **D.    The California Supreme Court Failed to Address Petitioner's Third**

6  **Claim**

7  In Claim Three, Petitioner argues that he was deprived of a fair and impartial

8  jury because the trial court failed to change the venue of the trial despite extensive

9  proof of the prejudicial and inordinate pre-trial publicity that occurred within the

10  trial's venue.  (Pet. at 43-51.)  Respondent asserts that Petitioner is precluded from

11  federal relief on this Claim as the California Supreme Court denied the claim on the

12  merits and that denial was not contrary to clearly established federal law and did not

13  involve an unreasonable determination of the facts.  § 2254 (d).  (Answer at 56.)

14  Respondent is incorrect.  The California Supreme Court failed to address this claim in

15  their opinion.  *Kraft*, 23 Cal. 4th 978.  As such, Claim Three is entitled to *de novo*

16  review.  *See Panetti*, 551 U.S. at 953-54.  And for the reasons discussed in the

17  Petition, relief should be granted on this Claim.

18  **E.    Counsel Was Ineffective for Failing to Request That Juror Lytle Be**

19  **Removed as a Juror (Claim Six)**

20  Petitioner's trial counsel was ineffective for permitting Juror Lytle to remain as

21  a juror.  (Pet. at 68-80.)  Not only was Lytle a biased juror, he became the juror

22  foreperson at the penalty phase of trial and steered the juror towards sentencing

23  Petitioner to death.

24  By way of background, the questionnaire given to prospective jurors asked:

25  "What, if anything, have you already learned about this case, *People* v. *Kraft*?"  (Ex.

26  14 to Petition.)  Prospective Juror Jim Lytle answered:  "Nothing."  (*Id.*)  Question 17

27  of the same questionnaire asked prospective jurors if they or any relative had ever

28  been involved in a criminal case as a victim, defendant or witness.  (*Id.*)  Lytle

21

answered this question, "no." (*Id*.)  Given a chance later to further explain any of his answers to particular questions, he stated that he "fe[lt] fine with [his] answers." (*Id*.; *see also* RT at 15171-72 (during voir dire Lytle states that he knew "nothing" about the case apart from what he had learned since he had been in the courtroom).)

However, in April 1989, approximately seven months after Petitioner's trial began, it came to light that a proposed prosecution witness, Donald Drake, was related to juror Lytle.  (15 CT at 5089; 105 RT at 22592-94.)  The following facts are known:

> Donald Drake had been friends with Terry Gambrel, the individual found near-death in Petitioner's car on the night of his arrest.  Drake and Gambrel met each other while they were Marines at the El Toro military base.  Drake worked across the street from Gambrel and Drake had almost daily contact with Gambrel.  Drake's roommate at that time was Ronald Wayne Phillips, the corporal for whom Gambrel worked.  (82 RT at 16650-63.)

> At the time Gambrel died (and at the time of Petitioner's trial), Drake was married to juror Lytle's sister and was Lytle's brother-in-law.

> Drake remained in contact with both Gambrel and Phillips.  Gambrel was on his way to a party at the Drake's home on the night of his death, having been invited to the party by Phillips.  The police found in Gambrel's pocket a map of how to get to the Drake's house, and showed up at the Drake residence at 3:00 a.m., informing both Mr. and Mrs. Drake that their friend, Gambrel, had been killed that night.  The police questioned both of the Drakes.

22

1      The Drake's names did not appear in any police

2      report, but Donald Drake called the police toward the end of

3      1988 and volunteered as a witness to refute the defense

4      allegation that Gambrel actively used drugs.  Drake would

5      have testified that while he knew Gambrel drank, he did not

6      believe that Gambrel used drugs or carried drugs around in

7      a shoe box.[4]

8      At the beginning of the trial, Ron Phillips testified on

9      behalf of the prosecution.  (82 RT at 16651-62.)  However,

10     it was not until approximately seven months later that the

11     trial court and parties became aware that juror Lytle was

12     connected to victim Gambrel through Phillips and Drake.[5]

13     (105 RT at 22592.)

14     At a hearing on the Lytle matter, the prosecutor

15     proffered that Drake had not communicated any of his

16     knowledge of Gambrel to juror Lytle.[6]  (107 RT at

17     23120-23.)  However, Mrs. Drake (Lytle's sister) told the

18     court that she had learned all of the same facts regarding

19     Gambrel from her husband, and Mrs. Drake was listed as a

20     visitor for juror Lytle during the sequestered deliberations.

21     (107 RT at 23130.)

22

23

24     [4] The defense evidence showed that Gambrel both used drugs and carried them around in a shoe box.  (97 RT at 20296-308.)

25     [5] According to the prosecutor, while formulating a list of rebuttal witnesses, it
26     came to light that juror Lytle was related to potential rebuttal witness Donald Drake.
       (105 RT at 22592-94.)  The matter was put over about a week until the prosecutor
27     could determine what evidence Drake would offer.

28     [6] Apparently, a prosecution investigator interviewed and took a statement from Drake, which the prosecutor proffered to the trial court.  (107 RT at 23123.)

23

1   Mrs. Drake acknowledged that she told her mother,

2   Mary Lou Lytle, all of the facts she learned about Gambrel

3   from her husband.  In turn, Mrs. Drake learned from her

4   mother that juror Lytle was sitting on Petitioner's jury.

5   (107 RT at 23130-31.)

6   Lytle was living with his mother while he was on jury

7   service, and Lytle told his sister that her husband's name

8   had come up as a possible witness at trial.  The map found

9   on Gambrel, showing the address to Lytle's sister's former

10   home, was placed into evidence.  (82 RT at 16663.)

11   Once the court became aware of Lytle's connection to

12   Gambrel, it ordered Mrs. Drake not to contact juror Lytle

13   during deliberations.  The court requested that she pass

14   along to her husband that the court had ordered that neither

15   of them were to have contact with the juror or discuss this

16   with anyone else.  (107 RT at 23130.)

17   After this information came to light, juror Lytle was questioned by the court

18   and all counsel.  Lytle claimed that he had first heard his brother-in-law's name

19   mentioned early in the trial, and had told a bailiff about it at that time.  The bailiff,

20   however, did not remember any such statement by Lytle, and stated such to the court

21   and counsel.[7]  (107 RT at 23241-45.)

22   Following the juror Lytle hearing, defense counsel refused to raise a challenge

23   to Lytle's presence on the jury panel, and Lytle remained a juror. (107 RT at 23244-

24   45.)  Subsequently, Jim Lytle became the foreman of the jury at the penalty phase and

25   signed the death verdict.  (17 CT at 5900, 5998.)

26

27   [7] Lytle lied to the court when he said he told the bailiff early in the trial about
his connection to the witness.  In reality, juror Lytle kept this information to himself.

28   (*See* Ex. 85 at ¶ 3 [Decl. of Lytle].)

24

A defendant has the right to a trial before an impartial and unbiased jury. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); *Rideau v. Louisiana*, 373 U.S. 723, 83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963). A juror is biased in fact when he has a "state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000). Because an impartial jury is fundamental to the Sixth Amendment right to a fair trial, doubts regarding bias should be resolved against the juror. *Id*. at 1114; *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir. 1991).

Here, there was significant evidence that juror Lytle was not only biased against Petitioner, but actually lied during both voir dire and when addressing the court. (*See* Pet. at 74-76; Ex. 85 at ¶ 3.) Based upon Lytle's fact-based bias, no reasonable competent attorney would have willingly permitted a person whose close family member was a good friend of a victim to sit as a juror on a homicide case, particularly where that juror failed to fully disclose such a relationship. The risks were simply too great, including: that the juror may have obtained information that was never presented as evidence; that the juror may relay that information to other jury members; that any juror may decide the case based on that information; or that the juror will feel obligated to return a verdict that would be viewed favorably by his family member -- or sway other jurors to do so -- at either the guilt or the penalty phase or both. There is no strategic reason that would outweigh these risks, and justify leaving any such individual on the jury. In other words, an uninformed strategy is not a reasoned strategy. It is, in fact, no strategy at all. *Correll v. Ryan*, 465 F.3d 1006, 1016 (9th Cir. 2006) (*citing Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (holding that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation")); *accord Richter*, 2009 WL 2425390, *8 ("Until a reasonable investigation is conducted, counsel is not in a position to make critical strategic decisions"); *see Roe v. Flores-*

1   *Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) ("[t]he relevant

2   question is not whether counsel's choices were strategic, but whether they were

3   reasonable").

4        Trial counsel had the opportunity to remove Lytle from the jury and failed to

5   take advantage of that opportunity.  Had trial counsel requested removal of this juror,

6   the trial court would have done so.  If nothing else, trial counsel would have

7   adequately preserved this issue for review by the federal courts.

8        Petitioner was prejudiced by his counsels' ineffective conduct.  *Strickland*,

9   466 U.S. at 694.  As a result of counsel's failures, Petitioner was tried by a jury that

10   was tainted and biased against him, and incapable of providing a fair and impartial

11   verdict.  Relief should be granted on this Claim.

12   **F.**    **Petitioner's Trial Judge was Impartial (Claim Eight)**

13        In his Petition, Petitioner argued that he was deprived of a fair trial before an

14   impartial and fair tribunal.  (Pet. at 84-90.)  Since the filing of the Petition, the

15   California Supreme Court reversed a capital muder conviction due to the judicial

16   misconduct of Orange County Superior Court Judge Donald A. McCartin, the same

17   judge who presided over Petitioner's case.  *See People v. Sturm*, 37 Cal. 4th 1218,

18   129 P.3d 10, 39 Cal. Rptr. 3d 799 (2006).  In *Sturm*, Judge McCartin was found to

19   have committed misconduct by disparaging defense witnesses and defense counsel,

20   giving the impression that the court was aligned with the prosecution.  This is the

21   same type of misconduct Petitioner alleges that Judge McCartin was involved in

22   during Petitioner's trial.  (*See* Pet. at 86-88.)  For the reasons stated in *Sturm*, this

23   Court should grant relief to Petitioner on this Claim.  At the very least, this Court

24   should order an evidentiary hearing on this Claim.

25   **G.**    **Petitioner's Constitutional Rights Were Violated by the Joinder of**

26          **Numerous Unrelated Homicide Charges in a Single Trial (Claim Ten)**

27        Habeas relief will be granted if a joinder renders "petitioner's state trial

28   fundamentally unfair and hence, violative of due process." *Davis v. Woodford*, 384

F.3d 628, 638 (9th Cir. 2004) (citation omitted); *United States v. Lane*,  474 U.S. 438, 446 n.8, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986); *Opper v. United States*, 348 U.S. 84, 94-95, 75 S. Ct. 158, 99 L. Ed. 101 (1954) (actual prejudice resulted from the events as they unfolded during trial); *Comer v. Schriro*, 480 F.3d 960, 985 (9th Cir. 2007); *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000); *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991); *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998). "The requisite level of prejudice is reached only if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 384 F.3d at 638 (internal quotation marks and citation omitted); *accord Comer*, 480 F.3d at 985.

The risk of undue prejudice is particularly great whenever the joinder of counts allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible. *Sandoval v. Calderon*, 241 F.3d at 772; *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986).  Undue prejudice may also arise from the joinder of a strong evidentiary case with a weaker one. *Fields v. Woodford*, 309 F.3d 1095, 1110 (9th Cir. 2002); *Sandoval*, 241 F.3d at 772; *Bean*, 163 F.3d at 1085, and cases cited therein.

Here, the California Supreme Court's ruling was an unreasonable application of the law and facts.  Petitioner was severely prejudiced by the joinder of so many disparate and poorly supported charges.

For example, there was insufficient similarity in the victims to try the claims in one unified trial.  (*See* Appendix A to Petition.)  While the prosecution alleged a military similarity between the victims, in actuality, only six of the sixteen alleged victims belonged to the military.  And while some of the victims appeared to be "clean cut," others were drug dealers.  Further, while some of the victims were heterosexual, others were either bisexual or homosexual.  In addition, the ages of the victims ranged from eighteen to twenty-five years of age - not a similarity worth noting.

27

1    With regard to the crimes, they too were not highly similar in nature:  the

2    locations of the bodies were not distinctive - ranging from freeways, city streets and

3    remote areas; the dates of the killings were randomly spread out over months and

4    years; some victims were totally nude while others were partially or fully clothed;

5    some victims were wrapped in plastic, others were found lying in the street without

6    plastic covering, while others still were found bound or not tied; some of the victims

7    had drugs and alcohol in their system while others had trace amounts of alcohol or

8    had no drugs or alcohol; some of the victims were strangled, others were suffocated,

9    some were stabbed, and others died from drug overdoses; and while some of the

10   victims had evidence of sexual assault, not all of the victims had been assaulted.

11   In short, the sheer number of cases joined caused prejudice to Petitioner as the

12   number inevitably lead to convictions irrespective of the strength or weakness of the

13   evidence presented by the State.  As a result of the joinder, Petitioner was convicted

14   of numerous charges based not upon the evidence actually presented, but instead

15   upon the number of charges presented.  Petitioner is entitled to relief on this claim.

16   **H.    California's Capital Sentencing Scheme Unconstitutionally Fails to**

17   **Perform  The Constitutionally Mandated Narrowing Function (Claim 30)**

18   The California capital statutory scheme is overly broad and inclusive because it

19   contains so many special circumstances that it fails to perform the constitutionally

20   required narrowing function.  The statutory scheme therefore violates the Eighth

21   Amendment prohibition against cruel and unusual punishments and the Fifth and

22   Fourteenth Amendment requirement of due process of law.

23   Under the United States Supreme Court decisions, *inter alia*, in effect at the

24   time of Petitioner's trial, a state statutory scheme must provide rational, meaningful

25   and objective criteria for narrowing the class of person's eligible for the death penalty

26   from the larger group of murder defendants who are not.  *Zant v. Stephens*, 462 U.S.

27   862, 877, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983) ("To pass constitutional muster, a

28   capital sentencing scheme must 'genuinely narrow the class of persons eligible for

28

the death penalty'"); *Furman v. Georgia*, 408 U.S. 238, 313, 92 S. Ct. 2726. 33 L. Ed. 2d 346 (1972) (a death penalty law violates Eighth Amendment unless it provides meaningful basis for distinguishing the few cases in where death penalty is imposed from the many in which it is not); *California v. Ramos*, 463 U.S. 992, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983)(a capital murder statute must take into account the concepts that death is different be in accord with Eighth Amendment).

The narrowing must occur at the definitional stage and is required to ensure that those chosen for the death penalty will be among the worst offenders, those whose murders are "particularly serious or for which the death penalty is peculiarly appropriate . . . ." *Gregg v. Georgia*, 428 U.S. 153, 222, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (White, J., conc. op.); *Zant v. Stephens*, 462 U.S. at 878; *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S. Ct. 1078, 108 L. Ed. 2d 255 (1990); *Lowenfeld v. Phelps*, 484 U.S. 231, 244-45, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988); *see also Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir. 1988) (blanket eligibility for death sentence may violate the Fifth and Fourteenth Amendment due process guarantees as well as the Eighth Amendment).

The *Furman* principle has resulted in a statutory narrowing requirement with two components: (1) the death-eligible class of convicted murderers must be small enough that a substantial percentage are in fact sentenced to death; and (2) the states, through their legislatures, must decide the composition of the death-eligible class. (Ex. 86 [Decl. of Professor Steven Shatz at ¶5].)  In other words, *Furman* is satisfied if, and only if, the legislature, by defining categories of murderers eligible for the most severe penalty, genuinely narrows the death-eligible class.  (*Id*.)

California's death penalty statute, however, enacted by initiative, has ignored the Eighth Amendment by multiplying the "few" into the many.  Because of the breadth of California's definition of first-degree murder, nearly all murders committed in California can be capitally charged.  At the time of the homicide in Petitioner's case, there were over twenty "special" circumstances in existence under

29

1    California Penal Code § 190.2, effectively embracing every likely type of murder.

2    There were only eight fact situations possible where a defendant could have been

3    guilty of first degree murder and actually not be death-eligible.  (Ex. 86 [Decl. of

4    Shatz at ¶ 7].)

5         It appears the proponents of Proposition 7, the initiative enacted into law as

6    section 190.2, contemplated an unconstitutionally over-broad purpose in drafting and

7    advocating such expansive special circumstances.  In their "Argument in Favor of

8    Proposition 7" in the 1978 Voter's Pamphlet, they described certain murders not

9    covered by the then-existing death penalty statute, and then stated:

10              And, if you were to be killed on your way home tonight

11              simply because the murderer was high on dope and wanted

12              the thrill, the criminal would not receive the death penalty.

13              Why, because the Legislature's weak death penalty law

14              does not apply to every murderer.  Proposition 7 would.

15   (1978 Voter's Pamphlet, p. 34.)

16        In California, death eligibility is the rule, not the exception.  Professor Steven

17   Shatz determined that from 1988 to 1992, a five-year period encompassing this case,

18   at least eighty-four percent of first-degree murderers convicted in California were

19   death-eligible. (Ex. 86 [Decl. of Shatz at ¶8].)  Through his careful statistical studies,

20   Shatz has concluded that California's statutorily defined death-eligible class is so

21   large, and the imposition of the death penalty on members of the class so infrequent,

22   that the statute performs no narrowing of the death-eligible class as mandated by

23   *Furman*.  In fact, it creates a greater risk of arbitrary death sentences than the

24   pre-Furman death penalty schemes.  (Ex. 86 [Decl. of Shatz at ¶¶ 9-15].)

25        With the exception of the "heinous, atrocious or cruel" special circumstance

26   already held unconstitutional, *People v. Superior Court (Engert)*,  31 Cal. 3d 797,

27   800-02, 647 P.2d 76, 183 Cal. Rptr. 800 (1982), any of the plus twenty individual

28   special circumstances, when viewed in isolation, may have been sufficiently

30

1    objective and narrow to satisfy *Furman*.  However, given the number and breadth of

2    the special circumstances, the scheme as a whole does not genuinely narrow the

3    death-eligible class.

## V.

## CONCLUSION

6          For the foregoing reasons, Petitioner respectfully requests that this Court grant

7    him the relief requested in the Petition.

8

9                                    Respectfully submitted,

10                                   SEAN K. KENNEDY
                                     Federal Public Defender

11

12   DATED:  August 25, 2009         By   */S/  Brad D. Levenson*
                                     BRAD D. LEVENSON
13                                   Deputy Federal Public Defender

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     31

1

## PROOF OF SERVICE

2        I, **Diana Elliott**, declare that I am a resident or employed in Los Angeles County,

3   California; that my business address is the Office of the Federal Public Defender, 321

4   East 2nd Street, Los Angeles, California  90012-4202, Telephone No. (213) 894-2854;

5   that I am over the age of eighteen years; that I am not a party to the action entitled

6   below; that I am employed by the Federal Public Defender for the Central District of

7   California, who is a member of the Bar of the State of California, and at whose direction

8   I served a copy of the attached  PETITIONER'S TRAVERSE;  EXHIBITS 85-86 on the

9   following individual(s) by:

10

11  [X] Placing same        [] Placing same in      [] Placing same in      [] Faxing same via
    in a sealed             an envelope for         a sealed envelope       facsimile machine
12  envelope for            hand-delivery           for collection and      addressed as
    collection and          addressed as            mailing via the         follows:
13  interoffice delivery    follows:                United States Post
    addressed as                                    Office, addressed
14  follows:                                        as follows:

15  Death Penalty Law Clerk
16  United States Courthouse, Room 801
    312 North Spring Street
17  Los Angeles, CA 9001

18
        This proof of service is executed at Los Angeles, California, on **August 25,**
19
    **2009**.
20
        I declare under penalty of perjury that the foregoing is true and correct to the
21
    best of my knowledge.
22

23

24                                                  _____
                                                         *Diana Elliott*
25                                                  **DIANA ELLIOTT**

26

27

28

                                            32