SEAN K. KENNEDY (No. 145632)
(E-mail:  Sean_Kennedy@fd.org)
Federal Public Defender
C. PAMELA GOMEZ (No. 233848)
(E-mail:  Pamela_Gomez@fd.org)
Deputy Federal Public Defender
CELESTE BACCHI[1] (No. 688983)
(E-mail: Celeste_Bacchi@fd.org)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone: (213) 894-5673
Facsimile:  (213) 894-1221

Attorneys for Petitioner
RANDY STEVEN KRAFT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| RANDY STEVEN KRAFT, | ) | NO. CV 01-4623 AG |
|---|---|---|
| Petitioner, | ) | **PETITIONER'S SUPPLEMENTAL BRIEF ON THE EFFECT OF *CULLEN V. PINHOLSTER* ON COURT'S POWER TO GRANT AN EVIDENTIARY HEARING** |
| v. | ) | |
| MICHAEL MARTEL, Acting Warden, | ) | |
| Respondent. | ) | |

---

[1]  As a government attorney and a member of the Florida State Bar Association, Celeste Bacchi has been admitted to practice before the United States District Court for the Central District of California.

# TABLE OF CONTENTS

**PAGE**

I.  SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY. . . . . . . . . .  3

III.  *PINHOLSTER* DOES NOT IMPACT KRAFT'S ENTITLEMENT TO AN
      EVIDENTIARY HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

   A.  Overview Of AEDPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

   B.  Evidentiary Hearings Under AEDPA. . . . . . . . . . . . . . . . . . . . . . . . . .  14

   C.  The Scope And Context Of *Pinholster* . . . . . . . . . . . . . . . . . . . . . . . .  17

      1.  *Pinholster* Is A § 2254(d)(1) Case, And The Opinion
          Merely Clarifies The Scope Of Review Under § 2254(d)(1). . .  17

      2.  *Pinholster* Has No Impact On The Existing Law Regarding
          Evidentiary Hearings Mandatory And Discretionary
          Hearings And § 2254(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

      3.  Evidence Developed At Evidentiary Hearings Still Has
          An Important Role In Federal Habeas Proceedings. . . . . . . . . . .  20

   D.  Other Relevant Principles. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

IV.  ANALYSIS OF KRAFT'S CLAIMS UNDER § 2254(D). . . . . . . . . . . . . . .  23

   A.  Kraft Is Entitled To An Evidentiary Hearing Under AEDPA
       Standards That Remain Unchanged By *Pinholster*. . . . . . . . . . . . . .  23

   B.  Kraft Has Already Satisfied  § 2254(d)(1). . . . . . . . . . . . . . . . . . . . .  26

      1.  Because the State Court Failed to Adjudicate Whether
          The Trial Court's Response Concerning Juror Jim L.
          Was Constitutionally Adequate, Kraft Has Already
          Satisfied § 2254(d)(1) As To Claim 6.b.2 And 37.b.3. . . . . . . .  26

      2.  The State Court's Failure To Issue An Order To Show
          Cause On Any Of Kraft's *Pro Se* Pleadings Resulted In
          A Truncated Process That Deserves No Deference. . . . . . . . . . .  29

   C.  The State Court's Failure To Conduct A Full And Fair
       Hearing Constituted An Unreasonable Determination Of
       The Facts Under 2254(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

i

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**                                                                       **PAGE(S)**

*Baja v. Ducharme*,
    187 F.3d 1075 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bell v. Jarvis*,
    236 F.3d 149 (4th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cardwell v. Greene*,
    152 F.3d 331 (4th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Coleman v. Alabama*,
    377 U.S. 129, 84 S. Ct. 1152, 12 L. Ed. 2d 190 (1964). . . . . . . . . . . . . . . . . 34

*Coleman v. Thompson*,
    501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). . . . . . . . . . . . . . . . 5

*Cone v. Bell*,
    __ U.S. __, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009). . . . . . . . . . . . . . 14, 27

*Cullen v. Pinholster*,
    563 U.S. ___, 131 S. Ct. 1388, 179 L. Ed. 557 (2011).. . . . . . . . . . . . . . *passim*

*Doody v. Ryan*,
    2011 WL 1663551 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Dyer v. Calderon*,
    151 F.3d 970 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Earp v. Ornoski*,
    431 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Evitts v. Lucey*,
    469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). . . . . . . . . . . . . . . . . 4

*Faretta v. California*,
    422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). . . . . . . . . . . . . . 20, 21

*Ford v. Wainwright*,
    477 U.S. 399, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986). . . . . . . . . . . . . . . . 10

*Frantz v. Hazey*,
    533 F.3d 724 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Harrington v. Richter*,
    ___ U.S. ___, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). . . . . . . . . . 13, 33, 37

*Hearn v. Ryan*,
    2011 WL 1526912 (D. Ariz. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Horton v. Mayle*,
    408 F.3d 570 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ii

1

# TABLE OF AUTHORITIES

2

**FEDERAL CASES**                                               **PAGE(S)**

3

*Hurles v. Ryan*,
    2011 WL 2641287 (9th Cir. July 7, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

4

*Insyxiengmay v. Morgan*,
5     403 F.3d 657 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 24

6

*Jones v. Basinger*,
7     635 F.3d 1030 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Lockyer v. Andrade*,
8     538 U.S. 63, 123 S . Ct. 1166, 155 L. Ed. 2d 144 (2003).. . . . . . . . . . . . .  15, 23

9

*Marino v. Ragen*,
10     332 U.S. 561, 68 S. Ct. 240, 92 L. Ed. 170 (1947).. . . . . . . . . . . . . . . . . . . . .  6

*Mayes v. Gibson*,
11     210 F.3d 1284 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

12

*McNeal v. Culver*,
13     365 U.S. 109, 81 S. Ct. 413, 5 L. Ed. 2d 445 (1961). . . . . . . . . . . . . . . . . . .  33

*Miller-El v. Cockrell*,
14     537 U.S.  322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).  . . . . . . . . .  1, 12, 13

15

*Miller-El v. Dretke*,
16     545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005). . . . . . . . . . . . . . .  13

*Nunes v. Mueller*,
17     350 F.3d 1045 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 10, 33, 36

18

*Ortiz v. Stewart*,
19     149 F.3d 923 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Panetti v. Quarterman*,
20     551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007). . . . . . . . . . . . . . *passim*

21

*Pennsylvania ex rel. Herman v. Claudy*,
22     350 U.S. 116, 76 S. Ct. 223, 100 L. Ed. 2d 126 (1956). . . . . . . . . . . . . . . . .  34

*Phillips v. Woodford*,
23     267 F.3d 966 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

24

*Pinholster v. Ayers*,
25     590 F.3d 651 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Porter v. McCollum*,
26     __ U.S. __, 130 S. Ct. 447, 175 L .Ed. 2d 398 (2009). . . . . . . . . . . . . . . *passim*

27

*Rees v. Peyton*,
28     384 U.S. 312, 86 S. Ct. 1505, 16 L. Ed. 2d 583 (1966). . . . . . . . . . . . . . . . .  32

iii

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**                                                                 **PAGE(S)**

3

*Remmer v. United States,*
      347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954)................... 27, 28

4

*Rhines v. Weber,*
      544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005)............... 22

5

6

*Rompilla v. Beard,*
      545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005)............ 14, 27

7

*Schriro v. Landrigan,*
      550 U.S. 465, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007)...... 14, 16, 19, 23

8

9

*Siripongs v. Calderon,*
      35 F.3d 1308 (9th Cir. 1994). ...................................... 25

10

*Smith v. Phillips,*
      455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)............... 27, 28

11

12

*Smith v. Robbins,*
      528 U.S. 259, 120 S. Ct. 746, 145 L. Ed. 23d 756 (2000)............. 2, 10

13

*Strickland v. Washington,*
      466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)............. 14, 17

14

*Taylor v. Maddox,*
      366 F.3d 992 (9th Cir. 2004). ................................ *passim*

15

16

*Tice v. Johnson,*
      __ F.3d __, 2011 WL 1491063 (4th Cir. 2011). ...................... 37

17

18

*Townsend v. Sain,*
      372 U.S. 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963). ............... 16, 19, 35, 36

19

*Wellons v. Hall,*
      __ U.S. __, 130 S. Ct. 727, 175 L. Ed. 2d 684 (2010). ............... 15, 19

20

21

*Wiggins v. Smith,*
      539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)............... 12

22

*(Michael) Williams v. Taylor,*
      529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000)........... *passim*

23

24

*(Terry) Williams v. Taylor,*
      529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)........... *passim*

25

*Winston v. Kelly,*
      592 F.3d 535 (4th Cir. 2010). ...................................... 3

26

27

28

iv

# TABLE OF AUTHORITIES

**STATE CASES**                                                    **PAGE(S)**

*Aguilar v. Atlantic Richfield Co.*,
    25 Cal. 4th 826, 24 P.3d 493, 107 Cal. Rptr. 2d 841 (2001). . . . . . . . . . .  30, 32

*Board  of Prison Terms v. Superior Court*,
    130 Cal. App. 4th 1212, 31 Cal. Rptr. 2d 70 (2005). . . . . . . . . . . . . . . . . . .  31

*Durdines v. Superior Court*,
    76 Cal. App. 4th 247, 90 Cal. Rptr. 2d 217 (1999). . . . . . . . . . . . . . . . . . . .  32

*In re Hochberg*,
    2 Cal. 3d 870, 87 Cal. Rptr. 681 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

*In re Lawler*,
    23 Cal. 3d 190, 588 P.2d 1257, 151 Cal. Rptr. 833 (1979). . . . . . . . . . . . . . .  30

*In re Lewallen*,
    23 Cal. 3d 274, 590 P.2d 383, 152 Cal. Rptr. 528 (1979). . . . . . . . . . . . . . .  29

*People v. Clark*,
    3 Cal. 4th 41, 833 P.2d 561, 10 Cal. Rptr. 2d 554 (1992). . . . . . . . . . . . . . . .  5

*People v. Duvall*,
    9 Cal. 4th 464, 886 P.2d 1252, 37 Cal. Rptr. 2d 259 (1995). . . . .  30, 31, 32, 33

*People v. Frierson*,
    25 Cal. 3d 142, 599 P.2d 587, 158 Cal. Rptr. 281 (1979). . . . . . . . . . . . . . .  36

*People v. Gonzalez*,
    51 Cal. 3d 1179, 275 Cal. Rptr. 729 (1990). . . . . . . . . . . . . . . . . . . . . . . . . .  31

*People v. Kraft*,
    23 Cal. 4th 978, 5 P.3d 68, 99 Cal. Rptr. 2d 1 (2000). . . . . . . . . . . . . .  6, 26, 27

*People v. Marsden*,
    2 Cal. 3d 118, 465 P.2d 44, 84 Cal. Rptr. 156 (1970). . . . . . . . . . . . . .  3, 5, 6, 9

*People v. Pacini*,
    120 Cal. App. 3d 877, 174 Cal. Rptr. 820 (1981). . . . . . . . . . . . . . . . . . . . .  30

*People v. Romero*,
    8 Cal. 4th 728, 883 P.2d 388, 35 Cal. Rptr. 2d 270 (1994). . . . . . . . . . .  30, 31

*Quinn v. City of Los Angeles*,
    84 Cal. App. 4th 472, 100 Cal. Rptr. 2d 914 (2000). . . . . . . . . . . . . . . .  30, 32

*In re Robbins*,
    18 Cal. 4th 770, 959 P.2d 311, 77 Cal. Rptr. 2d 153 (1998). . . . . . . . . . . . . .  33

*In re Serrano*,
    10 Cal. 4th 447, 895 P.2d 936, 41 Cal. Rptr. 2d 695 (1995). . . . . . . . . . .  30, 37

1

# TABLE OF AUTHORITIES

2

**DOCKETED CASES**                                                  **PAGE(S)**

3

*In re Kraft,*
       CSC Case No. S094682. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9

4

5

**FEDERAL STATUTES**

6

28 U.S.C. § 2241. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7

28 U.S.C. § 2243. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8

28 U.S.C. § 2246. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9

28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

10

Fed. R. of Civ. Pro., Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

11

12

**STATE STATUTES**

13

Cal. Penal Code § 1470. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

14

Cal. Penal Code § 1484. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

15

Cal. Penal Code § 1476. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

16

Cal. Rule of Ct., Rule 4.551 (c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.**    **SUMMARY OF ARGUMENT**

2        Petitioner Randy Kraft files this brief in response to the Court's April 12, 2011

3 order requesting that Kraft file a supplemental brief addressing whether an

4 evidentiary hearing is warranted in light of *Cullen v. Pinholster*, 563 U.S. ___, 131 S.

5 Ct. 1388, 179 L. Ed. 557 (2011).  (Doc. 178.)[2]  *Pinholster's* gloss on 28 U.S.C. §

6 2254(d)(1)[3] does not prevent this Court from granting Kraft an evidentiary hearing to

7 develop facts and present evidence to prove he is in custody in violation of the

8 Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).

9        Because the claims on which Kraft seeks an evidentiary hearing were either (1)

10 not adjudicated on the merits, (2) to the extent they were adjudicated, such

11 adjudication "resulted in a decision that was contrary to, or involved an unreasonable

12 application of, clearly established Federal law," or (3) "resulted in a decision that was

13 based on an unreasonable determination of the facts in light of the evidence presented

14 in the State court proceeding," § 2254(d), Kraft is entitled to an evidentiary hearing

15 for this Court to resolve Kraft's claims *de novo*.  *Panetti v. Quarterman*, 551 U.S.

16 930, 127 S. Ct. 2842, 2859, 168 L. Ed. 2d 662 (2007); *Frantz v. Hazey*, 533 F.3d 724,

17 735-36 (9th Cir. 2008) (en banc).

18        Furthermore, while § 2254 of the AEDPA[4] imposes a "constraint on the power

19 of a federal habeas court to grant a state prisoner's application for a writ of habeas

20 corpus," (*Terry*) *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L.

21 Ed. 2d 389 (2000), this limitation does not "imply abandonment or abdication of

22 judicial review," or "by definition preclude relief."  *Miller-El v. Cockrell*, 537 U.S.

23

24       [2] Pleadings on file with this Court will be cited by ECF docket number (e.g.,
Doc. 1 at [page number]).  "RT" and "CT" refer, respectively, to the reporter's

25 transcript and clerk's transcript from Kraft's Orange County trial, unless otherwise
noted.

26

27       [3] Unless otherwise noted, all subsequent references are to sections of Title 28
of the United States Code.

28       [4] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

1  322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003).  On the contrary, the

2  Constitution, fairness, and the AEDPA scheme all dictate that a federal court review

3  the state court's legal determinations *de novo* in Kraft's case because the state court's

4  procedural tools for developing a factual record were not adequate either to ascertain

5  the truth or to resolve his constitutional claims correctly.  *Panetti*, 551 U.S. at 954.

6      As demonstrated by the allegations in Petitioner's First Amended Petition for

7  Writ of Habeas Corpus ("FAP"), the evidence already before the Court in support of

8  those allegations, the state court record, and Petitioner's Amended Motion for

9  Evidentiary Hearing (Doc. 164), Kraft is entitled to the fact development procedures

10  and the evidentiary hearing of which he was deprived unreasonably in state court.

11      In spite of  Kraft's exhaustive *pro se* efforts to alert the state court that he had

12  been abandoned by appellate and state habeas counsel, the state failed to provide

13  Kraft a procedure that "afford[ed] adequate and effective appellate review" since the

14  state failed to reasonably ensure that Kraft's appeal was resolved in a way that related

15  to the merits of that appeal.  *Smith v. Robbins*, 528 U.S. 259, 276-77, 120 S. Ct. 746,

16  145 L. Ed. 23d 756 (2000).  Furthermore, because the state denied Kraft's *pro se*

17  objections to the state habeas petition submitted by counsel while simultaneously

18  denying such petition, thus making credibility determinations and evidentiary

19  findings "without holding a hearing and giving petitioner an opportunity to present

20  evidence, such findings clearly result[ed] in an 'unreasonable determination' of the

21  facts."  *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004); *Nunes v. Mueller*, 350

22  F.3d 1045, 1055 (9th Cir. 2003); *Hurles v. Ryan*, 2011 WL 2641287, *8 (9th Cir. July

23  7, 2011) ("We have repeatedly held that where a state court makes factual findings

24  without an evidentiary hearing or opportunity for the petitioner to present evidence,

25  'the fact -finding process itself is deficient' and not entitled to deference." (quoting

26  *Taylor v. Maddox*, 366 F.3d at 1001)).

27      The Supreme Court's recent decision in *Pinholster*, as applied to the state's

28  appellate and post-conviction processes and inquiry in this case, does not curtail the

2

1   Court's power to grant an evidentiary hearing and relief on Kraft's claims.  Where, as

2   here, the state court declines "the first opportunity" to "correct any constitutional

3   violation," *Pinholster*, 131 S. Ct. at 1401, federal principles of comity, federalism,

4   and finality "do not require deference."  *Winston v. Kelly*, 592 F.3d 535, 553 (4th Cir.

5   2010).

6        As demonstrated below, Kraft remains as entitled to an evidentiary hearing

7   today as he was before the Supreme Court decided *Pinholster*.  Kraft's position is

8   clear, powerful and unaffected by *Pinholster*:  First, because the California Supreme

9   Court denied Kraft's *pro se* pleadings while simultaneously denying the petition filed

10  by counsel, the state court decision resulted in an unreasonable determination of the

11  fact.  Furthermore, because the California Supreme Court never provided him with a

12  full and fair opportunity to develop facts concerning counsel's abdication of their

13  duty to Kraft – facts which Kraft diligently presented to the state court – several key

14  factual issues remain in dispute.  Long established standards for granting an

15  evidentiary hearing under AEDPA – standards which still hold true post-*Pinholster* –

16  provide Kraft with access to an evidentiary hearing to resolve such disputes.

17  **II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

18       In Orange County, California, in September of 1983, Kraft was charged with

19  the capital offenses now at issue.  (1 CT 4.)  On August 6, 1984, as the result of a

20  hearing pursuant to *People v. Marsden*, 2 Cal.3d 118, 465 P.2d 44, 84 Cal. Rptr. 156

21  (1970), Douglas Otto was relieved as Kraft's counsel.  Previously appointed co-

22  counsel, James G. Merwin, remained as Kraft's counsel.  (1 CT 419.)  From this point

23  on, and through both phases of trial and entry of a death sentence, Kraft was

24  represented by C. Thomas McDonald, James G. Merwin and William Kopeny.

25       On November 16, 1992, the California Supreme Court appointed Richard

26  Power to represent Kraft on his automatic direct appeal and state habeas proceedings.

27

28

1   (Ex. 88.)[5]  On January 29, 1993, the same court appointed Elizabeth Barranco as
2   associate counsel to represent Kraft on his automatic appeal and any related habeas
3   proceedings.  (Ex. 89.)

4   　　　As Kraft diligently informed the state court, from the outset of their
5   appointment (Ex. 95), state appointed counsel refused to make himself "available to
6   assist in preparing and submitting a brief to the appellate court . . . and  . . . play the
7   role of an active advocate, rather than a mere friend of the court assisting in a
8   detached evaluation of appellant's claim."  *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.
9   Ct. 830, 83 L. Ed. 2d 821 (1985).

10   　　　While Kraft continued alerting the state court to counsel's abandonment. (*See*
11   Ex. 95), state appointed counsel's response was to dismiss Kraft's complaints as the
12   product of a mentally ill individual, going as far as requesting the appointment of a
13   Guardian ad Litem (Ex. 90 (Letter/Confidential application to Court from Power
14   Regarding Guardian ad Litem request, dated March 26, 1993).  The state court,
15   however, summarily denied counsel's request for appointment of a Guardian ad Litem
16   to represent Kraft's interests. (Ex. 91 (Order denying Confidential Request to File
17   Motion for Guardian Ad Litem, dated April 28, 1993), Ex. 94 (Order Denying Motion
18   to Direct Psychologist to Reduce Psychological Findings to a Writing, filed Jun 17,
19   1998.)  Power continued threatening Kraft with seeking the appointment of a
20   Guardian ad Litem even though the state court had already denied Power's request:

21   　　　　　What will I do with all the nonsense you generate?
22   　　　　　Probably attach it to a petition to have a guardian appointed
23   　　　　　for you.  All of it will make nice exhibits.  Then the
24   　　　　　guardian will take over on your behalf and execute
25   　　　　　authorizations and handle all matters on your behalf.  You

26   _____

27   　　　[5]  Exhibits attached to this brief are numbered continuously from the exhibits
     previously filed in this case concerning Kraft's FAP.  (Doc. 78-91, 125, 127, 160 and
28   164.)

1    will be out of the picture entirely.

2    (Ex. 67, Letter from Power to Kraft, dated June 20, 1995, at 03203.)

3        In 1997, ignored by the state court, Kraft sought assistance from the federal

4    courts to protect his right to effective assistance of appellate counsel. (*Kraft v.*

5    *Calderon*, USDC, Central District of Cal, Case No. CV 97-8141.)  Since Kraft's state

6    appeal was then pending, the district court dismissed without prejudice Kraft's claim

7    that counsel was performing his duties in a constitutionally deficient manner as

8    unexhausted as a matter of law.  (Ex. 92 (Amended and Final Report and

9    Recommendation, Case No. CV 97-8141) at 3-4; Ex. 93 (Order Approving Amended

10   Final Report and Recommendation.)  While denying Kraft's *pro se* federal petition,

11   the federal court noted:

12            [I]t is not likely that petitioner will be irreparably harmed

13            due to appellate counsel's alleged abandonment of any

14            claims because, if appellate counsel's actions constitute

15            constitutionally inadequate assistance, petitioner will be in a

16            position to 'demonstate cause for the default and actual

17            prejudice as a result of the alleged violation of federal law.'

18            Coleman v. Thompson, 501 U.S. 722, 750 (1991).

19   (Ex. 92 at 4 n.1.)

20       Kraft thus returned to state court where he continued to document the break-

21   down of communication between he and counsel.  (Ex. 95.)  Kraft's multiple

22   pleadings regarding representation were properly filed under state law pursuant to

23   *People v. Clark*, 3 Cal. 4th 41, 173, 833 P.2d 561, 10 Cal. Rptr. 2d 554 (1992) (citing

24   *Marsden*, 2 Cal.3d 118 (1970)).[6]  On April 12, 2000, without affording Kraft "an

25   _____

26       [6] When Kraft attempted to raise claims not raised by Power on direct appeal,
     the state court chastised Kraft for venturing to file the claims his appellate counsel
27   refused to raise.  (Ex. 81.)  Although Kraft understands this Court has already ruled
     on the issue of exhaustion, Kraft points to Exhibit 81 again to allege that to the extent
28   he failed to present certain claims to the state court, he was prevented from doing so

opportunity to present argument or evidence in support of his contention," *Marsden*, 2 Cal. 3d at 124, the state court summarily denied Kraft's multiple requests to substitute appellate counsel.  (Ex. 72, 96.)  On August 10, 2000, the state court affirmed the judgment against Kraft in full.  *People v. Kraft*, 23 Cal. 4th 978, 5 P.3d 68, 99 Cal. Rptr. 2d 1 (2000).

On January 25, 2001, state counsel filed a state habeas petition consisting of 34 pages, including all tables and certifications.  (Petition for Writ of Habeas Corpus, *In re Kraft*, CSC Case No. S094682.)  The petition internally admitted that it was incomplete and that counsel were not currently in a position to file an appropriate habeas petition raising all available claims.  The petition alleged at most six claims.[7]

The state habeas process further underscores the extent to which counsel's bickering with each other, and the extent to which interpersonal disputes between Barranco and Power, apparently over money, guided counsel's inability, or

---

by the state court itself and by the ineffective assistance of state appointed counsel who performed the role of both appellate and state habeas counsel.  *Marino v. Ragen*, 332 U.S. 561, 564, 68 S. Ct. 240, 92 L. Ed. 170 (1947) (Rutledge, J., concurring) (cited approvingly in *Granberry v. Greer*, 481 U.S. 129, 136 n.8, 107 S. Ct. 1671, 95 L. Ed. 2d 119 (1987) (exhaustion not required "whenever it may become clear that the alleged state remedy is nothing but a procedural morass offering no substantial hope of relief"); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also* 28 U.S.C. § 2254(b)(1)(B).

[7]  Those claims included:

- Trial counsel was ineffective in failing to properly investigate and present evidence relating to Petitioner's psychosis;
- Petitioner was denied the right to full consideration of all mitigating evidence by his sentencing jury;
- Petitioner's counsel allowed their concern with maintaining Petitioner as a client to conflict with their duty to investigate all potential defenses and mitigating evidence;
- Petitioner is incompetent and unable to properly assist counsel;
- Petitioner has been denied due process in that there has been insufficient time and money to investigate all potential alternate suspects; and
- Newly discovered evidence regarding Petitioner's mental defects undermines the guilt and penalty determinations made by his jury.

unwillingness, to fulfill their obligations to Kraft.  As well documented before the California Supreme Court, over the course of their representation of Kraft, Power and Barranco engaged in extremely unprofessional behavior and cross-allegations regarding the failings of each counsel to comply with their obligations.  (*See* Ex. 97 (Request of Associate Counsel Elizabeth Barranco to Be Paid or Relieved, dated February 28, 2001); Ex. 98 (Joinder in Request to Relieve Associate Counsel of Appointment, dated March 2, 2001); Ex. 99 (Responsive Declaration of Associate Counsel in Support of Request to be Paid and Relieved, dated March 5, 2001); Ex. 100 (March 28, 2001 Order Granting Permission to Withdraw as Counsel).)

On April 2, 2001, while counsel disputed their respective obligations to Kraft, Kraft filed with the state court a request to withdraw the incomplete petition filed by state counsel, and to renew his request to appoint new counsel for the preparation and filing of an appropriate state habeas petition.  (Ex. 82, (Petitioner's Pro Per Brief in Support/Opposition), at 03716-32.)

On April 25, 2001, the state court "directed" the clerk of the state court to "ask" Power, as Kraft's only attorney of record since the court had granted counsel's motion to relieved associate counsel Barranco, to "respond confidentially" to Kraft's request to withdraw the state petition filed by counsel.  (Ex. 82, at 03714.)[8] Simultaneously, the state court "directed" the clerk of the court to "request that the California Appellate Project ["CAP"] send one or more attorneys to confer" with Kraft.  (*Id*. at 03713.)  Similarly, the clerk of the court informed Kraft of its request to CAP, and that following that conference with CAP, Kraft was to inform the court whether Kraft continued to seek dismissal of the petition filed by counsel.  (*Id*. at 03712.)

On April 30, 2001, the same date that Power filed his informal reply to the

---

[8]  Although Kraft's request to withdraw the petition is reflected as filed in the court's docket, the clerk of the court's letter to counsel and Kraft, as well as their respective responses, are not reflected on the court's docket.  *See* Ex. 104.

state's informal response, Power "confidentially comment[ed]" on Kraft's request to withdraw the petition filed by counsel.  In his letter, Power basically reiterated the allegations made on his petition that Kraft was mentally ill:

> Thank you for the invitation to confidentially comment on Mr. Kraft's opposition to the habeas petition filed on his behalf.  I am not aware of any false allegations or any violations of evidentiary privileges but that is not to say that Mr. Kraft does not believe what he is saying. The fundamental problem here is that Mr. Kraft is mentally ill. To fully understand the significance of what he has written recently and in his many previous writings, one must take into account the overriding fact that he is delusional. While the total diagnostical picture has been elusive due to Mr. Kraft's refusal to submit to any further psychiatric or psychological testing, the picture that has emerged is one of a probable paranoid-schizophrenic individual.

(Ex. 101 (Letter from Power to Clerk of the Supreme Court re Kraft's request to withdraw petition filed by counsel, dated April 30, 2001).)

On May 21, 2001, the Capital Appellate Project responded to the request from the clerk of the court.  (Ex. 102 (Letter from Steven W. Parnes, CAP Staff Attorney, to the state court, dated May 21, 20010).)  Parnes informed the court he met with Kraft, who "was cordial and seemed very interested in, and concerned about, the procedural issues we discussed." (*Id*.)

On May 24, 2001, Kraft informed the court of his conference with Parnes from CAP, and asked the court to hold the petition filed by counsel in abeyance, rather than withdraw it, and appoint new habeas counsel to file an adequate petition.  (Ex. 82 (Letter from Kraft to Mary Jameson, Automatic Appeals Unit Supervisor, Supreme Court of California, dated May 24, 2001) at 03708.)  Kraft proceeded to factually

dispute the allegations made by Power in Power's letter to the clerk of the court:

> In making this qualified request I want to make several points very clear:
>
> 1.  As set forth in my <u>Marsden</u> motions, supplements and addenda thereto, and for additional reasons revealed by the conduct of counsel before this Court, I have not enjoyed the assistance of counsel before this Court as contemplated by the Sixth Amendment.
>
> 2.  At no time have I requested the unconditional dismissal of my state habeas corpus petition or in any way evidenced a desire to forego vigorous presentation of all meritorious issues whether on appeal or in the state habeas corpus petition.
>
> 3.  I have never been unreasonable and uncooperative with counsel, nor have I ever tried to thwart counsels' reasonable efforts on my behalf, and I have never asked or told any other person to do so.
>
> 4.  I have never canceled any scheduled visit at San Quentin, and I have never refused to meet with anyone who came to San Quentin to meet with me.
>
> 5.  I have never threatened any psychologist, psychiatrist or investigator with a lawsuit, or in any way at all, and I have never refused to communicate, cooperate, meet or work with such persons.

(*Id.*, at 03709.)

On July 17, 2002, the state court denied Kraft's request to hold the petition filed by counsel in abeyance as well as his request for new counsel.  (Ex. 82, at 03707.)  On the same day, the state court summarily denied the petition filed by

counsel:

> The petition for writ of habeas corpus, filed on January 25, 2001, is denied. All claims, including all subclaims, are denied on the merits. To the extent the petition alleges petitioner is incompetent to be executed, it is denied as premature. (Ford v. Wainwright (1986) 477 U.S. 399, 408-409.)

(Ex. 103.)

In denying Kraft's requests for substitution of appellate counsel while his appeal was pending without affording Kraft an opportunity to present argument or evidence in support of his contentions, as required under state law, the state court failed to provide a procedure that reasonably ensured that Kraft's appeal would be resolved in a way that was related to the merits of the appeal, as articulated in *Smith*, 528 U.S. at 276. In denying Kraft's request to hold the state petition in abeyance and his request to appoint new state habeas counsel, because the state court made credibility determinations and evidentiary findings "without holding a hearing and giving petitioner an opportunity to present evidence," such findings clearly result in an 'unreasonable determination' of the facts. *Taylor v. Maddox*, 366 F.3d at 1001; *Nunes v. Mueller*, 350 F.3d at 1055.

As Kraft has thus satisfied § 2254(d), *Pinholster* does not thwart Kraft's entitlement to an evidentiary hearing. *Pinholster*, 131 S. Ct. at 1400.

## III. *PINHOLSTER* DOES NOT IMPACT KRAFT'S ENTITLEMENT TO AN EVIDENTIARY HEARING

To assess the effect and relevance on *Pinholster* to Kraft's entitlement to an evidentiary hearing, the *Pinholster* decision must be viewed in the appropriate context, which includes an overview of the AEDPA, the facts of *Pinholster*, what *Pinholster* held and did not hold, and the process afforded by California -- both in the *Pinholster* decision and in Kraft's case.

### A. Overview Of AEDPA

The adjudication of Kraft's federal habeas petition is governed by 28 U.S.C. § 2254, a provision of the AEDPA. Section 2254 concerns the adjudication of petitions brought by prisoners, such as Kraft, who are in custody pursuant to the judgment of a state court, but seek relief from a federal court on the basis that their custody violates "the Constitution or laws or treaties of the United States." § 2254(a).

Section 2254 "is not itself a grant of habeas authority, let alone a discrete and independent source of post-conviction relief." *Frantz v. Hazey,* 533 F.3d at 735. Rather, § 2254 "implements and limits the authority granted to federal courts through § 2241 for "persons in custody pursuant to the judgment of a State court." *Id*. at 736. As amended by AEDPA, § 2254 "sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Pinholster*, 131 S. Ct. at 1398. At issue in this brief are the limits placed by § 2254(d), which constraints a federal court's authority to grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings, unless the State court's adjudication of the claims *either*

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; *or*
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) (emphasis added).

As is plain from the language of the statute, a petitioner may overcome § 2254(d)'s constraints in any one of multiple ways. Under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law *or* if the state

court decides a case differently that this Court has on a set of materially

indistinguishable facts." (*Terry*) *Williams*, 529 U.S. at 413 (emphasis added.)

Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas

court may grant the writ if the state court identifies the correct governing legal

principle from [the Supreme] Court's decision but unreasonably applies that principle

to the fact of the prisoner's case." *Id*. The reasonableness standard is an objective

one, and the Supreme Court has warned that federal courts should not be misled by

references in some case law to terms such as "all reasonable jurists" into thinking that

the state court's decision is reasonable just because "at least one of the Nation's

jurists has applied the relevant federal law in the same manner as the state court did."

*Id*. at 409-10. Under this latter path, facts indistinguishable from the relevant

Supreme Court precedent are not required. *See Wiggins v. Smith*, 539 U.S. 510, 520,

123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) ("[A] federal court may grant relief when a

state court has misapplied a 'governing legal principle' to 'a set of facts different

from those of the case in which the principle was announced.'").

For purposes of § 2254(d)(1), clearly established Federal law refers to the

holdings of Supreme Court decisions as of the time of the relevant state-court

decision. *Terry Williams*, 529 U.S. at 412. In determining whether a petitioner has

satisfied § 2254(d)(1), a federal court's review is "limited to the record that was

before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct.

at 1398. The purpose of this limitation is to ensure that habeas petitioners make a

diligent effort to pursue their claims in state court. *Id*. at 1401.

As an alternative to § 2254(d)(1), a petitioner may overcome § 2254(d)'s

constraint on relief by demonstrating that the state court's decision was based on a

factual determination that was "objectively unreasonable in light of the evidence

presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340,

123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing § 2254(d)(2)). The state court's

factual determinations may be objectively unreasonable for purposes of § 2254(d)(2)

12

1  under various circumstances, including the state court's failure to make a necessary

2  finding of fact, making factual findings under a misapprehension of the correct legal

3  standard, use of a defective fact-finding process, plain misapprehension or misstating

4  of the record, or ignoring evidence that supports the petitioner's claim. *Taylor v.*

5  *Maddox*, 366 F.3d 992, 1000-01 (9th Cir. 2004).

6      Because federal habeas petitions brought by state prisoners implicate concerns

7  about federalism, § 2254(d) is "designed to confirm that state courts are the principal

8  forum for asserting constitutional challenges to state convictions." *Harrington v.*

9  *Richter*, ___ U.S. ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).  This design

10 presumes, however, that the state courts provide an adequate forum for full and fair

11 adjudication of such challenges.  *Cf. Panetti v. Quarterman*, 551 U.S. 930, 953-54,

12 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007) (finding that § 2254(d) posed no bar to

13 relief when the state's adjudicative procedures were so inadequate as to amount to an

14 antecedent unreasonable application of the relevant federal law).  AEDPA itself has

15 not limited the availability of the great writ in instances where the process afforded

16 by a state to a prisoner is inadequate or otherwise fails to provide a remedy for a

17 federal constitutional violation.  In those instances, the federal writ continues to

18 "stand[] as a safeguard against imprisonment of those held in violation of the law.

19 *Richter*, 131 S. Ct. at 780.  "Even in the context of federal habeas, deference does not

20 imply abandonment or abdication of judicial review," nor does it "preclude relief."

21 *Miller-El v. Cockrell*, 537 U.S. at 340.  To achieve this balance, the standards

22 embodied in § 2254 are "demanding but not insatiable."  *Miller-El v. Dretke*, 545

23 U.S. 231, 240, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005).  Accordingly, federal

24 courts "must be vigilant and independent in reviewing petitions for the writ."

25 *Richter*, 131 S. Ct. at 780.

26      Finally, where a state court fails to adjudicate a claim on its merits, § 2254(d)

27 does not operate as a constraint on this Court's ability to independently assess the

28 merits of a petitioner's claims.  *Pinholster*, 131 S. Ct. at 1400 ("In fact, only one

claim at issue in [(*Michael*) *Williams v. Taylor*, 529 U.S. 420, 429, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000)] was even subject to § 2254(d); the rest had not been adjudicated on the merits in state-court proceedings.); *Porter v. McCollum*, __ U.S. __, 130 S. Ct. 447, 452, 175 L .Ed. 2d 398 (2009) (per curiam) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's *Strickland* claim *de novo*."); *Cone v. Bell*, __ U.S. __, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' 28 U.S.C. § 2254(d). Instead, the claim is reviewed de novo."); *Rompilla v. Beard*, 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland* claim de novo." (internal citation omitted)).

### B. Evidentiary Hearings Under AEDPA

Separate and apart from § 2254(d) is § 2254(e)(2), a provision that exclusively applies to evidentiary hearings. As the Supreme Court explained in *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007), prior to AEDPA, the decision to grant an evidentiary hearing was left to the "sound discretion" of district courts. While AEDPA did not change that "basic rule," *id*., section 2254(e)(2) added new requirements for petitioners who have "failed to develop the factual basis of a claim in State court proceedings." *Michael Williams*, 529 U.S. at 424.

Under *Michael Williams*, a petitioner fails to develop the factual basis of a claim only when "there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. If the petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court," the diligence requirement is satisfied and the decision to grant

1   an evidentiary hearing falls to the discretion of the district court.  *Id.* at 435.

2   "Diligence will require in the usual case that the prisoner, at a minimum, seek an

3   evidentiary hearing in state court in the manner prescribed by state law."  *Id.* at 437.

4   "[C]omity is not served by saying a prisoner 'has failed to develop the factual basis of

5   a claim' where he was unable to develop his claim in state court despite diligent

6   effort.  In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2)."

7   *Id.*  Thus, "[i]f there has been no lack of diligence at the relevant stages in the state

8   proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s

9   opening clause, and he will be excused from showing compliance with the balance of

10  the subsection's requirements."  *Id.*; *see also id.* at 435 ("[O]nly a prisoner who has

11  neglected his rights in state court need satisfy th[o]se conditions [of § 2254(e)(2)(A)

12  and (B)].").

13      The Supreme Court further explained that "[i]n deciding whether to grant an

14  evidentiary hearing, a federal court must consider whether such a hearing could

15  enable an applicant to prove the petition's factual allegations, which, if true, would

16  entitle the applicant to federal habeas relief," taking into the account § 2254(d)'s

17  limits on the grant of habeas relief.  *Id.* at 474.

18      *Pinholster* explicitly did not decide "whether a district court may ever choose

19  to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied."

20  *Pinholster*, 131 S. Ct. at 1411 n.20.  Consequently, it remains correct that "AEDPA

21  does not require a federal habeas court to adopt any one methodology in deciding"

22  section 2254(d)(1) issues.  *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S . Ct. 1166,

23  1172, 155 L. Ed. 2d 144 (2003).  Thus, neither *Pinholster* nor any other authority

24  requires this Court to make a 2254(d) determination before granting an evidentiary

25  hearing.  In fact, just last year, the Supreme Court warned federal habeas courts not to

26  conflate 2254(d) and evidentiary hearing standards.  *Wellons v. Hall*, __ U.S. __, 130

27  S. Ct. 727, 730, 175 L. Ed. 2d 684 (2010) (explaining that the decision to grant an

28  evidentiary hearing is analytically distinct from the decision to grant relief).

1    The Ninth Circuit issued a detailed analysis of the application of § 2254(e)(2)

2  in *Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005).  In *Earp*, decided after *Michael*

3  *Williams* but before *Landrigan*, the Ninth Circuit explained that Supreme Court

4  authority

5                establishes that a defendant is entitled to an evidentiary

6                hearing if he can show that:  (1) the merits of the factual

7                dispute were not resolved in the state hearing; (2) the state

8                factual determination is not fairly supported by the record as

9                a whole; (3) the fact-finding procedure employed by the

10               state court was not adequate to afford a full and fair hearing;

11               (4) there is a substantial allegation of newly discovered

12               evidence; (5) the material facts were not adequately

13               developed at the state-court hearing; *or* (6) for any reason it

14               appears that the state trier of fact did not afford the habeas

15               applicant a full and fair hearing.

16  *Id*. at 1166 (emphasis added) (citing *Townsend*, 372 U.S. 293, 313, 83 S. Ct. 745, 9 L.

17  Ed. 2d 770 (1963)).

18      The *Earp* court continued:  "[i]f the defendant can establish any one of those

19  circumstances, then the state court's decision was based on an unreasonable

20  determination of the facts and the federal court can independently review the merits

21  of that decision by conducting an evidentiary hearing."  *Id*. at 1167; *see also Taylor v.*

22  *Maddox*, 366 F.3d at 1001 ("If, for example, a state court makes evidentiary findings

23  without holding a hearing and giving petitioner an opportunity to present evidence,

24  such findings clearly result in an 'unreasonable determination' of the facts.").

25  "Accordingly, where the petitioner establishes a colorable claim for relief and has

26  never been afforded a state or federal hearing on this claim, we must remand to the

27  district court for an evidentiary hearing."  431 F.3d at 1167 (internal footnote

28  omitted).  Kraft satisfies this test, as shown in his motion for evidentiary hearing.

16

1   (Doc. 119 at 32; *see also* at 9, 29.)

2        **C.    The Scope And Context Of *Pinholster***

3             **1.   *Pinholster* Is A § 2254(d)(1) Case, And The Opinion Merely**

4                  **Clarifies The Scope Of Review Under § 2254(d)(1)**

5        In *Pinholster*, the Supreme Court addressed a narrow issue in a distinct factual

6   situation – namely, "whether review under § 2254(d)(1) permits consideration of

7   evidence introduced in an evidentiary hearing before the federal habeas court."  131

8   S. Ct. at 1398.  The history of the case is informative as to the limited scope of the

9   issue.

10       After exhausting his habeas petition in state court, Scott Lynn Pinholster

11  sought and was granted an evidentiary hearing in the district dourt to develop the

12  factual basis for his claim that his counsel was ineffective during the penalty phase of

13  his trial.  *Pinholster*, 131 S. Ct. at 1396-97.  During the hearing, Pinholster presented

14  two medical experts, Drs. Sophia Vinogradov and Donald Olson.  *Id*. at 1397.

15  Importantly, according to the Supreme Court, Pinholster had never presented this

16  evidence in state court.  *Id*.  Relying in part on Drs. Vinogradov's and Olson's

17  testimony, the district court granted Pinholster relief.  *Id*.

18       On rehearing en banc, the Ninth Circuit affirmed.  *See Pinholster v. Ayers*, 590

19  F.3d 651, 662 (9th Cir. 2009), *reversed by Cullen v. Pinholster*, 131 S. Ct. 1388, 179

20  L. Ed. 2d 557 (2011).  Critically, the Ninth Circuit determined that, even though

21  Pinholster had never presented Drs. Vinogradov and Olson's testimony to the state

22  court, the Ninth Circuit could nevertheless consider it when reviewing, under §

23  2254(d)(1), the reasonableness of the state court's decision.  *See* 590 F.3d at 666-69.

24  Taking that evidence into account, the Ninth Circuit concluded that the California

25  Supreme Court unreasonably applied *Strickland v. Washington*, 466 U.S. 668, 104 S.

26  Ct. 2052, 80 L. Ed. 2d 674 (1984), when it denied Pinholster's ineffective assistance

27  of counsel claim.

28       On review, the Supreme Court reversed, finding that the Ninth Circuit erred in

its § 2254(d)(1) analysis. According to the Supreme Court, when a federal court reviews a claim under § 2254(d)(1), "the record under review is limited to the record in existence at that same time – i.e., the record before the state court." *Pinholster*, 131 S. Ct. at 1398. Because *Pinholster* had never presented Drs. Vinogradov and Olson's testimony to the state court, the Ninth Circuit never should have considered that evidence when determining whether the state court decision was an "unreasonable application" of clearly established federal law. *Id.*

Thus, *Pinholster* did nothing more than clarify the confusion surrounding the scope of review under § 2254(d)(1). Prior to *Pinholster*, it was unclear whether evidence developed at an evidentiary hearing could be used in a § 2254(d)(1) analysis. Following *Pinholster*, however, the procedure is clear: "[R]eview under § 2254(d)(1) focuses on what a state court knew and did . . . . [and] is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1399-1400. In California cases, that factual record against which the reasonableness of the state court's adjudication is judged includes the allegations of the state pleadings, their exhibits, and the record on appeal. *See id*. at 1402-03 and n.12. This is the sum total of *Pinholster*'s holding. And, as shown below, this holding's effects are limited.

## 2. *Pinholster* Has No Impact On The Existing Law Regarding Evidentiary Hearings Mandatory And Discretionary Hearings And § 2254(e)

As detailed above, under AEDPA, an evidentiary hearing is required on a claim if (1) the petitioner did not fail to develop the factual basis of the claim in state court; (2) the state court denied the petitioner a full and fair opportunity to develop the facts in support of the claim; and (3) the petitioner's allegations present a colorable claim for relief. *Earp*, 431 F.3d at 1166-67; *see also Insyxiengmay v. Morgan*, 403 F.3d 657, 699-70 (9th Cir. 2005).

In *Pinholster*, the Supreme Court explicitly stated that it was not departing

1   from its prior law on evidentiary hearings under AEDPA, and clarified that "Our

2   recent decision in *Schriro v. Landrigan* [] is consistent as well with our holding

3   here."[9]  *Pinholster*, 131 S. Ct. at 1399 (internal citations omitted); *see also id.* at 1401

4   n.8 ("We see no need in this case to address the proper application of § 2254(e)(2).").

5   In other words, the rule explained fifty years ago in *Townsend*, which was reaffirmed

6   four years ago in *Landrigan*, remains the rule today.  The *Pinholster* majority also

7   affirmed the standard established in (*Michael*) *Williams*, 529 U.S. at 432, for

8   determining whether a habeas petitioner used due diligence or was at fault for failing

9   to develop the factual basis of a claim in state court within the meaning of section

10  2254(e).  Nor did *Pinholster* retreat from the Supreme Court's recent holding in

11  *Wellons*, 130 S. Ct. at 730 n.3, wherein the Court stated:

12              Indeed, it would be bizarre if a federal court had to defer to

13              state-court factual findings, made without any evidentiary

14              record, in order to decide whether the factual findings were

15              erroneous.  If that were the case, then almost no habeas

16              petitioner could ever get an evidentiary hearing:  So long as

17              the state court found a fact that the petitioner was trying to

18              disprove through the presentation of evidence, then there

19              could be no hearing.  AEDPA does not require such a

20              crabbed and illogical approach to habeas procedures.

21  *Id.*

22          As the Supreme Court emphasized in *Wellons*, an evaluation of the "deference

23  owed under" § 2254(d)(1) to the state court decision relates to "whether to grant

24  habeas relief," not whether to grant an evidentiary hearing.  *Id.* (discussing the district

25  _____

26          [9]  *Landrigan*, which the *Pinholster* Court expressly upheld, *cites with approval*
    *Mayes v. Gibson*, 210 F.3d 1284 (10th Cir. 2000), a case in which the petitioner was
27  entitled to and granted a hearing in federal court because he did not have a hearing in
    state court and "his allegations, if true and not contravened by the record, would
28  entitle him to habeas relief."  *Id.* at 1287, 1291.

19

1   court's misguided application of § 2254(d)(1) to *Wellons*'s request for discovery and
2   an evidentiary hearing).

3      Thus, *Pinholster* did not change established law regarding a district court's
4   discretion to grant an evidentiary hearing.  Neither *Pinholster* nor the strictures of
5   AEDPA revoke the district courts' statutory power to hear facts in denial of the
6   answer or traverse, or its statutory power to determine the facts (28 U.S.C. § 2243), or
7   the discretion, once § 2254(e)(2) is satisfied, to consider those forms of evidence that
8   the court deems appropriate to a resolution of the issues (28 U.S.C. §§ 2246 and
9   2247).

10      **3.      Evidence Developed At Evidentiary Hearings Still Has An**
11              **Important Role In Federal Habeas Proceedings**

12      *Pinholster* also left untouched many ways in which federal courts can use
13   evidence developed at evidentiary hearings.  Indeed, although *Pinholster* now
14   restricts a court's reliance on that evidence in a § 2254(d)(1) analysis, in instances
15   where a petitioner satisfies § 2254(d)(1) on the basis of the evidence before the state
16   court, a federal court could then properly consider such evidence in reviewing the
17   constitutional claim *de novo* to ensure that state-court convictions and sentences are
18   constitutionally sound.  *See* (*Michael*) *Williams*, 529 U.S. at 430.[10]  This is exactly
19   what occurred in *Hearn v. Ryan*, 2011 WL 1526912 (D. Ariz. 2001).

20      In *Hearn*, the district court determined that a factual issue underlying the
21   petitioner's *Faretta*[11] claim had not properly been developed in state court.  *Id.* at 2.
22   The court granted the petitioner an evidentiary hearing to develop that claim.  *Id*.  The
23   respondent asked the court to reconsider that ruling in light of *Pinholster*.  *Id*.  In

24
───────────────
25      [10]  As noted above, *de novo* review would also be appropriate if a claim was not
26   adjudicated on the merits by the state court.

27      [11]  *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)
      (finding that, in certain circumstances, a state cannot constitutionally force a lawyer
28   upon a defendant).

affirming its ruling and finding that *Pinholster* did not bar it from holding an evidentiary hearing, the district court explained that it had already determined, without the aid of an evidentiary hearing, that the petitioner had satisfied § 2254(d)(1). *Id.* at 3. It further explained that, since the petitioner had satisfied § 2254(d)(1), the claim fell to it to review *de novo*. *Id.* at 4 (citing *Panetti*, 551 U.S. at 953). But because there were disputed factual issues underlying the *Faretta* claim, the court required an evidentiary hearing to help it resolve those issues.[12]

Federal courts can properly consider evidence developed during a federal evidentiary hearing in other ways. For example, the majority in *Pinholster* observed that evidence first developed on federal habeas may ultimately lead to relief if that evidence forms the basis for a "new claim[]." *Pinholster*, 131 S. Ct. at 1401 n.10. While the majority chose not to define that term, it surmised that a petitioner may obtain federal habeas relief on the basis of such a "new claim[]" if his inability to develop the claim's underlying facts was the fault of the state court. *Id.* (observing that a hypothetical mentioned in Justice Sotomayor's dissent may present a new claim); *see also id.* at 1417 n.5 (Sotomayor, J., dissenting). Such a situation would mirror (*Michael*) *Williams*, 529 U.S. 420, an AEDPA case in which the petitioner obtained relief on a juror misconduct claim that was not developed until after the petitioner exhausted his state remedies.[13]

───────────────

[12] The District Court's analysis tracked that suggested by Justice Breyer in his concurrence in *Pinholster*:

> An offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts. If the state courts reject the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court. If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed.

*Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring).

[13] In *Williams*, the Supreme Court found that the facts supporting Williams' claim were not barred from consideration in federal court by § 2254(e)(2) because the

21

1    There is yet another way that evidence developed at an evidentiary hearing can

2    properly be considered by the federal court.  Theoretically, if evidence is developed at

3    an evidentiary hearing, the petitioner could seek a stay under *Rhines v. Weber*, 544

4    U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005), to return with that evidence to

5    state court.  If a stay is obtained, the evidence would then become part of the state

6    record and, upon return to federal court, would presumably fall within the scope of

7    review under § 2254(d)(1).

8        Therefore, while *Pinholster* forecloses the use of evidence developed at an

9    evidentiary hearing in a § 2254(d)(1) analysis, it does not foreclose the use of such

10   evidence in all situations.  Indeed, post-*Pinholster*, evidentiary hearings still play an

11   important role in federal habeas review.

12       **D.    Other Relevant Principles**

13       While *Pinholster* makes clear that evidence developed at a federal evidentiary

14   hearing cannot be considered when reviewing a state court decision under

15   § 2254(d)(1), its import is otherwise limited.  *Pinholster* directly addressed only the

16   "unreasonable application" portion of (d)(1), and added nothing to existing

17   jurisprudence on what constitutes clearly established law and how to determine when

18   a state court decision is "contrary to" such established law.  The opinion also did not

19   alter the rule that evidence developed at an evidentiary hearing can be used by a

20   federal court when it reviews a claim *de novo*.[14]  (*Michael*) *Williams*, 529 U.S. at 430.

21       Moreover, the *Pinholster* majority expressly declined to address whether a

22   § 2254(d) analysis must come before a decision to hold an evidentiary hearing (or,

23   _____

24   timing of their discovery was not attributable to a lack of diligence on the part of
     Williams or his counsel.  *See id*. at 440-43.  The Supreme Court went on to note that

25   the circumstances explaining the belated discovery also "suffice[d] to establish cause
     for any procedural default petitioner may have committed in not presenting" the claim

26   to the state court in the first instance.  *Id.* at 444.

27       [14]  As noted above, *de novo* review would be appropriate if, for instance, a
     claim was not adjudicated on the merits by the state court or if a petitioner satisfies

28   § 2254(d).

indeed, whether to conduct discovery).  *Pinholster*, 131 S. Ct. at 1401 n.10 ("[W]e need not decide . . . whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied").  In doing so, it *cited with approval the Landrigan* decision, which emphasized that while a district court is "not required to hold an evidentiary hearing" where the state court record clearly "precludes habeas relief," nevertheless "the decision to grant an evidentiary hearing [is] generally left to the sound discretion of district courts."  *Landrigan*, 550 U.S. at 473.  In addition, the Court was silent on the separate question of whether federal habeas courts should examine the merits of the constitutional claim before deciding the § 2254(d) issues.  *See*, *e.g.*, *Jones v. Basinger*, 635 F. 3d 1030, 1040-44 (7th Cir. 2011) (expressly determining whether petitioner met his "threshold burden" to show a Sixth Amendment confrontation violation occurred before determining whether the state court decision unreasonably applied clearly established federal law).  Consequently, it remains correct that "AEDPA does not require a federal habeas court to adopt any one methodology" in deciding § 2254(d) issues.  *Lockyer v. Andrade*, 538 U.S. at 71.

**IV.    ANALYSIS OF KRAFT'S CLAIMS UNDER § 2254(D)**

    **A.    Kraft Is Entitled To An Evidentiary Hearing Under AEDPA Standards That Remain Unchanged By *Pinholster***

Kraft seeks an evidentiary hearing on four claims:

- Claim 6.B.2, alleging ineffective assistance of trial counsel during the guilt phase of trial for failure to remove from the jury Juror Jim L.;

- Claim 37.B.3, alleging ineffective assistance of trial counsel during the penalty phase for failure to remove from the jury Juror Jim L.;

- Claim 41, alleging ineffective assistance of appellate counsel for failing to bring numerous meritorious claims due to his conflict with Kraft rather than any strategic decision; and

- Claim 32.B.4 alleging prosecutorial misconduct for failing to provide

23

1                     exculpatory evidence from enforcement agencies involved in the "task

2                     force" investigating crimes charged against Kraft.

3        Under AEDPA, an evidentiary hearing is required on a claim if:  (1) the

4 petitioner did not fail to develop the factual basis of the claim in state court; (2) the

5 state court denied the petitioner a full and fair opportunity to develop the facts in

6 support of the claim; and (3) the petitioner's allegations present a colorable claim for

7 relief.  *Earp* 431 F.3d at 1166-67; *see also Insyxiengmay v. Morgan*, 403 F.3d 657,

8 699-70 (9th Cir. 2005).  Kraft meets all three of these requirements.

9        First, Kraft has not "failed to develop the factual basis of [his] claim[s] in the

10 State court proceedings."  28 U.S.C. § 2254(e)(2).  As the Supreme Court has held, "a

11 failure to develop the factual basis of a claim is not established unless there is a lack

12 of diligence, or some greater fault, attributable to the prisoner or the prisoner's

13 counsel."  *Williams*, 529 U.S. at 432.  As long as the petitioner "made a reasonable

14 attempt, in light of the information available at the time, to investigate and pursue his

15 claims in state court," the diligence requirement is satisfied.  *Id.* at 435.  Ordinarily, a

16 petitioner fulfills his obligation by requesting an evidentiary hearing in the manner

17 prescribed by state law.  *Horton v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005); *Baja*

18 *v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999); *see also Williams*, 529 U.S. at 437

19 ("Diligence will require in the usual case that the prisoner, at a minimum, seek an

20 evidentiary hearing in state court in the manner prescribed by state law.").

21        Kraft, without the assistance of his state statutorily mandated counsel,

22 diligently pursued his claims in state court.  As this Court has already found, aside for

23 Claim 6.B.B.2, each of the claims on which Kraft seeks an evidentiary hearing was

24 presented in state court through Kraft's *pro se* filings.  (Doc. 144 at 3-4, 9, 13-14.)

25 Kraft requested discovery and an evidentiary hearing on his claims in the state

26 supreme court, but the court dismissed his claims in summary denials without ever

27 affording him a hearing, discovery, or other means to develop the facts in support of

28 his claims.  Accordingly, Kraft did not fail to develop the facts in state court, and

1    section 2254(e)(2) does not preclude a hearing.[15]

2         Second, and as shown further at Part IV(C), *infra*, the state courts did not give

3    Kraft a full and fair opportunity to develop the facts in support of his claims.

4         Third, as shown in the state court record, his First Amended Federal Petition

5    (Doc. 78 and 79), and in his Amended Motion for Evidentiary Hearing (Doc. 164),

6    Kraft has alleged colorable claims for relief.  At this stage of the proceedings, Kraft

7    need not prove anything.  *Earp*, 431 F.3d at 1173 ("Earp is not required to

8    conclusively establish in this appeal that counsel was prejudicially deficient. Rather,

9    Earp must demonstrate by his evidence the potential of a colorable claim . . . ."); *see*

10   *also Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001).  Instead, Kraft need

11   only "allege specific facts which, if true, would entitle him to relief."  *Ortiz v.*

12   *Stewart*, 149 F.3d 923, 934 (9th Cir. 1998); *see Siripongs v. Calderon*, 35 F.3d 1308,

13   1310 (9th Cir. 1994).  As the Ninth Circuit repeatedly has emphasized, "[a]lleging a

14   colorable claim for relief is a relatively 'low bar.'"  *Earp*, 431 F.3d at 1170; *see*

15   *Phillips*, 267 F.3d at 979 (noting that the requirement for obtaining an evidentiary

16   hearing is "far less onerous" than establishing entitlement to habeas relief).

17        In sum, Kraft's claims meet and exceed long-established standards for granting

18   an evidentiary hearing in federal court – standards which do not mandate a threshold

19   determination that § 2254(d) be satisfied before a hearing is granted.  *See Pinholster*,

20   131 S. Ct. at 1401 n.10 ("[W]e need not decide . . . whether a district court may ever

21   choose to hold an evidentiary hearing before it determines that § 2254(d) has been

22

23   _____

24        [15]  For purposes of the diligence requirement, it is irrelevant that Kraft was
     unable to persuade the state court to grant an evidentiary hearing on his claims.
25   *Williams*, 529 U.S. at 435 ("it does not depend, as the Commonwealth would have it,
     upon whether those efforts could have been successful"); *see also Cardwell v.*
26   *Greene*, 152 F.3d 331, 338 (4th Cir. 1998) ("Section 2254(e)(2) should not be
     interpreted to allow a state court to deny a petitioner meaningful review of a federal
27   claim by refusing to permit development of the factual record at the state level."),
     *overruled on unrelated grounds*, *Bell v. Jarvis*, 236 F.3d 149, 160 (4th Cir. 2000).  As
28   long as the appropriate request was made, Kraft met his burden.

1  satisfied."). However, as demonstrated below, Kraft's claims for which he seeks an

2  evidentiary hearing satisfy § 2254(d).

3  **B.**    **Kraft Has Already Satisfied  § 2254(d)(1)**

4  **1.**    **Because the State Court Failed to Adjudicate Whether The**

5  **Trial Court's Response Concerning Juror Jim L. Was**

6  **Constitutionally Adequate, Kraft Has Already Satisfied**

7  **§ 2254(d)(1) As To Claim 6.b.2 And 37.b.3**

8  Kraft alleges that defense counsel provided ineffective assistance by failing to

9  demand that the trial court remove Juror Jim L. from Kraft's case when it came to

10 light that Lytle knew one of the trial witnesses, knew of a proposed trial witness, and

11 had a connection to one of the victims in the case.

12 As this Court has already found, Kraft presented to the state court the claim

13 that the trial court's inquiry into Juror Jim L.'s concealment that he was acquainted

14 with people involved in the case was insufficient and that the trial court has a *sua*

15 *sponte* duty to remove Juror Jim L. despite counsel's desire to keep him on the jury.

16 (Doc. 144, at 4.) Although this claim was presented in Appellant's Opening Brief

17 (Ex. 61 at 607, 612014), the California Supreme Court failed to adjudicate the claim.

18 Instead, the state court only reached whether trial counsel had been ineffective

19 for failing to remove Juror Jim L.  *People v. Kraft*, 23 Cal. 4th at 1067-69.  In

20 denying the ineffective assistance of counsel portion of this claim, citing to state law,

21 the state court based its decision on the shortcomings of the appellate record:

22              If the record on appeal fails to show why counsel acted or

23              failed to act in the instance asserted to be ineffective, unless

24              counsel was asked for an explanation and failed to provide

25              one, or unless there simply could be no satisfactory

26              explanation, the claim must be rejected. [citation omitted]

27              here the record-reflecting that defense counsel reviewed his

28              notes and L's voir dire - hints at the existence of some

26

1                  tactical reason for counsel's decision to retain L.  At least,

2                  the record fails to eliminate that possibility.  Accordingly,

3                  defendant's claim must fail for purposes of this appeal.

4  *Id.* at 1069.

5      Thus, whether the trial court conducted a constitutionally adequate inquiry

6  once it was confronted with a colorable claim of juror bias is a question which this

7  Court must resolve *de novo*.  *Pinholster*, 131 S. Ct. at 1400; *Porter*, 130 S. Ct. at 452;

8  *Cone*, 129 S. Ct. at 1784; *Rompilla*, 545 U.S. at 390.  Of course, if the record on

9  appeal fails to show why counsel acted or failed to act in the instance asserted to be

10  ineffective, it was precisely because the trial court failed to "determine the

11  circumstances, the impact thereof upon the juror, and whether or not [they were]

12  prejudicial, in a hearing with all interested parties permitted to participate." *Smith v.*

13  *Phillips*, 455 U.S. 209, 216, 102 S. Ct. 940, 945, 71 L. Ed. 2d 78 (1982) (citing

14  *Remmer v. United States*, 347 U.S. 227, 230, 74 S. Ct. 450, 98 L. Ed. 654 (1954)).

15      As Kraft argues in his FAP (Doc. 78 at 68-80), his motion for evidentiary

16  hearing (Doc. 164 at 11-14), and his reply in support thereof (Doc. 168 at 8-15), the

17  fact finding procedures upon which the trial court relied to ascertain Juror Jim L.'s

18  acquaintance with people involved in the case resulted in an investigation that was

19  not "reasonable calculated to resolve the doubts raised about the juror's impartiality."

20  *Dyer v. Calderon*, 151 F. 3d 970, 974-75 (9th Cir. 1998) (citing *Smith v. Phillips*, 455

21  U.S. at 217.)

22      Rather than resolve doubts, the limited inquiry into Juror Jim L.'s relationships

23  with people involved in the case raised more questions than answers.  Among the

24  most salient:  although Lytle told the trial court that he told the bailiff that his sister

25  was married to Drake, a friend of Gambrel (107 RT 23242), the person in Kraft's car

26  when Kraft was arrested, the trial court's bailiff contradicted Lytle, stating "I don't

27  remember Mr. Lytle ever saying a word to me that he knew or was related to

28

anybody" (107 RT 23244)[16]; although Lytle told the court that he never discussed the case with his sister (107 RT 23243), his sister had previously admitted they "all of a sudden heard [her] brother uhm said that uhm [her] husband's name came up in the case." (17 RT 23127.)  The trial court interviewed Lytle's sister by phone (17 RT 23125-26), never stating her statements would be under penalty of perjury.  Neither Drake nor Lytle's mother were ever questioned in court about any communications among family members concerning their knowledge of Grambel and his role in Kraft's trial.

Because the state court failed to recognize that the trial court had failed to provide Kraft with an objective fact-finding process that reasonably explored the colorable claim that Lytle was biased, the state court's decision that trial counsel was not ineffective involved an unreasonable application of clearly established federal law as articulated in *Smith v. Phillips*, *Remmer v. United States*, and their progeny. *Panetti*, 551 U.S. at 953 (holding that "[w]hen a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied.")  Thus, in turn, whether trial counsel was ineffective in failing to request the dismissal of Juror Jim L. is a question that this Court must resolve *de novo*.

Because the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias , Kraft is entitled to an evidentiary hearing so that this court may evaluate if the juror was biased and whether trial counsel was ineffective for failing to request the dismissal of Juror Jim L.  *Wellons*, 130 S. Ct. at 731 (citing *Michael Williams*, 529 U.S. at 442 (holding that several 'omissions as a whole disclose the need for an evidentiary hearing,"); *Smith v.*

---

[16]  In a recent declaration obtained by federal counsel, Lytle has admitted, in essence, that he misinformed the court when he told the court he had informed the bailiff that his sister was married to Drake, a friend of Gambrel.  (Ex. 85.)

28

*Phillips*, 455 U.S. at 215).[17]

> **2.     The State Court's Failure To Issue An Order To Show Cause**
> **On Any Of Kraft's *Pro Se* Pleadings Resulted In A Truncated**
> **Process That Deserves No Deference**

For purposes of § 2254(d)(1)'s unreasonable application" standards, the relevant state court post-conviction record and process in Kraft's case are significantly different from that reviewed in *Pinholster*.   In *Pinholster*, the state court issued an Order to Show Cause ("OSC") on Pinholster's first state petition. *Pinholster*, 131 S. Ct. at 1396 n.1.  As a result, Pinholster enjoyed an array of mechanisms to develop the factual allegations that Kraft, through his *pro se* attempts, could not begin to explore.  *See* Cal. Penal Code § 1484.  In *Pinholster*, the issuance of the OSC required the state to file a return containing detailed factual allegations within the state's ability to obtain, along with any documents it wished to provide. *See* Cal. Penal Code § 1470; *In re Lewallen*, 23 Cal. 3d 274, 277-78, 590 P.2d 383, 152 Cal. Rptr. 528 (1979).  Pinholster then filed a traverse.  As a result of these formal pleadings, the factual and legal issues were joined for resolution.  *Id*.  The petitioner in *Pinholster* not only had the opportunity to develop fully his facts and implement the rights, broad powers, and duties set forth in California Penal Codes sections 1480 through 1484 during his first state habeas proceeding, he also did not challenge the deficiencies in the state court process.

Here, in comparison, the state court record is materially distinguishable.  For Kraft, the state court did not institute any formal proceedings following the filing of either state habeas counsel petition, nor Kraft's brief to withdraw such petition.  The state has never been required to provide detailed factual responses to Kraft's

---

[17]   Since this Court has already found that Kraft's claim of ineffective assistance of appellate counsel for his failure to raise the claim that Juror Jim L. lied when answering questions on *voir dire* is exhausted, Doc. 144 at 13-14, an evidentiary hearing would resolve issues of fact as to both Claim 6.B.2 and Claim 41.N.

1    allegations and Kraft was deprived of affirmative mechanisms to develop his

2    allegations.

3         The differences between Pinholster's case and Kraft's case matter.  Kraft's lack

4    of process informs the § 2254(d)(1) and (2) determinations.  This Court is *not*

5    reviewing a state-court decision that found that Kraft failed to *prove* his claims after

6    being given a full and fair opportunity to do so.  The state court's review of Kraft's

7    case was a preliminary one:  the decision not to grant and OSC on any of Kraft's *pro*

8    *se* filings, and deny relief, including Kraft's request to hold the state petition filed by

9    counsel in abeyance and his request for new state habeas counsel, represents a

10   determination that, taking all of Kraft's allegations as true and credible, Kraft failed

11   to state a prima facie case for relief.  *People v. Duvall*, 9 Cal. 4th 464, 474, 886 P. 2d

12   1252, 37 Cal. Rptr. 2d 259 (1995).

13        Indeed, in California, the petition for writ of habeas corpus serves a "limited

14   function."  *In re Lawler*, 23 Cal. 3d 190, 194, 588 P.2d 1257, 151 Cal. Rptr. 833

15   (1979); *People v. Pacini*, 120 Cal. App. 3d 877, 884, 174 Cal. Rptr. 820 (1981)

16   (affirming that the petition is "preliminary in nature"). Under California law, upon

17   receipt of a petition, the court must determine whether it states facts that, if true,

18   would enable petitioner to prevail.  *People v. Romero*, 8 Cal. 4th 728, 737, 883 P.2d

19   388, 35 Cal. Rptr. 2d 270 (1994); Cal. Rule of Ct., Rule 4.551 (c)(1).  In making this

20   assessment, California courts not only must assume that all factual allegations are

21   true, but must also set aside any possibility of contradiction or impeachment and draw

22   all legitimate inferences in favor of the presence of a *prima facie* case.  *In re Serrano*,

23   10 Cal. 4th 447, 456, 895 P. 2d 936, 41 Cal. Rptr. 2d 695 (1995); *see also Aguilar v.*

24   *Atlantic Richfield Co.*, 25 Cal. 4th 826, 851, 24 P. 3d 493, 107 Cal. Rptr. 2d 841

25   (2001); *Quinn v. City of Los Angeles*, 84 Cal. App. 4th 472, 479-85, 100 Cal. Rptr. 2d

26

27

28

30

914 (2000).[18]

To assist in this preliminary determination, the court may call for the filing by the parties of "informal" briefing. *Romero*, 8 Cal. 4th at 737, 741-42. The state's Informal Response "is not a pleading, does not frame or join issues, and does not establish a 'cause' in which a court may grant relief." *Id.* at 741. Instead, it serves a screening function analogous to that of a demurrer or a complaint. *Id.* at 742 n.9. After receipt of the Informal Response and Reply, the court may then either issue an order to show cause ("OSC") or summarily deny the petition. If the petition is "sufficient on its face . . . the court is obligated by statute" to issue an OSC. *Id.* at 737; *see also People v. Duvall*, 9 Cal. 4th at 475; Cal. Pen. Code § 1476.

The issuance of the OSC transforms the state habeas process in ways critical to full, fair, reliable, and accurate fact development. It "afford[s] the petitioner an opportunity to present evidence in support of the allegations . . . [and] institute[s] a proceeding in which issues of fact are to be framed and decided." *In re Hochberg*, 2 Cal. 3d 870, 876 n.4, 87 Cal. Rptr. 681 (1970). It creates a cause of action which, under article VI, section 14 of the California Constitution, requires a written, reasoned resolution. *Romero*, 8 Cal. 4th at 740. It sets in motion the filing of a pleading (Respondent's Return) and an answer thereto (Petitioner's Traverse) that frame the legal and factual issues to be resolved. If these pleadings reveal the existence of factual disputes that are material to the court's resolution of legal issues, the court orders an evidentiary hearing. *Id.* at 739-40. Essentially, the OSC empowers the court "to do and perform all other acts and things necessary to a full and fair determination of the case." Cal. Penal Code § 1484.

The OSC also confers the power to authorize fact development, beyond the very limited discovery specifically authorized by California Penal Code section

---

[18] This standard is comparable to the review of a civil complain pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6).

31

1  1054.9, including the power to issue subpoenas and compel witness testimony.  *See*

2  *id.*; *see also People v. Gonzalez*, 51 Cal. 3d 1179, 1256-58, 275 Cal. Rptr. 729,

3  773-75 (1990) (discussing state court's lack of jurisdiction to order "free-floating"

4  postconviction discovery absent a proceeding pending before that court); *see also Bd.*

5  *of Prison Terms v. Superior Court*, 130 Cal. App. 4th 1212, 1236-42, 31 Cal. Rptr. 2d

6  70, 87-92 (2005).  Particularly relevant for Kraft's case, without an OSC, a court

7  lacks the power to solicit a declaration from counsel.  *Durdines v. Superior Court*, 76

8  Cal. App. 4th 247, 252, 90 Cal. Rptr. 2d 217 (1999).

9  　　　In Kraft's case, where the state supreme court issued a summary denial, the

10  court necessarily assumed Kraft's allegations were true but found them insufficient to

11  state a prima facie case while simultaneously assuming the allegations made by state

12  counsel in the petition also true.  *See Duvall*, 886 P.2d at 1256 (Cal. 1995); *see also*

13  *Pinholster*, 131 S. Ct. at 1402-03 n.12.  In so doing, the court was required to set

14  aside the possibility of contradictions or impeachment, and instead draw all legitimate

15  inferences in favor of a *prima facie* case.  *See*, *e.g.*, *Aguillar v. Atlantic Richfield Co.*,

16  24 P.3d at 505-06; *Quinn v. City of Los Angeles*, 84 Cal. App. 4th at 479-80.  Yet,

17  given the conflicting assertions the court received when it informally inquired from

18  Power, Kraft, and CAP counsel, the state court could not have resolved such

19  contradictions without implicitly making factual and credibility findings.[19]

20  　　　A federal court assessing the reasonableness of the summary denial of a

21  California state habeas petition must do so in light of this state-law standard.  In other

22  words, a federal court cannot, in defense of the reasonableness of the state court's

23  adjudication on the merits, speculate that the state court might have made adverse

24  credibility judgments about the petitioner's proffer, that the state court might have

25

26  　　　[19]  Furthermore, the "procedure" that the state court used in determining
"whether Kraft had the capacity to appreciate his position and make a rational choice
27  with respect to continuing or abandoning further litigation" failed to satisfy clearly
established required due process under *Rees v. Peyton*, 384 U.S. 312, 86 S. Ct. 1505,
28  16 L. Ed. 2d 583 (1966)

anticipated the possibility of rebuttal evidence, or that the state court might have otherwise concluded that the petitioner's proffer was less persuasive than it appeared to be. Such an approach would directly contradict the established procedures of the California Supreme Court for summarily adjudicating habeas petitions. *See*, *e.g.*, *Robbins*, 18 Cal. 4th 770, 814 n.34, 959 P.2d 311, 77 Cal. Rptr. 2d 153 (1998); *Duvall*, 9 Cal. 4th at 475 (1995).[20]

Thus, to the extent that the California Supreme Court on habeas review made findings adverse to Kraft, contrary to its own rules, this Court is not required by AEDPA to defer to those alleged findings. *Nunes*, 350 F.3d at 1055-56 & n.7 (holding that the California state court decision was unreasonable under (d)(1) and (d)(2) because it rejected Nunes's ineffective assistance of counsel claim, denied an evidentiary hearing, and made adverse credibility findings, "despite that court's having said that it took Nunes's claims at face value").

Here, if the state court genuinely accepted the truth of Kraft's *pro se* allegations, then significant factual disputes remain regarding, *inter alia*, the effectiveness of his trial and appellate counsel (Claims 6.B.2, 37.B.3, and 41); the extent of trial counsel's investigation into juror misconduct (Claim 6.B.2); and the existence of exculpatory evidence in the hands of state agencies and the prosecution

---

[20] Under *Richter*, when an ineffective-assistance claim is summarily rejected, "the habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision." 131 S. Ct. at 786. The Court also warned against "dismissing [potential] strategic considerations" that could be used to justify counsel's actions. *Id.* at 790.

While *Richter* requires the lower courts to consider all possible arguments and theories, there must be limits to such a process, especially where, as here, the state court purportedly accepted as true all of Kraft's allegations prior to summarily denying relief without an evidentiary hearing or statement of reasons.

While AEDPA gives deference to state habeas decision-making, it does not require courts to sanction unreasonable decisions reflecting a fundamental contradiction. The State of California cannot have it both ways. It cannot take the position that evidentiary hearings in state court are unnecessary (because the state court accepted the allegations as true, but found no *prima facie* case), while at the same time urging this Court to accept hypothetical justifications to deny relief which are directly contrary to the Kraft's allegations in state court.

(Claim 32).[21]   Due process requires a state to hold a hearing on disputed facts relevant to an alleged constitutional violation.  *See McNeal v. Culver*, 365 U.S. 109, 117, 81 S. Ct. 413, 5 L. Ed. 2d 445 (1961) (reversing summary denial of state habeas petition alleging denial of counsel because "the allegations themselves make it incumbent on the [State] court to grant petitioner a hearing and to determine what the true facts are."); *Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116, 120-23, 76 S. Ct. 223, 100 L. Ed. 2d 126 (1956) (reversing summary denial of due process claim without a hearing and ruling petitioner "cannot be denied a hearing merely because the allegations of his petition were contradicted by the prosecuting officers"); *see also Coleman v. Alabama*, 377 U.S. 129, 133, 84 S. Ct. 1152, 12 L. Ed. 2d 190 (1964) (reversing denial of motion for new trial based on equal protection because "the defendant offered to introduce witnesses to prove the allegations . . . and the [state] court . . . declined to hear any evidence on the subject . . .") (internal quotations omitted).  Yet Kraft never had a full and fair hearing in state court as to the contested material facts surrounding these claims, in violation of *Earp*, 431 F.3d at 1167, 1169-70 (if a petitioner can establish any of the six circumstances to which he is entitled to an evidentiary hearing pursuant to *Townsend v. Sain*, "then the state court's decision was based on an unreasonable determination of the facts and the federal court can independently review the merits of that decision by conducting an evidentiary hearing").

By its summary denial, the state court failed to provide an adequate or effective forum to test the legality of Kraft's detention, despite his numerous pro se pleadings, including his request to withdraw the petition filed by counsel, as well as Kraft's response to the court's inquiry when he filed such request to withdraw the petition, detailed allegations and documentary support, which stated multiple claims on which

---

[21]   Moreover, as explained more fully in Part IV.C *infra*, the state court's refusal to find a *prima facie* case, once it accepted the truth of Kraft's allegations, was unreasonable under section 2254(d).

relief could (and would) be granted, if the state had properly provided Kraft with the means to prove them.  A hearing in federal court is needed to correct this error and vindicate Kraft's constitutional rights.

In sum, this Court is not reviewing a state court decision that found that Kraft failed to prove his claims after being given a full and fair opportunity to do so. Rather, the state court's review in Kraft's case was a preliminary one, and the decision here represents a determination that, taking all of Kraft's allegations as true and credible, he would not be entitled to relief if permitted to prove his allegations through further fact development, including an evidentiary hearing.  Thus, for each claim that this Court is reviewing to determine whether an evidentiary hearing is warranted, the relevant question is not whether the state court unreasonably denied relief, but whether it unreasonably denied Kraft the benefit of a full and fair fact-finding, including discovery and an evidentiary hearing, in light of controlling law.

## C.    The State Court's Failure To Conduct A Full And Fair Hearing Constituted An Unreasonable Determination Of The Facts Under 2254(d)(2)

As discussed in Part IV.A., *supra*, the Ninth Circuit has held that a state court decision is an unreasonable determination of facts, satisfying § 2254(d)(2), if:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears the state trier of fact did not afford the habeas applicant a full and fair hearing.

35

1  *Earp*, 431 F.3d at 1166 (citing *Townsend*, 372 U.S. at 313).  The Ninth Circuit went

2  on to explain that "[i]f the defendant can establish any one of those circumstances,

3  then the state court's decision was based on an unreasonable determination of the

4  facts and the federal court can independently review the merits of that decision by

5  conducting an evidentiary hearing." *Id.* at 1167 (citing *Taylor*, 366 F.3d at 1001 ("If,

6  for example, a state court makes evidentiary findings without holding a hearing and

7  giving petitioner an opportunity to present evidence, such findings clearly result in an

8  'unreasonable determination' of the facts.")); *see also Nunes*, 350 F.3d at 1055-56 &

9  n.7 (rejecting state court decision pursuant to (d)(2)).

10         In this case, Kraft's state court proceedings did not resemble a full and fair

11  hearing, despite Kraft setting forth numerous errors and omissions committed by the

12  prosecution, trial counsel, and appellate counsel.  (*See* Doc. 27-28, 78-91, 160, 164

13  and 168).  The allegations presented by Kraft establish the existence of disputed facts

14  which warrant an evidentiary hearing. (*See* e.g. Doc 164 at 11-13, 15-16, 21-23; Doc.

15  168 at 10-11, 14.)  At a minimum, then, the third *Townsend* factor is satisfied because

16  the California Supreme Court did not afford Kraft an evidentiary hearing, much less a

17  "full and fair" one.  Moreover, to the extent that the state court made any factual

18  determinations which are not reflected in its summary denials, such determinations

19  were "not fairly supported by the record as a whole" under the second factor.  Finally,

20  the California Supreme Court appears to have resolved any and all factual disputes

21  without the benefit of an evidentiary hearing, in violation of the first *Townsend*

22  factor.

23         Particularly in the context of ineffective assistance of counsel claims (Claims

24  6.B.2, 37.B.3, 41), where the petition establishes a claim on which relief may be

25  granted, the prisoner is entitled to an evidentiary hearing, unless the existing record

26  already affirmatively discloses counsel's incompetence.  Under state law the

27  evidentiary hearing is the proper procedural remedy for adjudicating counsel's

28  incompetence.  *People v. Frierson*, 25 Cal. 3d 142, 161, 599 P.2d 587, 158 Cal. Rptr.

1    281, 291 (1979).  Yet despite detailed and supported allegations challenging both trial

2    counsel and appellate counsel's representation, Kraft was unreasonably denied this

3    procedural mechanism for exposing the truth about counsel's performance.  Even

4    when the interpersonal disputes between Barranco and Power were made part of the

5    record through their bickering over the payment for work, or lack thereof, performed

6    allegedly on behalf of Kraft, the state court continued to dismiss Kraft's claims.

7    (CSC S172964, Ex. 3 - Request of Associate Counsel Elizabeth Barranco to Be Paid

8    or Relieved, dated February 28, 2001; CSC S172964, Ex. 4 - Joinder in Request to

9    Relieve Associate Counsel of Appointment, dated March 2, 2001; CSC S172964, Ex.

10   5 - Responsive Declaration of Associate Counsel in Support of Request to be Paid

11   and Relieved, dated March 5, 2001; CSC S172964, Ex. 6 - Withdrawal of Counsel

12   Allowed by Order, etc, dated March 28, 2001.)

13           More generally, the evidentiary hearing is the procedurally proper place to

14   assess credibility on all claims.  Credibility determinations adverse to a petition

15   should not be made absent a hearing.  *Serrano*, 10 Cal. 4th at 455-57.  While "[u]nder

16   § 2254(d), a habeas court must determine what arguments or theories supported or, as

17   here, could have supported, the state court's decision," it is also true that "courts may

18   not indulge 'post-hoc rationalization' for counsel's decision making that contradicts

19   available evidence of counsel's actions."  *Richter*, 131 S. Ct. at 778, 790 (internal

20   citations omitted).  Thus, there is no need for this Court to engage in "after-the-fact

21   rationalization of a litigation strategy that almost certainly was never contemplated"

22   by counsel.  *Tice v. Johnson*, __ F.3d __, 2011 WL 1491063 at *17 (4th Cir. 2011).

23           It is true that federal courts defer when "state courts reasonably adjudicate

24   claims of federal right, even if [the federal courts] think they're wrong."  *Richter*, 131

25   S. Ct. at 786.  "But where, as here, a state court doesn't act reasonably, deference

26   comes to an end."  *Doody v. Ryan*, 2011 WL 1663551 at *38 (9th Cir. 2011).

27   Therefore, because the state court's fact-finding procedures unreasonably failed to

28   provide Kraft with the evidentiary development to which he was entitled, 2254(d)(2)

37

is satisfied, *de novo* review applies to the claims set forth in his Amended Motion for Evidentiary Hearing, and this Court should grant a hearing.

## V.    CONCLUSION

*Pinholster* does not alter or diminish this Court's discretion to grant an evidentiary hearing in Kraft's case.  The question of whether §2254(d)(1) or (2) is satisfied, and thus, whether Kraft may ultimately be entitled to relief is distinct from whether this Court should grant an evidentiary hearing.  *Wellons*, 130 S. Ct. at 730. In other words, in Kraft's case, an evidentiary hearing is not necessary to resolve the § 2254(d) inquiry, and whether to grant the former is not informed by whether Kraft can meet the latter.  Kraft was denied any opportunity to develop his facts in state court, despite his diligent attempts to do so.  Kraft has not only satisfied § 2254(d), but also is entitled to an evidentiary hearing in order to resolve disputed factual issues that will inform this Court's *de novo* analysis of Kraft's claims.  Accordingly, Kraft is entitled to an evidentiary hearing notwithstanding *Pinholster*.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: July 28, 2011              By    */S/ C. Pamela Gomez*
C. PAMELA GOMEZ
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Petitioner
RANDY S. KRAFT

38

1

### PROOF OF SERVICE

2   I, **Diana Elliott**, declare that I am a resident or employed in Los Angeles

3   County, California; that my business address is the Office of the Federal Public

4   Defender, 321 East 2nd Street, Los Angeles, California  90012-4202, Telephone No.

5   (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the

6   action entitled below; that I am employed by the Federal Public Defender for the

7   Central District of California, who is a member of the Bar of the State of California,

8   and at whose direction I served a copy of the attached  Petitioner's Supplemental

9   Brief on the Effect of *Cullen v. Pinholster* on Court's Power to Grant an Evidentiary

10   Hearing on the following individual(s) by:

11   [X] Placing same in a sealed

[ ] Placing same in an envelope for

[ ] Placing same in a sealed envelope

[ ] Faxing same via facsimile

12   envelope for collection and

hand-delivery addressed as

for collection and mailing via the

machine addressed as follows:

13   interoffice delivery addressed as

follows:

United States Post Office, addressed

14   follows:

as follows:

15

16   Death Penalty Law Clerk
United States Courthouse, Room 801

17   312 North Spring Street
Los Angeles, CA 90012

18

19   This proof of service is executed at Los Angeles, California, on **July 28, 2011**.

20   I declare under penalty of perjury that the foregoing is true and correct to the

best of my knowledge.

21

22

23   *Diana Elliott*
_____
   **DIANA ELLIOTT**

24

25

26

27

28